


**The Bond Market Association / Loan Syndications and Trading Association**
**Model Final NOL Trading Order (Exposure Draft)**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE [_____] DISTRICT OF [_____]
### [_____] DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| [_____], <u>et al</u>., | ) | Case No. [_____] |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**ORDER ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING
RESTRICTIONS ON CERTAIN TRANSFERS OF CLAIMS AGAINST AND
INTERESTS IN THE DEBTORS' ESTATES[1]**

Upon the motion dated [_____ __], [_____], of [_____] and its affiliated debtors, as debtors-in-possession (collectively, the "**Debtors**"), for a final order pursuant to sections 105(a), 362, and 541 of the Bankruptcy Code to establish restrictions and procedures for certain trading activity in claims against and equity interests in the Debtors (the "**Motion**"), it is hereby

FOUND THAT:

A.        Unrestricted trading in claims against and equity interests in the Debtors prior to the Debtors' emergence from Chapter 11 could potentially limit the Debtors' ability, in connection with their eventual emergence from bankruptcy, to utilize net operating loss ("**NOL**") carryovers and certain other

---

[1]        Debtors sometimes seek to restrain trading in shares and claims as part of the first day motions or shortly after commencement of bankruptcy proceedings, in order to protect net operating loss carryovers. This Model Final NOL Trading Order (the "**Model Order**") is designed, together with the BMA/LSTA Model Interim NOL Trading Order, to put sufficient restrictions in place to achieve a reasonable degree of protection for a debtor corporation's NOL carryovers, while at the same time avoiding unnecessary disruptions to trading markets. In no event, however, should any restriction, whether on debt, equity, or both, be imposed unless there is a reasonable possibility that such restriction will be needed to preserve the Debtors' NOL carryovers (e.g., a reasonable possibility that the Debtors have significant NOL carryovers, are not already subject to limitations on their ability to use NOL carryovers, etc.).

                    Copyright © TBMA/LSTA 2006.  All rights reserved.

tax attributes for U.S. federal income tax purposes, pursuant to the rules under section 382 of the Internal Revenue Code.[2]

B.    The trading restrictions and procedures set forth herein are reasonable and proper in order to preserve such NOL carryovers and other tax attributes and are therefore in the best interests of the Debtors, their estates, and their creditors.[3]

---

[2]    The Internal Revenue Code contains an elaborate regime that is designed to prevent the use of NOL carryovers and certain other tax attributes in inappropriate situations. In particular, section 382 limits the amount of NOL carryovers that can be used after certain significant changes in the ownership of a corporation's stock. In general, the section 382 limitation is triggered if increases in the percentage of the stock of the corporation owned (directly or by attribution) by 5-percent shareholders (including certain groups of public shareholders) aggregate to more than 50 percentage points over a three-year testing period. The rationale of this rule is to prevent trafficking in NOL carryovers. Under the section 382 limitation, the maximum amount of a corporation's NOL carryovers that can be used in any taxable year after a triggering ownership change is generally the product of (x) the value of the stock of the corporation immediately before the ownership change and (y) the long term tax-exempt rate, so long as the corporation continues its prior business enterprise for a two-year period after the ownership change (where the continuity of business condition is not satisfied, the section 382 limitation is generally zero, subject to limited exceptions). If the ownership change occurs in a bankruptcy proceeding, however, two alternative special rules may apply.

Under section 382(*l*)(5), a partial exemption from the section 382 limitation is available for an ownership change pursuant to a bankruptcy reorganization, so long as the historic shareholders and "qualified creditors" of the debtor corporation own at least 50 percent of the value and voting power of its stock after the change. "Qualified creditors" are creditors that receive stock in exchange for (i) debt that they have beneficially owned since the date that was 18 months before the filing of the bankruptcy petition ("old and cold" debt); or (ii) debt that they have always beneficially owned and that arose in the ordinary course of business of the debtor corporation (e.g., trade debt). Special, detailed tracking rules apply for purposes of the continuous beneficial ownership requirements. In general, however, a debtor corporation may treat debt as always owned by the same beneficial owner if, immediately after the bankruptcy reorganization, that person owns less than 5 percent of the debtor corporation's equity. If the section 382(*l*)(5) exemption applies, there is no section 382 limitation on the use of the debtor corporation's NOL carryovers. However, the amount of pre-change NOL carryovers must be reduced by the amount of interest deductions accrued during a three-year period preceding the ownership change in respect of debt converted into stock under the plan of reorganization. In addition, if a second ownership change occurs within two years of the ownership change covered by the section 382(*l*)(5) exemption, the section 382 limitation with respect to the second ownership change is zero, and the benefits of using the section 382(*l*)(5) exemption with respect to the first ownership change may be substantially eliminated.

Under the alternative bankruptcy rule, section 382(*l*)(6), a debtor corporation's NOL carryovers remain subject to the section 382 limitation, but the yearly limitation amount (i.e., the product of the value of the debtor corporation's stock and the long term tax-exempt rate, assuming satisfaction of the continuity of business condition) is calculated using a more favorable valuation formula. Under the section 382(*l*)(6) formula, the value of the debtor corporation's stock is determined immediately after the ownership change and includes (i) stock received by creditors in exchange for canceling debt; and (ii) stock issued to new investors in connection with the bankruptcy reorganization. The value is capped, however, by the gross value of the corporation's assets immediately before the ownership change, excluding recent capital contributions and certain excess nonbusiness assets.

[3]    Pursuant to the basic section 382 rule, normal trading in a debtor corporation's equity can directly result in significant limitations on future use of NOL carryovers, regardless of the value of that equity. For this reason, the Model Order places significant restrictions on equity trading during the course of the bankruptcy. Although trading in debt claims cannot directly result in a limitation under section 382, the Model Order also places limited restrictions on debt trading, in order to preserve the Debtors' ability to benefit from the favorable "old and cold" debt presumption for less-than-5-percent holders under section 382(*l*)(5). In this regard, the emergence of a reorganized debtor from Chapter 11 frequently constitutes a triggering ownership change for purposes of section 382, and it is often difficult to determine at the outset of a bankruptcy whether it will be more advantageous for the debtor to make use of the section 382(*l*)(5) exemption or the section 382(*l*)(6) valuation formula (the latter of which would not benefit from any trading restrictions with respect to debt claims).

C.    The relief requested in the Motion is authorized under sections 105(a), 362, and 541 of the Bankruptcy Code.

THEREFORE, IT IS:

ORDERED that the Motion is granted on a final basis (i) retroactive to the Effective Time of the Interim Trading Order in the case of acquisitions and dispositions of Stock; and (ii) on a prospective basis from the Effective Time of this Order, in the case of acquisitions and dispositions of Covered Claims; and it is further

ORDERED that the Interim Trading Order is hereby revoked, and to the extent the Interim Trading Order is inconsistent with the provisions of this Order, such revocation is hereby made on a retroactive basis, and there shall be no sanction for any violation of the Interim Trading Order that would not have been a violation of this Order; and it is further

ORDERED that the following procedures and restrictions are imposed and approved:

1.    Notice of Substantial Equityholder Status.  Within thirty (30) days of the later of the Effective Time of the Interim Trading Order and the date on which an Entity becomes a Substantial Equityholder, each Substantial Equityholder shall serve on the Debtors, by facsimile or overnight mail, a notice in the form attached hereto as Exhibit A-1 (a "**Substantial Equityholder Notice**"), setting forth summary information regarding the aggregate amount of each class of Stock of which it has Tax Ownership.

2.    Restrictions and Procedures for Trading in Stock.[4]  Any Entity that, after the Effective Time,

(i)    is not a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of Stock that would cause the Entity to become a Substantial Equityholder;

(ii)    is a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Stock; or

(iii)    is a Substantial Equityholder and wishes to sell or otherwise dispose of Tax Ownership of any Stock,

must, prior to the consummation of any such transaction, serve on the Debtors a notice in the form attached hereto as Exhibit A-2, in the case of a proposed acquisition of Stock, or Exhibit A-3, in the case of a proposed disposition of Stock (either such notice, a "**Proposed Stock Transaction Notice**").  If no written objection to the proposed transaction is filed with the Court by the Debtors within ten (10) calendar days following the receipt of a Proposed Stock Transaction Notice, then the transaction may proceed.  If a written objection to the proposed transaction is filed by the Debtors with the Court within such period, then the transaction may not be consummated unless approved by a final and nonappealable order of the Court; *provided, however,* that under no circumstances may the Debtors object to any purchase, sale, or other transfer of Tax Ownership of Stock by or to any Entity pursuant to a binding contract entered into by

---

[4]    This provision is intended to prevent transactions that would trigger an ownership change under the basic provisions of section 382 relating to acquisitions of shares by 5-percent shareholders.  Because trading in shares can directly trigger a section 382 ownership change, the Model Order requires prior notice to the Debtors of potentially problematic transactions, and gives them 10 days to object.  Acquisitions and dispositions of Stock in violation of this procedure are void ab initio.  The provision extends to dispositions of Stock by Substantial Equityholders because a group of non-Substantial Equityholders may be treated as a separate 5-percent shareholder for purposes of the ownership change rules, and a transfer of Stock from a Substantial Equityholder to that group could result in a triggering ownership change by virtue of increasing the group's aggregate ownership of Stock.

that Entity before the Effective Time.  Further transactions within the scope of this Section 2 must be the subject of additional notices as set forth herein with additional waiting periods.

3.      <u>Restrictions and Procedures for Trading in Covered Claims</u>.[5]  (a) Any Entity that, after the Effective Time,

   (i)      is not a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of an amount of Covered Claims that causes the Entity to become a Substantial Claimholder; or

   (ii)      is a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of any additional Covered Claims,

will have an obligation, in the event that the Court issues a Sell Down Order at the request of the Debtors pursuant to Section 4, to sell or otherwise transfer Tax Ownership of an aggregate amount of Covered Claims sufficient to prevent such Entity from having Tax Ownership of an amount of the reorganized Debtors' stock as a result of the implementation of the 382($l$)(5) Plan that exceeds the greater of (x) the Applicable Amount; and (y) the amount determined under the formula specified in the Sell Down Notice applicable to such Entity pursuant to Section 4; *provided, however,* that such Entity shall not be required to make any sale or other transfer of Tax Ownership of Covered Claims that would result in such Entity having Tax Ownership of an aggregate amount of Covered Claims that is less than the greater of (w) the Threshold Amount, as revised from time to time; and (z) such Entity's Protected Amount.  If a Substantial Claimholder holds more than one category of Covered Claim, the category or categories of Covered Claims to be transferred in order to comply with the obligation set forth above will be left to the discretion of the Substantial Claimholder.

      (b)      Any Entity that enters into a transaction described in subsection (a)(i) or (a)(ii) of this Section 3 and that participates in formulating any Chapter 11 plan of reorganization of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisers with regard to such a plan) shall not so participate in a manner that makes evident to the Debtors that any Covered Claims of which such Entity has Tax Ownership are Newly Traded Covered Claims (the "**Participation Restriction**").[6]  For this purpose, the Debtors acknowledge and agree that the

---

[5]      This provision is intended to preserve the Debtors' ability to benefit from the section 382($l$)(5) exemption, and in particular to conserve the amount of claims with respect to which the Debtors may apply the rule that allows claims against a debtor corporation to be treated as "old and cold" if the holder will own less than 5 percent of the corporation's equity after the bankruptcy reorganization.  The provision functions by way of a "sell down" mechanism under which creditors, including Substantial Claimholders, remain free to buy and sell claims throughout the course of the bankruptcy proceeding, unless and until the Debtors propose a plan of reorganization that relies on the section 382($l$)(5) exemption and such plan more particularly requires Substantial Claimholders to reduce their positions in order to conserve the amount of claims with respect to which the Debtors may make an "old and cold" presumption.  The mechanism then generally requires Substantial Claimholders to sell claims in order to reduce their positions, but not below the Threshold Amount or below the level of their positions at the beginning of the bankruptcy.  The "sell down" mechanism also generally does not require Substantial Claimholders to sell any claims that are (i) acquired pursuant to binding contracts entered into before the bankruptcy; or (ii) acquired in circumstances that would not result in an increased risk of the section 382($l$)(5) exemption being unavailable.  See the definition of "Protected Amount," below.

[6]      The Participation Restriction is motivated by an extremely complicated provision of the section 382($l$)(5) regulations, which is designed to prevent the section 382($l$)(5) exemption from applying where a new holder acquires claims with a view to influencing the resolution of a bankruptcy.  Under an anti-abuse rule, the restriction applies both with respect to the new holder, as well as with respect to persons that acquire claims from the new holder, if certain conditions are met.  Under this latter rule, claims can arguably become "tainted" if the debtor becomes aware that the claims are associated with a new holder that is attempting to influence the resolution of the bankruptcy, and will no longer qualify for the "old and cold" presumption thereafter, either in the new holder's hands or in the hands of subsequent acquirers.  Because the "sell down" mechanism is designed to conserve the amount of claims for which the "old and cold" presumption

following activities shall not without more constitute a violation of the Participation Restriction: (i) filing an objection to a proposed disclosure statement or to confirmation of a proposed plan of reorganization; (ii) voting to accept or reject a proposed plan of reorganization; (iii) reviewing or commenting on a proposed business plan; (iv) being a member of a Creditors Committee or an ad hoc committee; (v) providing information to the Debtors' counsel on a confidential basis; or (vi) taking any action required by this Order.

(c)     Any Entity that enters into a transaction described in subsection (a)(i) or (a)(ii) of this Section 3 shall serve on the Debtors a notice in the form attached hereto as Exhibit B-1 (a "**Notice of Consent**") no later than fifteen (15) calendar days following the first time that such Entity enters into such a transaction; *provided, however*, that if an Entity enters into a transaction described in subsection (a)(i) or (a)(ii) of this Section 3 after the Debtors have filed a Reporting Notice with the Court pursuant to Section 4(a), such Entity shall serve any required Notice of Consent no later than five (5) calendar days following the time that such Entity enters into the transaction; and *provided, further*, that any Entity that has Tax Ownership of Covered Claims may serve a Notice of Consent at any time following the Effective Time and will then be relieved of any requirement to serve any further Notice of Consent (such Entity a "**Consenting Claimholder**").  For the avoidance of doubt, an Entity shall be required to file no more than one Notice of Consent.

4.     Sell Down Procedures.

(a)     *Reporting of Substantial Claimholder Status.*  In order to assess the feasibility of implementing a 382(*l*)(5) Plan and the need for petitioning the Court for a Sell Down Order (as defined below), the Debtors may file with the Court and further publish and serve in the manner specified in Section 9 a notice (the "**Reporting Notice**") requiring each Substantial Claimholder, within thirty (30) calendar days of the Debtors' filing of the Reporting Notice with the Court, to serve on the Debtors a notice in the form attached hereto as Exhibit B-2 (a "**Substantial Claimholder Notice**").  An Entity that is uncertain whether or not it is a Substantial Claimholder may serve a Substantial Claimholder Notice in the manner described above in order to preserve its rights under this Order.

(b)     *Petition for Sell Down Order and Notification Procedures.*  After filing a 382(*l*)(5) Plan and Disclosure Statement with respect thereto with the Court, but no later than the expiration of the seventy-five (75) day period beginning with the date on which the Debtors file a Reporting Notice with the Court, the Debtors may file a motion with the Court for the issuance of an order (the "**Sell Down Order**") that (i) authorizes the Debtors to issue Sell Down Notices to each Entity that has timely filed a Substantial Claimholder Notice showing Tax Ownership of Covered Claims that, pursuant to the terms of the 382(*l*)(5) Plan (and prior to giving effect to the Sell Down Order), would entitle such Entity to acquire Tax Ownership of more than the Applicable Amount of the equity of the reorganized Debtors (a "**Potential Substantial New Equityholder**"); and (ii) provides that any Entity other than a Potential Substantial New Equityholder shall not be entitled to acquire Tax Ownership of more than the Applicable Amount of the equity of the reorganized Debtors (or consideration in lieu thereof) if the 382(*l*)(5) Plan is consummated. The motion for a Sell Down Order shall be published and served in the manner described in Section 9 within five (5) business days of the filing of such motion with the Court.  Each Potential Substantial New Equityholder shall also be served with a copy of the motion and the proposed Sell Down Notice applicable to such Entity within five (5) business days of the filing of such motion with the Court.

Each Sell Down Notice shall indicate (i) the Debtors' calculation, determined in the Debtors' reasonable judgment, of the amount of each class of equity of the reorganized Debtors of which the Potential Substantial New Equityholder would otherwise acquire Tax Ownership under the terms of the 382(*l*)(5) Plan, based on the Substantial Claimholder Notice filed by such Entity (such Entity's "**Preliminary Amount**"); and (ii) a formula for determining the amount of each class of equity of the reorganized Debtors of which such Entity would be permitted to acquire Tax Ownership under the 382(*l*)(5) Plan, based on a proportionate reduction in the Preliminary Amounts of each Potential Substantial New Equityholder in accordance with the terms of the Sell Down Notices issued to all

---

can be made, it is important that Covered Claims potentially subject to a Sell Down Notice not become tainted under this rule.

Potential Substantial New Equityholders.[7] If there is uncertainty regarding how Covered Claims will be resolved under the 382(*l*)(5) Plan, the Debtors will use their reasonable judgment in determining the Preliminary Amounts.

(c)     *Objections to a Sell Down Order.*  A Potential Substantial New Equityholder in receipt of a Sell Down Notice will be permitted to object to the Sell Down Order and petition the Court for the revocation of the Sell Down Order.  In the event that a Potential Substantial New Equityholder in receipt of a Sell Down Notice objects to the Sell Down Order on the grounds that the Sell Down Notice either contains a mathematical error or requires the Potential Substantial New Equityholder to reduce its ownership of Covered Claims below the Threshold Amount or the Potential Substantial New Equityholder's Protected Amount, then the Debtors will be permitted to serve new Sell Down Notices correcting such errors if they determine this to be advisable.  In the event that a Potential Substantial New Equityholder objects to the Sell Down Order on any other grounds, or in the event that a Potential Substantial New Equityholder continues to object to a Sell Down Notice on the grounds set forth in the preceding sentence, then the Sell Down Order and Sell Down Notices shall be automatically revoked and cease to be effective unless the Debtors establish the following:

(i)     there is a reasonable possibility that the proposed 382(*l*)(5) Plan will be confirmed;

(ii)     based on projections by a nationally recognized law firm or accounting firm:

(1)     substantial tax attributes will be available to be carried over under the proposed 382(*l*)(5) Plan to reduce the future U.S. federal income tax liabilities of the Debtors, taking into account, among other things, anticipated reductions in tax attributes under section 108(b) of the Internal Revenue Code that will occur as a result of the implementation of the 382(*l*)(5) Plan and anticipated deductions arising from payments made under the 382(*l*)(5) Plan;[8]

(2)     the transfers of Covered Claims requested by the Debtors pursuant to the Sell Down Notices are consistent with Section 3 and are reasonably necessary and appropriate to ensure that the ownership requirements of section 382(*l*)(5) of the Internal Revenue Code will be satisfied in connection with the proposed 382(*l*)(5) Plan; and

(3)     it is reasonably likely that the utilization of section 382(*l*)(5) of the Internal Revenue Code will be more beneficial to the Debtors and their estates than utilizing section 382(*l*)(6) of the Internal Revenue Code; and

(iii)     the terms of the Sell Down Order and Sell Down Notices are appropriate for purposes of preserving the viability of the 382(*l*)(5) Plan, and require Potentially Substantial New Equityholders to dispose of Covered Claims only to a degree that is reasonable necessary for that purpose (after taking into account reasonable "cushions", margins for error, etc.).

---

[7]     By way of example, if Potential Substantial New Equityholders own an amount of Newly Traded Covered Claims such that they are required to reduce their Preliminary Amounts by 20 percent, a Potential Substantial New Equityholder whose Preliminary Amount was 150,000 shares generally would be required (subject to the provisions relating to Protected Amounts) to sell Covered Claims such that the Potential Substantial New Equityholder would be entitled to receive no more than 120,000 shares of the equity of the reorganized Debtors under the 382(*l*)(5) Plan.

[8]     Under section 108(b), a corporation's tax attributes, including its NOL carryovers, will be reduced by deemed income from the discharge of indebtedness in bankruptcy, including deemed income in respect of debt that is exchanged for equity with a fair market value that is less than the debt's principal amount.  Section 108(b) operates independently of section 382, and imposes an additional and substantial limitation on the continued viability of pre-bankruptcy NOL carryovers.

In the event the 382(*l*)(5) Plan is amended, the related Sell Down Notices will remain effective; *provided, however,* that Potential Substantial New Equityholders in receipt of a Sell Down Notice will be permitted to make new objections to the Sell Down Order, regardless of whether they previously made any objections; and *provided, further,* that, if the Debtors withdraw the 382(*l*)(5) Plan, the Sell Down Order and Sell Down Notices will be automatically revoked and have no further effect.

(d)     *Procedures for Implementing a Sell Down Order.*  Each transfer of Covered Claims required by a final Sell Down Notice shall occur prior to the later of (i) the date that is ten (10) calendar days after the date of confirmation of the 382(*l*)(5) Plan; (ii) the date that is sixty (60) calendar days after receipt of the Sell Down Notice;[9] and (iii) the date, if any, specified in all of the Sell Down Notices.  Once a Potential Substantial New Equityholder has transferred its Covered Claims in accordance with a Sell Down Notice, such Entity shall, by the date that is five (5) calendar days following the latest date for completing such transfer in accordance with this subsection (d), serve on the Debtors a notice in the form attached hereto as Exhibit B-3 (a "**Notice of Completed Sell Down**").  Such Entity may be subject to the Equity Forfeiture Provisions if such Entity acquires additional Covered Claims in a manner that would increase the amount of the reorganized Debtors' equity to which such Entity would be entitled pursuant the implementation of the 382(*l*)(5) Plan above the amount specified in the Sell Down Notice applicable to such Entity.

(e)     *Procedure if no Sell Down Notices are Required.*  If the Debtors determine, based on the Substantial Claimholder Notices filed in response to the Reporting Notice, that no Sell Down Notices appear necessary in order to implement a 382(*l*)(5) Plan, the Debtors may move the Court for an order requiring advance notice of certain acquisitions of Covered Claims (the "**Claims Trading Notice Order**"). Under the Claims Trading Notice Order:

(i)     any Potential Substantial New Equityholder proposing to acquire Covered Claims in a transaction following which such Entity would have Tax Ownership of Covered Claims that, pursuant to the terms of the 382(*l*)(5) Plan, would entitle such Entity to receive equity of the reorganized Debtors in excess of the amount of equity to which such Entity would have been entitled based on the holdings reported on such Entity's Substantial Claimholder Notice; and

(ii)     any Entity that would become a Potential Substantial New Equityholder by virtue of a proposed acquisition of Covered Claims,

will be required, prior to the consummation of any such transaction, to serve on the Debtors a notice in the form attached hereto as Exhibit B-4 (a "**Proposed Covered Claim Transaction Notice**").  The same procedures applicable to a Proposed Stock Transaction Notice will apply with respect to a Proposed Covered Claim Transaction Notice.  If the Debtors object to the proposed transaction and the Entity that has delivered the Proposed Covered Claim Transaction Notice requests a hearing, the Debtors will be required to establish items (i), (ii)(1), and (ii)(3) from subsection (c), above, and that, based on projections by a nationally recognized law firm or accounting firm, the rejection of the proposed transaction is reasonably necessary and appropriate to ensure that the ownership requirements of section 382(*l*)(5) of the Internal Revenue Code will be satisfied in connection with the proposed 382(*l*)(5) Plan, in order for the objection to be sustained.

In addition, the Claims Trading Notice Order will require any Entity that has acquired Tax Ownership of Covered Claims as to which a motion would have been required under the preceding paragraph, but for the fact that such acquisition occurred prior to the entry of the Claims Trading Notice Order, to serve notice of such fact on the Debtors within fifteen (15) calendar days of the entry of the Claims Trading Notice Order.  If the Debtors determine that the retention by such Entity of such Covered Claims could jeopardize the implementation of the 382(*l*)(5) Plan, they will serve a Sell Down Notice on such Entity, in which case the procedures and standards of proof described in subsection (c) of this

---

[9]     Based on experience, sixty days is a more practical sell down period than the thirty-day period in the previous model NOL order.

Section 4 will apply.  The provisions of this paragraph will also apply to an Entity that is exempted by the fourth and fifth decretal paragraphs of this Order (relating to property described in Section 1110 of the Bankruptcy Code) from giving the advance notice otherwise required by the preceding paragraph of this subsection 4(d) with respect to an acquisition of Covered Claims.  In such a case, notice of the acquisition must be served on the Debtors within the earlier of (i) the date that is fifteen (15) calendar days after the date of such acquisition; and (ii) the later of the date of such acquisition and the date that is fifteen (15) calendar days prior to the scheduled effective date of such 382($l$)(5) Plan.

     5.    <u>Confidentiality</u>.

The Debtors shall keep all information provided in notices delivered pursuant to this Order strictly confidential and shall not disclose the contents thereof to any person (including any member of any Creditors Committee), except (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided, however,* that the Debtors may disclose the contents thereof to their professional financial advisers and, upon the request of the Equity Committee, if any, shall disclose information relating to any proposed Stock transaction (but not information relating to any proposed transaction relating to Covered Claims) to the counsel and professional financial advisers of the Equity Committee, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, including any member of the Equity Committee, subject to further Court order.  To the extent confidential information is necessary to respond to a petition or objection filed with the Court, such confidential information shall be filed under seal or in redacted form.  For the avoidance of doubt, the foregoing provisions shall not preclude the Debtors from including in their unredacted, unsealed filings with the Court summary information regarding the amount of equity of the reorganized Debtors that Potential Substantial New Equityholders (not identified by name or otherwise) would be expected to receive under the terms of the 382($l$)(5) Plan before and after the implementation of the Sell Down Order.

     6.    <u>Sanctions for Noncompliance</u>.

     (a)    *Noncompliance Relating to Stock.*  Acquisitions and dispositions of Tax Ownership of Stock in violation of the restrictions and procedures set forth in Section 2 shall be void ab initio, and the sanction for violating Section 2 shall be reversal of the noncompliant transaction or such other (or additional) measures as the Court may consider appropriate.[10]

     (b)    *Noncompliance Relating to a Sell Down Notice or a Claims Trading Notice Order*. In the event that any Entity fails to make a required transfer of Covered Claims under Sections 3 and 4, such Entity shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in connection with the implementation of the 382($l$)(5) Plan in excess of the greater of (a) the Applicable Amount and (b) the amount determined under the formula specified in the Sell Down Notice applicable to such Entity pursuant to Section 4.  Any Entity that was required to file a Substantial Claimholder Notice and did not do so shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in excess of the Applicable Amount in connection with the implementation of the 382($l$)(5) Plan.  Any Entity that acquires Covered Claims in violation of a Sell Down Order or a Claims Trading Notice Order shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in connection with the implementation of the 382($l$)(5) Plan in excess of the amount of equity to which such Entity would have been entitled had it not acquired such Covered Claims.[11]  The foregoing sanctions (the "**Equity Forfeiture Provisions**") shall be effective without any further order of the Court.  Any purported

---

[10]    Because transactions in Stock can directly trigger an immediate section 382 ownership change, the Model Order makes noncompliant transactions void ab initio.

[11]    Because acquisitions of Covered Claims are only potentially problematic to the extent that they result in a Substantial Claimholder receiving additional equity of a Debtor pursuant to a 382($l$)(5) Plan, the appropriate sanction for failure to comply with a Sell Down Notice is to prohibit the Substantial Claimholder from receiving equity in exchange for the additional Covered Claims that it acquired.  In order to enforce this provision, it may be appropriate to insert a forfeiture clause in the plan of reorganization.

acquisition of Tax Ownership of stock of the reorganized Debtors pursuant to the implementation of the 382($l$)(5) Plan that is precluded by the Equity Forfeiture Provisions (such stock the "**Forfeited Equity**") shall be void ab initio.  Notwithstanding anything to the contrary in this Order, in no event shall any Entity be restricted from voting for or against confirmation of any plan of reorganization as a result of (1) a purchase or other acquisition of Tax Ownership of Covered Claims by such Substantial Claimholder; (2) a failure by such Substantial Claimholder to comply with an obligation to transfer Covered Claims under Sections 3 and 4; or (3) such Substantial Claimholder taking any other action or failing to take any other action with respect to Covered Claims in a manner that violates this Order.[12]

   7.  Exceptions and Special Rules.[13]

   (a)  *Agents.*  Acquisitions and dispositions of Tax Ownership of Stock or Covered Claims by an Entity acting as an Agent on behalf of another Entity shall not be subject to this Order with respect to that Agent; *provided*, *however*, that the account, customer, fund, principal, trust, or beneficiary shall not be excluded from this Order by reason of this subsection, although there shall be no affirmative duty to inquire whether the account, customer, investment fund, principal, trust, or beneficiary is subject to any restrictions or requirements under this Order.

   (b)  *Offsetting Acquisitions and Dispositions.*  Acquisitions and dispositions of Tax Ownership of Stock or Covered Claims by an Entity that net to zero at the end of a trading day and that settle on the same settlement date (including, without limitation, "day trading" transactions, and transactions in which an Entity acts as a "riskless principal" between customers by buying and selling the same aggregate amounts of securities) shall not be subject to this Order with respect to such Entity; *provided*, *however*, that such transactions shall not be excluded from this Order with respect to such Entity's counterparties solely by reason of this subsection, although there shall be no affirmative duty to inquire whether such counterparties are subject to any restrictions or requirements under this Order.

   (c)  *Short Sales and Onlending.*  The borrowing of Stock or Covered Claims by an Entity for the purpose of effecting short sales or for onlending, whether for the Entity's own account or for a customer account, shall not be subject to this Order with respect to such Entity or its customer, nor shall such short sales or onlending, so long as such borrowing does not occur prior to the day when such Stock or Covered Claims are used to complete and settle the short sale or onlending; *provided*, *however*, that the purchaser of such Stock or Covered Claims in a short sale shall not be excluded from this Order solely by reason of this subsection, although there shall be no affirmative duty to inquire whether such purchaser is subject to any restrictions or requirements under this Order.  The unwinding of such a short sale by the short-seller shall also not be subject to this Order, so long as the Stock or Covered Claims used to close the borrowing are acquired on the date such Stock or Covered Claims are returned to the lender.

   (d)  *Netting Agreements.*  Where an Entity is a party to an enforceable netting agreement with respect to transactions in Stock or Covered Claims, the Entity shall be treated for purposes of this Order as having an obligation to acquire or dispose of Tax Ownership on a given day of only the net amount of Stock or Covered Claims that are to be acquired or disposed of on such day pursuant to such agreement.

   (e)  *Collateral for Money Loans.*  The use of Stock or Covered Claims as collateral for a money loan shall not be treated as giving rise to an acquisition or disposition of Tax Ownership of Stock

---

[12] This provision preserves a Substantial Claimholder's ability to vote on a proposed plan of reorganization, regardless of whether the Substantial Claimholder is subject to, or in violation of, a Sell Down Notice.  Thus, a noncompliant Substantial Claimholder may vote to reject a 382($l$)(5) Plan, and if the plan is in fact rejected, its sell down obligation would effectively be eliminated.

[13] The exceptions set forth in Section 8 are mainly situations in which there is no relevant transfer of Tax Ownership with respect to a particular party (e.g., because the party is an agent, and acquires no ownership in its own right, or because the party engages in offsetting transactions).  Although many of the situations described in Section 8 would not give rise to concern under the basic provisions of the model order, it is useful to make the correct interpretation of certain common transactions absolutely clear.

or Covered Claims that is subject to this Order; *provided, however*, that any transfer of collateral pursuant to the collection of such money loan shall not be excluded from this Order solely by reason of this subsection.

(f) *Acquisition of Ownership Interest in a Substantial Claimholder.* The acquisition of an equity interest in a Substantial Claimholder (the "Transferred Person") shall not be subject to this Order, so long as the aggregate amount of Covered Claims held by the Transferred Person represents less than 25 percent of the fair market value of the total gross assets (excluding cash or cash equivalents) of the Transferred Person.

(g) *Participations.* The holder of a participation interest in Stock or Covered Claims, and not the originator of such participation interest, shall be treated as having Tax Ownership of such Stock or Covered Claims for purposes of this Order to the extent of the participation interest, so long as the participation interest is documented under standard commercial terms and is without recourse to the originator.

8. <u>Discretionary Waiver by Debtors</u>. The Debtors may waive any sanctions, remedies, or notification procedures imposed by this Order on parties other than the Debtors.

9. <u>Notice of this Order</u>. Within five (5) business days of the entry of this Order, the Debtors shall (i) submit a notice of the entry of this Order (substantially in the form attached hereto as Exhibit C) for publication on the Bloomberg newswire service[14] and the Depository Trust Company Legal Notice System (also known as LENS); (ii) post such notice together with a copy of this Order on the Case Information Website, as described in the Case Management Order, for posting of documents in the Debtors' cases; (iii) serve a notice of the entry of this Order on (1) the Office of the United States Trustee for the [ ] District of [ ]; (2) all indenture trustees for the Covered Claims; (3) counsel for the Creditors Committee; (4) any identified Substantial Equityholders, Substantial Claimholders and Consenting Claimholders; and (5) the Internal Revenue Service. Upon receipt of such notice, counsel for the Creditors Committee shall send such notice to their respective committee members, and, if requested by the Debtors, any indenture trustees shall send such notice to all holders of the Covered Claims of more than $[_____] registered with such indenture trustee or transfer agent; *provided, however,* that, if any indenture trustee provides the Debtors with the name and addresses of all holders of the Covered Claims of more than $[_____] registered with such indenture trustee, the Debtors shall deliver such notice to such holders at the Debtors' expense; and *provided, further,* that, neither any indenture trustee nor the Debtors shall be required to serve such notice on the Depositary Trust Company. All notices required to be served on specific parties in accordance with this paragraph shall be served by means of facsimile and overnight mail.

10. <u>Continued Compliance with Other Applicable Laws and Rules</u>. The requirements set forth in this Order are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

11. <u>Definitions</u>. For purposes of this Order, the following definitions shall apply:

"**382(***l***)(5) Plan**" means a plan of reorganization for the Debtors under Chapter 11 pursuant to which there is a reasonable possibility that section 382(*l*)(5) of the Internal Revenue Code will be utilized and which provides that transfers of Tax Ownership of the reorganized Debtors' equity will be restricted for not less than two years after the reorganization, in a manner reasonably sufficient to prevent the application of section 382(*l*)(5)(D) of the Internal Revenue Code.[15]

---

[14] The Bloomberg newswire service publishes company press releases, subject to editorial screening and review. Press releases may be submitted by email to <u>release@bloomberg.net</u>, and by fax to (609) 897-8394.

[15] As discussed above, if a second ownership change occurs within two years of an ownership change covered by the section 382(*l*)(5) exemption, the section 382 limitation with respect to the second ownership

"**Agent**" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse, or trustee (including an Indenture Trustee but not including a trustee qualified under section 401(a) of the Internal Revenue Code).

"**Applicable Amount**" means (i) if only one class of equity of the reorganized Debtors is to be issued pursuant to the terms of a 382($l$)(5) Plan, 4.75 percent of the number of such shares that the Debtors reasonably estimate will be issued at the effective time of such 382($l$)(5) Plan; and (ii) if more than one class of equity of the reorganized Debtors is to be distributed pursuant to the terms of a 382($l$)(5) Plan, any combination of shares that would cause a holder to be treated as a 4.75-percent shareholder for purposes of the 5-percent shareholder rules under section 382 of the Internal Revenue Code, calculated in accordance with a formula determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed, as reflected in a valuation analysis set forth in the Disclosure Statement, and expressed in a manner that makes clear how many shares of any combination of equity would constitute an Applicable Amount.

"**Bankruptcy Code**" means title 11 of the United States Code.

"**Chapter 11**" means chapter 11 of the Bankruptcy Code.

"**Claims Trading Notice Order**" has the meaning given in Section 4(d).

"**Consenting Claimholder**" has the meaning given in Section 3(c).

"**Covered Claims**" means:

(i) any general unsecured claims against the Debtors that are treated as indebtedness for U.S. federal income tax purposes, including unsecured claims incurred in the ordinary course of the Debtors' business, unsecured debt securities issued by the Debtors, and unsecured preferred securities issued by the Debtors that are treated as indebtedness for U.S. federal income tax purposes,[16] but not including:

(1) any loans or other financial accommodations made to or for the benefit of the Debtors pursuant to debtor-in-possession financing agreements;[17] and

(2) any [_____] claims; and[18]

---

change is zero, and the benefits of using the section 382($l$)(5) exemption with respect to the first ownership change may be substantially eliminated. The debt provisions of the Model Order are limited to situations in which a plan for reorganization will utilize the section 382($l$)(5) exemption, and will not allow the benefits of the exemption to be eliminated by post-reorganization transfers.

[16] The restrictions on claim trading set forth in the Model Order are not generally intended to apply to secured debt. The reason for this limitation is that claim trading during a bankruptcy only has a potential to jeopardize a debtor's post-confirmation NOL carryovers to the extent that the traded claims may be exchanged for equity pursuant to a plan of reorganization. A reorganization plan will typically provide for the distribution of new debt securities, instead of equity, in satisfaction of secured claims in accordance with the requirements of fair and equitable treatment under section 1129(b)(2) of the Bankruptcy Code.

[17] Because claims under debtor-in-possession financing arrangements would not be expected to be exchanged for equity pursuant to a plan of reorganization, they are also excluded from the scope of the claim trading restrictions.

[18] In many cases, it will be helpful specifically to list certain classes of claims that will be excluded from the Covered Claims definition, in order to avoid any confusion as to what constitutes an excluded claim. In some cases, there may also be some basis for excluding claims against certain Debtor entities from the

(ii)      a portion of certain partially secured claims as follows:

(1)      [__]% of the principal and accrued interest as of the petition date in the case of the [_____] claims; and

(2)      [__]% of the principal and accrued interest as of the petition date in the case of the [_____] claims.[19]

"**Creditors Committee**" means the official committee of unsecured creditors that has been appointed in these cases.

"**Debtors**" has the meaning given in the first paragraph hereof.

"**Disclosure Statement**" means a disclosure statement filed with the Court relating to a proposed plan of reorganization for the Debtors under Chapter 11.

"**Effective Time**" means the earlier of:

(i)      two hours after notice of this Order first appears on the Bloomberg newswire service; and

(ii)      10:00 A.M. Eastern Time on the morning when notice of this Order is first published in the Wall Street Journal.[20]

"**Entity**" means a person or entity for purposes of the rules under section 382 of the Internal Revenue Code.

"**Equity Committee**" means a statutorily appointed equityholders committee for one or more of the Debtors.

"**Equity Forfeiture Provisions**" has the meaning given in Section 6(b).

"**Forfeited Equity**" has the meaning given in Section 6(b).

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Interim Trading Order**" means the INTERIM ORDER, DATED [_____], [_____], PURSUANT TO SECTIONS 105(a), 362, AND 541 OF THE BANKRUPTCY CODE ESTABLISHING RESTRICTIONS AND PROCEDURES FOR CERTAIN TRADING ACTIVITY IN

---

provisions of the order. For example, where one affiliated Debtor has substantial assets and remains solvent on a balance sheet basis notwithstanding the bankruptcy proceedings, it may be unlikely that claims against that Debtor would be subject to a debt-for-equity exchange on the same terms as contemplated with respect to other less solvent affiliated Debtors. However, even in cases where some Debtors appear relatively more solvent, it may be appropriate to have the order apply to unsecured claims against all Debtors until such time as the actual terms of a plan of reorganization are formulated.

[19]    A more difficult question arises with respect to debt that is undersecured, and with respect to sale-leaseback and other structured finance arrangements that do not have sufficient collateral. The approach taken in a number of cases, and that has been taken in the Model Order, is to include a portion of such partially secured claims within the definition of Covered Claims. The Debtors will need to determine a percentage to be applied against each class of partially secured claims, such percentage being a best estimate of the extent to which the claims from the class could potentially be exchanged for equity pursuant to a plan of reorganization.

[20]    The Effective Time definition is intended to ensure that market participants receive adequate notice of the restrictions imposed by the order. In this regard, the Model Order is primarily designed for situations in which claims are actively traded in the national and international debt markets.

EQUITY INTERESTS IN [_____] AND ITS AFFILIATED DEBTORS, AS DEBTORS IN POSSESSION.

"**Motion**" has the meaning given in the first paragraph hereof.

"**Newly Traded Covered Claims**" means Covered Claims (i) of which an Entity acquired Tax Ownership after the date that was 18 months before the Petition Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Tax Ownership.

"**NOL**" has the meaning given in first paragraph of the findings hereof.

"**Notice of Completed Sell Down**" has the meaning given in Section 4(c).

"**Notice of Consent**" has the meaning given in Section 3(c).

"**Participation Restriction**" has the meaning given in Section 3(b).

"**Petition Date**" means [_____ __], [_____].

"**Potential Substantial New Equityholder**" has the meaning given in Section 4(b).

"**Preliminary Amount**" has the meaning given in Section 4(b).

"**Proposed Covered Claim Transaction Notice**" has the meaning given in Section 4(d).

"**Proposed Stock Transaction Notice**" has the meaning given in Section 2.

"**Protected Amount**" means the amount of Covered Claims of which an Entity has Tax Ownership on the Petition Date,

(i)    *increased by* the amount of Covered Claims of which such Entity acquires Tax Ownership pursuant to contracts entered into before the Effective Time (regardless of whether such contracts are subject to any contingencies or require the affirmative exercise of any rights),[21] and the amount of Covered Claims of which such Entity acquires Tax Ownership after the Effective Time pursuant to the exercise of rights under a secured debt instrument (including a voluntary foreclosure) of which such Entity has Tax Ownership before the Effective Time, minus the amount of Covered Claims the Tax Ownership of which such Entity disposes pursuant to contracts entered into before the Effective Time; and

(ii)   *increased by* an amount of Covered Claims (the "**Acquired Covered Claims**") of which such Entity ("**Acquiror**") acquires Tax Ownership from another Entity ("**Transferor**"), if and to the extent that Acquiror establishes, by clear and convincing evidence, that:

---

[21]    For this purpose, a "contract" is any contract that is enforceable against such Entity before the Effective Time, and includes a contract that is subject to contingencies or conditions subsequent (as, e.g., a credit default swap) that will only be resolved after the Effective Time. For purposes of the provision, it is also contemplated that Covered Claims will be treated as acquired pursuant to such a contract notwithstanding the fact that the acquisition is only required after the transferor or transferee exercises or fails to exercise, before or after the Effective Time, a right or privilege that is embedded in the contract (including, without limitation, a right to give notice of a triggering event, a right to settle the contract with cash or other property, or a right of first refusal with respect to the Covered Claims).

(1)    Transferor is bound by a written agreement to reduce its Protected Amount by an amount equal to the increase in Acquiror's Protected Amount pursuant to this clause (ii) (the "**Additional Protected Amount**");

(2)    if Transferor had retained Tax Ownership of the Acquired Covered Claims and any other Covered Claims of which it had Tax Ownership as of the date of transfer of the Acquired Covered Claims, (x) its Protected Amount would have been equal to or greater than the Additional Protected Amount; (y) the Acquired Covered Claims would have been Newly Traded Covered Claims as to Transferor; and (z) it would have been entitled under the terms of the 382(*l*)(5) Plan (after compliance with a Sell Down Notice properly applicable to it) to acquire Tax Ownership of five (5) percent or more of the equity of the reorganized Debtors, and

(3)    either (x) Acquiror has no Newly Traded Covered Claims that are part of its Protected Amount other than the Acquired Covered Claims and those acquired (whether or not from Transferor) in any previous transfers qualifying under this clause (ii); or (y) if Acquiror had not acquired the Acquired Covered Claims, it would have been entitled under the terms of the 382(*l*)(5) Plan (after application of a Sell Down Notice properly applicable to it) to acquire Tax Ownership of five (5) percent or more of the equity of the reorganized Debtors.[22]

"**Reporting Notice**" has the meaning given in Section 4(a).

"**Sell Down Notice**" means a notice to a Potential Substantial New Equityholder requiring the Potential Substantial New Equityholder to transfer Covered Claims in accordance with Sections 3 and 4.

"**Sell Down Order**" has the meaning given in Section 4(b).

"**Stock**" means [_____].[23]

"**Substantial Claimholder**" means an Entity that has Tax Ownership of an aggregate amount of Covered Claims, measured where applicable by principal and accrued interest as of the Petition Date, that equals or exceeds the Threshold Amount (as determined from time to time).[24]

"**Substantial Claimholder Notice**" has the meaning given in Section 4(a).

---

[22]    This provision allows a Substantial Claimholder to acquire additional Covered Claims without creating a risk of being subject to a Sell Down Notice with respect to those Covered Claims, if the transferor agrees to reduce its Protected Amount, and the transfer does not increase the amount of non-qualifying debt in the hands of Substantial Claimholders in the aggregate. The rationale of the provision is that such acquisitions should not reduce the Debtors' ability to benefit from the section 382(*l*)(5) exemption.

[23]    Transactions in "plain vanilla" preferred stock generally do not count for purposes of the section 382 ownership change test. If the debtors have more exotic equity and equity-like securities, however, such securities may need to be included in the Stock definition.

[24]    Pursuant to attribution rules, ownership of Covered Claims generally must be computed on a consolidated basis. Thus, if two affiliated entities own Covered Claims aggregating to the Threshold Amount, both entities will generally be treated as Substantial Claimholders for purposes of the order.

"**Substantial Equityholder**" means an Entity that has Tax Ownership of at least [_____] shares of Stock.[25]

"**Substantial Equityholder Notice**" has the meaning given in Section 1.

"**Tax Ownership**" means beneficial ownership for U.S. federal income tax purposes as determined in accordance with applicable rules under section 382 of the Internal Revenue Code. To the extent provided in those rules, Tax Ownership shall include, but not be limited to, direct and indirect ownership (e.g., a holding company would generally be considered to have Tax Ownership of all Stock or Covered Claims owned by its subsidiaries), ownership by members of a person's family and persons acting in concert and, in certain cases, ownership of an option, warrant, convertible security, or similar interest.[26]

"**Threshold Amount**" means, as an initial matter, [_____].[27] The Debtors will periodically review the definition of the Threshold Amount, with a view to ensuring the reasonableness thereof, but in no event shall the Threshold Amount be decreased with retroactive effect. Any changes to the definition of the term Threshold Amount will be filed with the Court and served and published in the manner described in Section 9.

ORDERED that nothing contained in this Order shall prohibit or in any manner limit a collateral assignee of a claim against the Debtors or a holder of a security interest or lien on a claim against the Debtors arising in respect of property covered by Section 1110 of the Bankruptcy Code from enforcing its rights as such collateral assignee or holder of a security interest or lien or foreclosing such security interest or lien; and it is further

ORDERED that, with respect to equipment described in Section 1110 of the Bankruptcy Code, except as provided in such section, nothing contained in this Order shall prohibit or in any manner limit or otherwise affect the rights of a secured party or a lessor or a conditional vendor under the Bankruptcy Code, including, but not limited to Section 1110; and it is further

---

[25] If calculations of percentage ownership are thought to be uncertain or complicated, it may be appropriate to lower the triggering percentage, in order to build in an additional buffer. In some cases, the percentage has been as low as 4.50 percent. It should also be noted that, pursuant to attribution rules, the percentage ownership of Stock generally must be computed on a consolidated basis. Thus, if one entity owns 2 percent of the Stock and an affiliated entity owns 3 percent, both entities will generally be treated as Substantial Equityholders for purposes of the Model Order. Furthermore, ownership of certain options on Stock may be treated as ownership of the Stock for section 382 purposes.

[26] Ownership of an asset for U.S. federal income tax purposes generally is determined by reference to the locus of risk of loss and opportunity for gain with respect to the asset, and must be resolved based on all the facts and circumstances of a particular situation. Specifically, the fact that a person holds "legal title" to an asset is not enough to make that person the owner for tax purposes. By way of example, a typical loan participation will generally result in the purchaser of the participation having tax ownership of the applicable portion of the loan. A typical cash-settled notional principal contract with respect to a debt instrument, on the other hand, will generally not convey tax ownership of the debt instrument so long as the contract does not require any party actually to hold or transfer the debt instrument. Determinations of tax ownership can be very difficult, and will frequently require the advice of tax professionals.

[27] Determining an appropriate level for the Threshold Amount is one of the most important decisions to be made in connection with a proposed order. Unfortunately, there is no simple formula or methodology for determining a reasonable Threshold Amount in any given case. The goal of the Threshold Amount is to limit the order's debt-related provisions to holders of claims that may potentially be exchanged for 5 percent or more of a Debtor's equity pursuant to a plan of reorganization, because only such holders have a significant potential to jeopardize a Debtor's post-confirmation NOL carryovers as a result of acquiring claims. The determination of the Threshold Amount must be made in the light of a variety of factors, the most important considerations being (i) an estimate of the aggregate amount of unsecured claims that will ultimately be allowed in the proceedings; and (ii) the extent to which post-confirmation business operations will require a debt-for-equity exchange in order to establish a feasible capital structure. In most cases, both of these factors will be difficult to determine with any degree of precision, particularly at an early stage in the proceedings.

ORDERED that, the relief provided in this Order is in addition to, and not in lieu of, any and all other rights and remedies available to the Debtors.

Dated: [_____ __], [_____]

_____
[_____]
United States Bankruptcy Judge

## SUBSTANTIAL EQUITYHOLDER NOTICE

PLEASE TAKE NOTICE that, as of [_____ __], [____], [_____] has Tax Ownership[1] of [_____] shares of the Stock.

PLEASE TAKE FURTHER NOTICE that this Notice is being served upon [_____].

This notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____

[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [____]

---

[1]     Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates dated [_____ __], [____] (the "**Order**").

## NOTICE OF INTENT TO PURCHASE OR OTHERWISE
## ACQUIRE TAX OWNERSHIP OF STOCK

PLEASE TAKE NOTICE that [_____] intends to purchase or otherwise acquire Tax Ownership of [_____] shares of the Stock (the "**Proposed Transaction**").[1]

PLEASE TAKE FURTHER NOTICE that, prior to giving effect to the Proposed Transaction, [_____] has Tax Ownership of [_____] shares of the Stock.

PLEASE TAKE FURTHER NOTICE that, after giving effect to the Proposed Transaction, [_____] would have Tax Ownership of [_____] shares of the Stock.

PLEASE TAKE FURTHER NOTICE that this notice is being served upon [_____].

[_____] further acknowledges and agrees that (i) if the Debtors file a written objection to the Proposed Transaction within ten (10) calendar days of the date of this notice, the Proposed Transaction may not be consummated unless approved by a final and nonappealable order of the Court; (ii) any transaction purportedly consummated in violation of the Order will be void ab initio and will result in the imposition of sanctions as provided in the Order; and (iii) any further transactions contemplated by [_____] that may result in [_____] purchasing or otherwise acquiring Tax Ownership of additional Stock will each require an additional notice to be served in the same manner as this notice.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [____]

---

[1]      Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates dated [_____ __], [____] (the "**Order**").

## NOTICE OF INTENT TO SELL OR OTHERWISE
## DISPOSE OF TAX OWNERSHIP OF STOCK

PLEASE TAKE NOTICE that [_____] intends to sell or otherwise dispose of Tax Ownership of [_____] shares of the Stock (the "**Proposed Transaction**").[1]

PLEASE TAKE FURTHER NOTICE that, before giving effect to the Proposed Transaction, [_____] has Tax Ownership of [_____] shares of the Stock.

PLEASE TAKE FURTHER NOTICE that, after giving effect to the Proposed Transaction, [_____] would have Tax Ownership of [_____] shares of the Stock.

PLEASE TAKE FURTHER NOTICE that this notice is being served upon [_____].

[_____] further acknowledges and agrees that (i) if the Debtors file a written objection to the Proposed Transaction within ten (10) calendar days of the date of this notice, the Proposed Transaction may not be consummated unless approved by a final and nonappealable order of the Court; (ii) any transaction purportedly consummated in violation of the Order will be void ab initio and will result in the imposition of sanctions as provided in the Order; and (iii) any further transactions contemplated by [_____] that may result in [_____] selling or otherwise disposing of Tax Ownership of additional Stock will each require an additional notice to be served in the same manner as this notice.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [_____]

---

[1]     Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors Estates dated [_____ __], [_____] (the "**Order**").

## **NOTICE OF CONSENT**

PLEASE TAKE NOTICE that [_____] (i) has read the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates (the "**Order**");[1] (ii) consulted with such counsel as [_____] deemed appropriate; (iii) understands the Participation Restriction; (iv) acknowledges that [_____] may be required to sell Covered Claims or to refrain from purchasing Covered Claims pursuant to the procedures set out in Section 4 of the Order; and (v) agrees to comply fully and timely with the procedures set out in Section 4 of the Order, including sending a Notice of Completed Sell Down; and (vi) accepts that failure to comply with the obligations and procedures set out in Section 4 of the Order could subject [_____] to the Equity Forfeiture Provisions.

PLEASE TAKE FURTHER NOTICE that this notice is being served on [_____].

This notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [____]

---

[1]     Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order.

### SUBSTANTIAL CLAIMHOLDER NOTICE

PLEASE TAKE NOTICE that [_____] has Tax Ownership of an aggregate amount of Covered Claims that equals or exceeds the Threshold Amount,[1] measured, where appropriate, by principal and accrued interest as of the Petition Date.  As of [_____ __] [____], [_____] has Tax Ownership of the following Covered Claims:

| Debtor | Description of Covered Claim | Amount of Covered Claim | Directly Owned? (✓) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

PLEASE TAKE FURTHER NOTICE that this notice is being served upon [_____].

This notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [____]

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors Estates dated [_____ __], [____] (the "**Order**").

## NOTICE OF COMPLETED SELL DOWN

PLEASE TAKE NOTICE that [_____] has transferred Tax Ownership[1] of Covered Claims as required by the final Sell Down Notice applicable to it (the "**Sell Down**").

PLEASE TAKE FURTHER NOTICE that, after giving effect to the Sell Down, [_____] has Tax Ownership of Covered Claims, as set forth below:

| Debtor | Description of Covered Claim | Amount of Covered Claim | Directly Owned? (✓) |
|--------|------------------------------|-------------------------|---------------------|
|        |                              |                         |                     |
|        |                              |                         |                     |
|        |                              |                         |                     |

PLEASE TAKE FURTHER NOTICE that this Notice is being served upon [_____].

PLEASE TAKE FURTHER NOTICE that [_____] acknowledges and agrees that, pursuant to the Order, (i) any further transactions contemplated by [_____] that result in [_____] purchasing or otherwise acquiring Tax Ownership of additional Covered Claims may subject [_____] to the Equity Forfeiture Provisions.

This notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [_____]

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors Estates dated [_____ __], [_____] (the "**Order**").

**PROPOSED COVERED CLAIM TRANSACTION NOTICE**

PLEASE TAKE NOTICE that [_____] intends to purchase or otherwise acquire Tax Ownership of $[_____] of Covered Claims (the "**Proposed Transaction**"), as set forth below:

| Debtor | Description of Covered Claim | Amount of Covered Claim | Directly Owned? (✓) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

PLEASE TAKE FURTHER NOTICE that, before giving effect to the Proposed Transaction, [_____] has Tax Ownership of $[_____] of Covered Claims, as set forth below:

| Debtor | Description of Covered Claim | Amount of Covered Claim | Directly Owned? (✓) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

PLEASE TAKE FURTHER NOTICE that, after giving effect to the Proposed Transaction, [_____] would have Tax Ownership of $[_____] of Covered Claims.

PLEASE TAKE FURTHER NOTICE that this Notice is being served upon [_____].

[_____] further acknowledges and agrees that (i) if the Debtors file a written objection to the Proposed Transaction within ten (10) calendar days of the date of this notice, the Proposed Transaction may not be consummated unless approved by a final and nonappealable order of the Court; (ii) that any unapproved acquisition of Covered Claims may result in [_____] being subject to the Equity Forfeiture Provisions; and (iii) any further transactions contemplated by [_____] that may result in [_____] purchasing or otherwise acquiring Tax Ownership of additional Covered Claims may require an additional notice to be served in the same manner as this notice.

This notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____
[Name]

[Address]
[Telephone]
[Facsimile]

Dated: [_____ __], [_____]

Exhibit C

**PUBLICATION NOTICE**

Court Enters Order Restricting Trading in Equity and Debt of [ ] and affiliates.

The United States Bankruptcy Court for the [_____] of [_____] has entered an order that imposes substantial restrictions on trading in equity interests in and debt claims against [_____] and its affiliates.  A copy of the order may be found at the following internet address: [_____]; questions regarding the order may be directed to representatives of the debtors at the following telephone number:  [_____].  The case number for the bankruptcy action is [_____].

**Timeline for Proposing and Effecting a Sell Down**

**Step 1**

(Day 1)

Debtor wants to assess viability of the 382(*l*)(5) Plan and files a **Reporting Notice** with the court and serves it on the relevant parties.

**Step 2**

(Day 31)

Substantial Claimholders have 30 days to serve a **Substantial Claimholder Notice** on Debtor.

**Step 3**

(Day 75)

Debtor must file a petition with the court for the issuance of a **Sell Down Order**.

(44 days after deadline for Substantial Claimholder Notice)

(Alternatively, Debtor may conclude no Sell Down is needed, in which case Debtor may request the Court to implement procedures similar to equity procedures, subject to the Equity Forfeiture Provision.)

**Step 4**

(Day 81)

Sell Down Orders must be published and served on relevant parties within 5 business days of the filing of the Motion with the Court.

Each Potential Substantial New Equityholder gets a proposed Sell Down Notice that shows Debtor's calculations of how much equity the Potential Substantial New Equityholder would receive upon effectuation of the 382(*l*)(5) Plan absent a Sell Down, and of how much equity the Potential Substantial New Equityholder would be entitled to receive following the Sell Down.

**Step 5**

(Prior to confirmation of a 382(*l*)(5) Plan)

A Potential Substantial New Equityholder may object to the Sell Down Order and the Debtor will be required to justify the Sell Down Order in a court hearing.

(Other less formal objection procedures for mathematical errors and reduction below the Protected Amount.)

**Step 6**

(Completed by the later of (i) the date that is 10 calendar days after the date of confirmation of the 382(*l*)(5) Plan; (ii) the date that is 60 calendar days after receipt of the Sell Down Notice; and (iii) the date specified in all of the Sell Down Notices)

Assuming the Court upholds the Sell Down Notice, the Sell Down must be completed.

**Step 7**

(Served by the date that is 5 calendar days following the latest date for completing the Sell Down in accordance with Step 6)

**Notice of Completed Sell Down** must be served by each Potential Substantial New Equityholder on the Debtors.  All further purchases of claims by the Potential Substantial New Equityholder are subject to the Equity Forfeiture Provision.