**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                    :
<u>In</u> <u>re</u>                                              :          Chapter 11 Case No.
                                                    :
**BEARINGPOINT, INC., <u>et</u> <u>al.</u>,**                      :          **09-10691 (REG)**
                                                    :
             Debtors.                               :          **Jointly Administered**
                                                    :
---------------------------------------------------------------x

### FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL BY CONSENT AND (B) GRANTING ADEQUATE PROTECTION

        This matter came before the Court on the motion (the "**Motion**") of the above-captioned

debtors (the "**Debtors**") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

and 364 and Fed. R. Bankr. P. 2002, 4001, and 9014, Rule 4001-3 of the Local Rules of

Bankruptcy Procedure for the Southern District of New York (the "**Local Rules**"), and General

Order M-274 of the Bankruptcy Court for the Southern District of New York ("**General Order

M-274**"), (i) authorizing the use of "cash collateral," as such term is defined in section 363 of

title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), in which

the Agent and Secured Lenders (each as defined below) have an interest (the "**Cash

Collateral**"); (ii) providing adequate protection to the Agent (as defined below) and the Secured

Lenders (as defined below) for any diminution in value of the Agent's and Secured Lenders'

interests in the Prepetition Collateral (as defined below), including the Cash Collateral;  and

(iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code

to the extent necessary to implement and effectuate the terms and provisions of this Order.

        Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy

Rules**"), due and sufficient notice of the Motion and this final hearing held on April 15, 2009

(the "**Final Hearing**")  has been provided by the Debtors as set forth in paragraph G below, and the interim hearing having been held on February 19, 2009 (the "**Interim Hearing**"), and the interim order granting the Motion entered on February 20, 2009 [Docket No. 37] (the "**Initial Order**"), as modified and amended by (i) the Order Adjourning Final Cash Collateral Hearing and Supplementing and Amending Interim Cash Collateral Order entered on March 13, 2009, (ii) Second Order Adjourning Final Cash Collateral Hearing entered on March 30, 2009 and (iii) Third Order Adjourning Final Cash Collateral Hearing entered on April 7, 2009 (collectively (i), (ii) and (iii), with the "**Initial Order**", the "**Interim Order**")  with the appearances of all interested parties noted in the record of the Interim Hearing, and Final Hearing and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Debtors at the Interim Hearing and Final Hearing and the Declaration of John DeGroote pursuant to Local Rule 1007-2, and after due deliberation and consideration and good and sufficient cause appearing therefor:

IT IS HEREBY STIPULATED BY THE UNDERSIGNED PARTIES AS FOLLOWS:

A.     On February 18, 2009 (the "**Commencement Date**"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code commencing these chapter 11 cases (the "**Cases**").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their property and are authorized thereby, as debtors-in-possession, to continue the operation and management of their businesses.  No request has been made for the appointment of a trustee or examiner and none has been appointed.  On February 27, 2009, the U.S. Trustee appointed an official committee of unsecured creditors in the Cases (the "**Committee**").

B.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d). Venue of these Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     After consultation with their attorneys and financial advisors, but without prejudice to the rights of non-debtor parties in interest as set forth in paragraph 11 below, the Debtors admit, stipulate, acknowledge and agree as follows (collectively subparagraphs (i) through (iv) below shall be referred to herein as the "**Debtors' Stipulations**"):

(i)     <u>Credit Agreement</u>. Pursuant to that certain Amended and Restated Credit Agreement dated as of June 1, 2007 (as amended, supplemented, amended and restated or otherwise modified, the "**Credit Agreement**"[1]), among BearingPoint, Inc ("**BE**") and BearingPoint LLC as borrowers, certain Debtors as guarantors, the lenders party from time to time thereto, including the Issuing Bank (as defined in the Credit Agreement) (collectively, the "**Secured Lenders**"), Wells Fargo Bank, N.A., as successor administrative agent and collateral agent to the Secured Lenders (in such capacities, the "**Agent**"), and other parties thereto, the Secured Lenders made loans and provided letter-of-credit and other financial accommodations to the Debtors. The Credit Agreement provides for a term loan (the "**Term Loan**") in the aggregate principal amount of $300.0 million and a synthetic letter of credit facility (the "**Letter of Credit Facility**") in the aggregate principal amount of $200.0 million. As of the Commencement Date, the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement.

LEGAL_US_E # 82815894.11

Debtors' obligations under the Credit Agreement included (x) unpaid principal under the Term Loan in the amount of $294,750,000 and accrued and unpaid interest, fees, costs and expenses thereunder, (y) unpaid principal under the letter of credit facility in the amount of $171,500,000 (inclusive of issued and outstanding letters of credit issued under the Letter of Credit Facility of approximately $84,388,501), plus accrued and unpaid fees, costs, and expenses thereunder, and (z) obligations constituting LC Loans (as defined in the Credit Agreement) consisting of term loans in the principal amount of $28,500,000, plus accrued and unpaid interest, fees, costs and expenses thereunder (collectively, the "**Prepetition Secured Obligations**").

(ii)    <u>Security Agreement</u>.  Pursuant to that certain Security Agreement, dated as of May 18, 2007 (as amended, supplemented, amended and restated or otherwise modified, the "**Security Agreement**," and together with the Credit Agreement and all related Documents (as defined therein), the "**Secured Financing Documents**"), between the Debtors and the Agent, the Debtors granted to the Agent, for the benefit of itself and the Secured Lenders, valid and perfected first-priority continuing liens on and security interests in (the "**Prepetition Liens**") substantially all of the Debtors' property, including all proceeds thereof and a pledge of 65% of the stock in certain of BE's first-tier foreign subsidiaries (collectively, the "**Prepetition Collateral**"), as more fully set forth in the Security Agreement, as security for the Prepetition Secured Obligations.

(iii)    <u>Validity and Priority of Prepetition Liens, Claims, and Prepetition Secured Obligations</u>.  The Prepetition Liens are valid, binding, enforceable, and perfected liens that have priority over any and all other security interests in the Prepetition Collateral except for certain Permitted Liens (as defined in the Security Agreement) (to the extent

any valid, properly perfected, unavoidable, and senior Permitted Liens exist, they are referred to herein as the "**Prior Liens**").  In addition, (a) the Prepetition Liens are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, (b) the Prepetition Secured Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Secured Financing Documents, (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Obligations exist, and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (d) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, Avoidance Actions (as defined below), against the Agent or any of the Secured Lenders, and (e) any payments made on account of the Prepetition Secured Obligations (i) have been payments out of the Prepetition Collateral, and (ii) have not diminished any property otherwise available for distribution to unsecured creditors;

(iv)    Waiver.  The Debtors waive any and all rights under sections 105 and 363 of the Bankruptcy Code or otherwise to seek the use of Cash Collateral on any other terms except as expressly provided for herein or as consented to by the Agent (at the direction of the Required Lenders (defined herein as an informal committee of Secured Lenders, as may be constituted from time to time, the "**Required Lenders**")) except as expressly provided for in paragraphs 14 and 17 herein.  Further, the Debtors hereby agree

that until such time as all Prepetition Secured Obligations are indefeasibly paid in full in cash and completely satisfied, the Debtors shall not in any way prime or seek to prime or otherwise cause to be subordinate in any way, the Prepetition Secured Obligations, the Prepetition Liens or the Adequate Protection Liens (as defined below) of the Agent, on behalf of the Secured Lenders, by offering a subsequent lender or any party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Bankruptcy Code; provided however, the Debtors are authorized to obtain any replacement financing that satisfies and pays the Prepetition Secured Obligations in full in cash at the closing of such replacement financing.

D.      The Debtors' businesses require the use of Cash Collateral to operate their businesses in the ordinary course of their businesses.  The Agent (at the direction of the Required Lenders) and the Secured Lenders have consented, or otherwise do not oppose, a limited use of Cash Collateral on the terms and conditions herein.

E.      As a result of the use of its Cash Collateral, and the imposition of the automatic stay, the Agent is entitled to receive, for the benefit of itself and the Secured Lenders, adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code solely to the extent of any diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale or lease of the Prepetition Collateral (including Cash Collateral) during these Cases, or imposition of the automatic stay.  As adequate protection, the Agent, for the benefit of itself and the Secured Lenders, will receive: (1) the Adequate Protection Liens; (2) the Adequate Protection Superpriority Claim; and (3) the Adequate Protection Payments (each as defined below).

- 6 -

F.      As noted in paragraph 1B of the Motion, the following are Extraordinary Provisions as defined under Local Rule 4001-2:   (i) Challenge Deadline: As set forth in paragraph 11 below, the Initial Challenge Deadline was calculated as 60 days from the appointment of the Committee with respect to certain actions and the Final Challenge Deadline was calculated as 90 days from the appointment of the Committee for other actions, (ii) Termination of Cash Collateral Use:   As set forth in paragraph 13 below, the Debtors authorization to use Cash Collateral shall terminate immediately upon twenty-four (24) hours' notice, and (iii) Section 506(c) waiver: As set forth below in paragraph 15 below, the ability to surcharge under section 506(c) of the Bankruptcy Code is waived as to the Collateral, the Agent and the Secured Lenders.

G.      Notice of the Motion, Interim Order and this Final Hearing has been provided to: (i) Debtors' 30 largest unsecured creditors (on a consolidated basis), (ii) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") (Attn:  Serene Nakano, Esq.), (iii) the Agent and its counsel, (iv) Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036-8704 (Attn:  Mark R. Somerstein, Esq. and Mark I. Bane, Esq.), as counsel for the informal committee of holders of the BearingPoint Inc., 2.50% Series A Convertible Subordinated Debentures Due December 15, 2024 (the "**Series A Debentures**") and the BearingPoint, Inc. 2.75% Series B Convertible Subordinated Debentures Due December 15, 2024 (the "**Series B Debentures**"), (v) Bracewell & Giuliani LLP, 1177 Avenue of the Americas, 19th Floor, New York, New York, 10036-2714 (Attn:  Mark B. Joachim, Esq. and Robert T. Carey, Esq.), as counsel for the informal committee of holders of the BearingPoint, Inc. 5.00% Convertible Senior Subordinated Debentures Due 2025 (the "**Series C Debentures**"), (vi) The Bank of New York, 101 Barclay Street, 8W, New York, New

- 7 -

York 10286 (Attn: Corporate Trust Division – Corporate Finance Unit), as trustee under the indentures governing the Series A Debentures, the Series B Debentures, and the Series C Debentures, (vii) Friedman Fleischer & Lowe LLC, One Maritime Plaza, Suite 1000, San Francisco, California 94111 (Attn: Spencer C. Fleischer), as representative of the purchasers ("**2010 Noteholders**") under the BearingPoint, Inc. 0.50% Convertible Senior Subordinated Debentures Due July 2010, (viii) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022 (Attn: Neil W. Townsend, Esq.), as counsel for the 2010 Noteholders, (ix) each of the financial institutions identified in the Debtors' Motion Pursuant To Sections 105(a), 345(b), 363(b), 363(c), And 364(a) Of The Bankruptcy Code And Bankruptcy Rules 6003 And 6004 (A) For Authorization To (I) Continue To Use Existing Cash Management System, (II) Honor Certain Prepetition Obligations Related To The Use Of The Cash Management System, And (III) Maintain Existing Bank Accounts And Business Forms; (B) Extending Time To Comply With Or Waiving The Requirements Of Section 345(b) Of The Bankruptcy Code, (x) U.S. Securities and Exchange Commission, (xi) known holders of liens in any of the Debtors' assets, (xii) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022 (Attn: Jeffrey S. Sabin, Esq.) as proposed counsel to the Committee and (xiii) any other parties requesting such notice pursuant to Rule 2002 prior to April 7, 2009 (collectively, the "**Notice Parties**").

**BASED ON THE RECORD OF THE INTERIM HEARING AND FINAL HEARING, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE DECLARATION OF JOHN DEGROOTE, THE MOTION AND THE STIPULATIONS, THE COURT FINDS THAT[2]:**

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

A.     Notice of the Motion, as it relates to this Order, is sufficient under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 102(1), 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014.

B.     Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtors' business and operations and permit the Debtors to meet payroll and other operating expenses and maintain customer confidence by demonstrating the ability to maintain normal operations.  The use of Cash Collateral as contemplated hereby and by the Cash Collateral Budget (as defined below) are intended by the Debtors to enable them to continue the operation of their business and maximize the value of their estates.

C.     The use of Cash Collateral and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length, and the terms of such adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

D.     A need exists for the Debtors to be permitted continued access to Cash Collateral to continue to operate their businesses.  Without access to Cash Collateral, the Debtors will not be able to pay their payroll and other direct operating expenses or to maintain vendor and customer support.

E.     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001.  The permission granted herein to allow the Debtors to use Cash Collateral is necessary to avoid harm to the Debtors.

LEGAL_US_E # 82815894.11

F.      The entry of this Order is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses.

**BASED UPON THE STIPULATIONS AND FINDINGS, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      <u>Grant of Motion</u>.  The Motion is granted to the extent provided herein on an final basis.

2.      <u>Authorization to Use Cash Collateral; Limitations on Use</u>.  Pursuant to the terms and conditions of this Order, the Debtors are authorized to use Cash Collateral for the purposes identified in the cash collateral budget attached to the Interim Order as Exhibit A (the "**Initial Approved Budget**") setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Initial Approved Budget; provided however, that (i) for any week in the Cash Collateral Budget (as defined below), the amounts for each line item may vary so long as the Debtors are in compliance with the Cash Variance Test as defined on Annex A hereto and (ii) the Debtors shall be required to obtain the consent of the Agent (at the direction of the Required Lenders) prior to the issuance of any letter of credit in a face amount exceeding $1,000,000; and provided further, no Cash Collateral may be paid or transferred to any non-debtor affiliate, other than up to (a)  $3,000,000 on a rolling two week basis, not to exceed $4,000,000 on a rolling four week basis, and consistent with the Cash Collateral Budget, to non-debtor affiliates for work performed for and billed to Debtors' in the ordinary course of the Debtors' business and (b) $1,000,000 in postpetition letters of credit for the benefit of non-debtors affiliates.   The Initial Approved Budget may be modified or

supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods; provided however, the Debtors shall deliver to the Agent and the Committee an updated budget at least four (4) weeks prior to the expiration of any Cash Collateral Budget) prepared by Debtors and approved by the Agent (at the direction of the Required Lenders) in writing (each such additional approved budget, a "**Supplemental Approved Budget**"), in each case, after five (5) business days' notice to the U.S. Trustee and Committee (and no objection received within such five (5) business day period), then without further notice, motion or application to, order of, or hearing before, this Court, the Supplemental Approved Budget shall become a Cash Collateral Budget (as defined below). The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute a "**Cash Collateral Budget**"). The Cash Collateral Budget is an integral part of this Order and has been relied upon by the Agent and Secured Lenders in deciding to consent, or not otherwise object, to entry of this Order.

3.    <u>Reduction of Letter of Credit Facility</u>.  Pursuant to section 2.18 of the Credit Agreement, the Debtors may not request, and the Issuing Bank has no obligation to provide, Letters of Credit under the Credit Agreement based upon the existing Defaults and Events of Default under the Credit Agreement.  Accordingly, the Letter of Credit Facility is deemed terminated with respect to the issuance of any new Letters of Credit and the Debtors acknowledge and agree that none of the Agent, Issuing Lender, LC Lender or Secured Lenders has any obligation under the Credit Agreement or otherwise to issue new Letters of Credit under the Credit Agreement; provided however, all other provisions of the Credit Agreement related to the ability to renew, terminate or otherwise amend existing Letters of Credit shall be governed by the terms of the Credit Agreement.  Based upon the termination of the Letter of Credit Facility

- 11 -

with respect to the issuance of new Letters of Credit, pursuant to section 2.07 of the Credit Agreement, the Debtors have requested to permanently reduce the Credit-Linked Deposits in an aggregate amount of $82,892,074 (the "Reduced Amount"). Upon entry of this Order, the Agent is authorized and directed to reduce the Credit-Linked Deposits by the Reduced Amount and return such Reduced Amount to the LC Lenders in accordance with their respective Pro Rata Percentages.

4.    Adequate Protection Liens.    The Agent and Secured Lenders are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral.   As adequate protection solely to the extent of any diminution in value of the Agent's and Secured Lenders' interest in the Prepetition Collateral from and after the Commencement Date, the Agent, for itself and on behalf of the Secured Lenders, is hereby granted, a valid, perfected and enforceable security interest (the "**Adequate Protection Liens**") equivalent to a lien granted under the section 364(c) of the Bankruptcy Code in and upon substantially all of the assets of the Debtors in existence prior to the Commencement Date and hereby created after the Commencement Date, wherever the assets are located, including without limitation, all of the Debtors' accounts, contract rights, inventory, machinery and equipment, licenses, general intangibles, investment property, real property, bank accounts, insurance proceeds, and tax refunds, equity, and stock interests in BE's direct and indirect domestic subsidiaries (and 65% of all first-tier foreign subsidiaries; provided however, the Collateral shall not include the remaining 35% stock interests in the first-tier foreign subsidiaries (the "**Additional Foreign Stock**") unless a mutual determination is made by the Debtors and Agent and approved by this Court (or if no agreement, a determination by this Court) that a pledge of the Additional Foreign Stock would not cause a material adverse effect on the Debtors

- 12 -

and including the Prepetition Collateral, but excluding causes of action under Chapter 5 of the Bankruptcy Code and any proceeds thereof (the "**Avoidance Actions**") whether such property was owned on the Commencement Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacement thereof, all books and records with respect thereto and all products and proceeds of the foregoing (collectively, the "**Collateral**"). The Adequate Protection Liens shall be subject only to the Carve Out and any Prior Liens to the extent such Prior Liens are perfected and unavoidable. Except for the Adequate Protection Liens or as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Commencement Date is not and shall not be subject to any lien of any person resulting from any security agreement entered into by the Debtors prior to the Commencement Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a Prior Lien. The Adequate Protection Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Agent and the Secured Lenders on the Commencement Date; (ii) are and shall be valid, perfected, enforceable and effective as of the Commencement Date without any further action by the Debtors or the Agent and the Secured Lenders and without the necessity of the execution, filing or recordation of any financing statements, security agreements, filings with the United States Patent and Trademark Office, mortgages or other documents, obtaining control agreements or other agreements over bank accounts or possession of stock certificates; and (iii) shall secure the payment of indebtedness to the Agent and the Secured Lenders, as the case may be, in an amount equal to the extent of any diminution in value of the Agent's and Secured Lenders' interest in the Prepetition Collateral from and after the Commencement Date. Notwithstanding the foregoing, the Agent may, in its sole discretion, file

- 13 -

such financing statements, mortgages, leasehold mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, leasehold mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these Cases.

5.    Adequate Protection Superpriority Claim.    In addition to the Adequate Protection Liens granted to the Agent, on behalf of itself and the Secured Lenders pursuant to this Order, pursuant to section 361 the Bankruptcy Code, solely to the extent of any diminution in the value of the Agent's and Secured Lenders' interests in the Prepetition Collateral, the Agent, on behalf of itself and the Secured Lenders, is hereby granted an administrative claim under sections 503(b)(1), 507(a), and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claim**"), which shall have priority in these Cases and in any cases under chapter 7 of the Bankruptcy Code upon conversion of these Cases or any other action, case or proceeding related to or arising out of any of the foregoing (collectively, the "**Successor Case**"), under sections 363(e), 363(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 1113 and 114 of the Bankruptcy Code and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever which allowed claims shall be: (i) payable from and have recourse to all Collateral of the Debtors and all proceeds thereof and all proceeds from any Additional Foreign Stock, including, any proceeds of Avoidance Actions, and (ii) subject to payment of the Carve Out. Except for the Carve Out, no costs or expenses of administration including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the

LEGAL_US_E # 82815894.11

Bankruptcy Code, or otherwise, that have been or may be incurred in these Cases or in any

Successor Case, and no priority claims are, or will be, senior to, prior to, or on parity with the

Adequate Protection Superpriority Claim.

6.    <u>Adequate Protection Payments</u>.  As additional adequate protection, the Debtors

shall pay to the Agent, for the benefit of itself and the Secured Lenders, cash payments of

interest at the non-default rate at the times required under the Credit Agreement (the "**Interest**

**Payments**"); provided however, upon a Termination Event (as defined herein), the Agent and

Secured Lenders, to the extent provided under the Credit Agreement, shall be entitled to charge

and receive default rate interest as set forth in the Credit Agreement.  In addition, the Debtors

shall pay to the Agent, for the benefit of itself and the Secured Lenders, the reasonable

professional fees and expenses (whether incurred before or after the Commencement Date) of the

Agent, including, without limitation, the reasonable fees and expenses of Paul, Hastings,

Janofsky & Walker, LLP, Lazard Frères & Co. LLC, as financial advisors (as provided in their

engagement letter dated as of December 1, 2008), and any auditors, appraisers' and other

consultants to the extent provided for under the Credit Agreement, within fifteen (15) business

days, if no written objection is received within fifteen (15) business days after such professional

has delivered an invoice detailing such professional fees and expenses, with a copy of such

invoices to the U.S. Trustee and Committee (collectively, the "**Adequate Protection Expense**

**Payments**," and together with the Interest Payments, the "**Adequate Protection Payments**").

None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval

or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of

any such payment shall be required to file with respect thereto any interim or final fee

application with the Court; provided however, if an objection to a professional's invoice is

- 15 -

09-10691-mg    Doc 479    Filed 04/20/09    Entered 04/20/09 09:03:23    Main Document
Pg 16 of 29

timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

7.      <u>Debtors' Obligations and Covenants</u>.  In consideration for the use of the Cash Collateral and other Collateral and as further adequate protection, until the termination of the Debtors' authorization to use Cash Collateral hereunder, the Debtors shall:

(a)      use Cash Collateral in accordance with the Cash Collateral Budget as provided for in paragraph 2 herein;

(b)      deliver to the Agent and its counsel copies (and authorize the delivery of such documents to the Required Lenders) of all financial and other reports, notices and other financial analyses required to be delivered to the Agent under the Secured Financing Documents with a copy to counsel to the Committee, and such other financial statements, information and reports that the Agent shall request, in each case subject to any confidentiality provisions in the applicable Secured Financing Documents.

(c)      deliver to the Agent and its counsel (and authorize the delivery of such documents to the Required Lenders) (i) on or before 2:00 p.m. (Eastern Time) on Friday of each week, in form and substance reasonably acceptable to the Agent and the Required Lenders, a report (the "**Variance Report**") detailing actual cash receipts and disbursements for the immediately preceding week, noting therein all variances, including, without limitation, variances to cash balance on a week to week basis, from values set forth for such period in the Cash Collateral Budget; (ii) on the first business day that is thirty (30) days after the prior month has ended, in form and substance reasonably acceptable to the Agent and Required Lenders, a report (the "**Monthly**

LEGAL_US_E # 82815894.11

**Report**") related to EBITDAR, key income statement, balance sheet and cash flow items, and at the time of delivery of the Variance Report and the Monthly Report, an explanation of all material variances along with a certification by an officer of the Debtors; and (iii) promptly deliver a copy of the Variance Report and Monthly Report to counsel to the Committee.

(d)     deliver to the Agent and its counsel (and authorize delivery to the Required Lenders) on or before 2:00 p.m. (Eastern Time) on Tuesday of each week, in form and substance reasonably acceptable to the Agent and the Required Lenders, a "flash" report setting forth in reasonable detail the financial condition of the Debtors, including, without limitation, details on operating statistics and sales or bookings and promptly provide a copy of any such "flash" report to counsel to the Committee;

(e)     not sell, lease or otherwise dispose of or transfer any material portion of the Collateral (other than in the ordinary course of Debtors' businesses) unless a sale, lease or other disposition of a material portion of the Collateral outside the ordinary course of business is approved by the Agent (at the direction of the Required Lenders) and the Court and provides that net proceeds of the sale of any Collateral are paid to the Agent, on behalf of the Lenders, in accordance with the Credit Agreement;

(f)     The Debtors shall not increase the bonuses to be paid to any employee under existing plans (or establish new or modified plans) without the consent of the Agent (as directed by the Required Lenders).  Nothing contained herein shall affect the Agent's and the Secured Lenders' other consent rights or their rights to object to any proposed employee incentive program or to the assumption of executory contracts or unexpired leases.

LEGAL_US_E # 82815894.11

8.    <u>Insurance/Cash Management</u>.  The Debtors shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtors are engaged, naming the Agent, on behalf of itself and the Secured Lenders, as loss payee with respect thereto.  In  allowing  use  of  Cash Collateral as provided for herein, pursuant to the Debtors' existing cash management system, the Debtors are required to maintain accounts to which the Agent's liens and claims for the benefit of itself and the Secured Lenders attach with respect to collections to the extent Debtors receive any such collections or proceeds from the Collateral.  Unless and until new procedures are established as may be required by the U.S. Trustee or otherwise, the Debtors are authorized and directed to maintain their prepetition cash management system and bank account systems as were in effect on the date of this Order.

9.    <u>Carve-Out</u>.  Subject to the terms and conditions contained in this paragraph, the Prepetition Liens, Adequate Protection Liens and the Adequate Protection Super Priority Claim shall be subject to the following:  (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) allowed professional fees and expenses of the Debtors and Committee (other than any "success", "transaction" or other similar fees) and reasonable expenses of members of the Committee (collectively, the "**Professional Fees**") incurred to the extent consistent with the Cash Collateral Budget, but unpaid, prior to delivery of a notice of a Termination Event (such Professional Fees, the "**Accrued Claims**" and such notice, the "**Carve-Out Notice**"); (iii) Professional Fees incurred subsequent to delivery of the Carve-Out Notice to the extent consistent with the Cash Collateral Budget in an aggregate amount not to exceed $6,000,000 and (iv) the approved professional fees

and expenses incurred by any court appointed Chapter 7 Trustee up to an aggregate amount of $75,000 (collectively, (i)–(iv), the "**Carve Out**").  The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of Termination Event and the Agent's delivery of a Carve-Out Notice to the Debtors, counsel for the Debtors, and counsel to any Committee.  Prior to the Carve-Out Notice, to the extent provided for in the Budget and unless otherwise objected to, the Debtors shall be authorized to make payments of Professional Fees and Clerk of the Bankruptcy Court and the U.S. Trustee fees in the ordinary course of business or as provided for in separate orders of this Court. Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, in connection with (i) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the Agent's or any Secured Lenders' assertion, enforcement or realization on the Collateral in accordance with the Secured Financing Documents or this Order or any Avoidance Actions against the Agent or any Secured Lender, or (ii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Agent or any of the Secured Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, or the adequate protection granted herein; provided however, the Committee shall be authorized to use up to $125,000 of Cash Collateral to investigate the liens, claims and interests of the Agent and Secured Lenders.  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the

- 19 -

Debtors, the Agent, the Secured Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

10.    <u>Termination</u>.  In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, the Debtors shall no longer be authorized pursuant to this Order to use Cash Collateral (as defined below) without the written consent of the Agent (at the direction of the Required Lenders) after the earliest to occur of (i) twenty-four (24) hours from the receipt of the Remedies Notice, (ii) the effective date of any plan of reorganization of the Debtors, (iii) July 1, 2009 (unless otherwise consented to by the Agent (at the direction of the Required Lenders), and (iv) twenty-four (24) hours from the date upon which Debtors receive notice that any of the following events occurs (the earliest such date being referred to herein as the "**Termination Date**," and each of the following events, a "**Termination Event**"):

(a) the Debtors' failure to comply with any of the terms or provisions of this Order;

(b) any stay, reversal, vacatur or rescission of the terms of the Interim Order, this Order, or any other modification of the terms of the Interim Order or this Order that is not consented to by the Agent and the Required Lenders;

(c) entry of an order by this Court or any other Court having jurisdiction over these Cases approving any postpetition financing that (i) grants liens, claims or interests that are senior to, or pari passu with, the Prepetition Liens, the Adequate Protection Liens or the Adequate Protection Superpriority Claims, and (ii) is not consented to by the Agent (at the direction of the Required Lenders);

(d) entry of an order by this Court dismissing any of the Cases or converting any of the Cases to cases under chapter 7 of the Bankruptcy Code;

(e) the appointment of a trustee or the appointment of an examiner with enlarged powers in any of the Cases unless such appointment is approved by the Agent (at the direction of the Required Lenders);

(f) any of the Adequate Protection Liens, or any other claims granted to the Agent pursuant to the Interim Order or this Order shall cease to be valid, binding and perfected, first-priority liens as and to the extent provided in this Order; or

- 20 -

(g) a "**Material Event**" (as defined in Schedule 1 hereto) that is not waived in writing by the Agent (at the direction of the Required Lenders) shall have occurred.

Notwithstanding the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the Agent and the Secured Lenders under this Order as of such Termination Date shall survive the Termination Date.

11.    <u>Challenge Deadline</u>    Notwithstanding anything herein to the contrary, including the Debtors' Stipulations, the Committee and all non-debtor parties in interest (including any trustee appointed or elected in the cases prior to the Initial Challenge Deadline or Final Challenge Deadline (each as defined below)) shall have until April 27, 2009 (the "**Initial Challenge Deadline**", which deadline may only be extended upon agreement of the Agent (at the direction of the Required Lenders) or upon order of the Court after a showing of cause by the Committee that they did not receive the requested documents from the Debtors) to investigate and assert any challenge, objection or otherwise related to the validity, perfection and enforceability of the Prepetition Liens,  Prepetition Secured Obligations, and the Agent's and Secured Lenders' claims with respect to the assets sold pursuant to, and the proceeds of, the PS Group Sale[3] (a "**PS Group Challeng**e") (provided, however, that claims against the Secured Lenders relating to the validity or priority of their claims in general (other than the validity and priority of the Agent's and Secured Lenders' liens in the assets under the PS Group Sale), or that

---

[3] For purposes of this Order, the PS Group Sale means the sale transaction pursuant to Debtors' Motion For Orders Pursuant To Sections 363(B), (F), And (M), 365 And 105(A) Of The Bankruptcy Code And Bankruptcy Rules 2002, 6004, 6006, And 9014 For (I) Approval Of Procedures In Connection With The Sale Of Certain Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests, (Ii) Authorization To Enter Into A Stalking Horse Agreement In Connection Therewith, (iii) Approval Of The Payment Of Stalking Horse Protections, (iv) The Setting Of Related Auction And Hearing Dates, And (v) Authorization To Enter Into An Allocation Agreement  [Docket No. 271].

otherwise seek damages from the Secured Lenders, shall each constitute a "Challenge" (as defined below) and be governed by the Final Challenge Deadline (as defined below)) and the Committee shall have until May 27, 2009 (the "**Final Challenge Deadline**", which deadline may only be extended by consent of the Agent (at the direction of the Required Lenders) or upon order of this Court after a showing of cause) to investigate the validity, perfection, and enforceability of the Prepetition Liens, Prepetition Secured Obligations or to assert any other claims or causes of action (other than the PS Group Challenge) against the Agent or any of the Secured Lenders (each a "**Challenge**"). The Committee is hereby granted standing and the authority to file a PS Group Challenge and Challenge on behalf of the Debtors' estates raising any and all claims and defenses without further motion seeking authority to bring such action and without further order of this Court.

(a)    If no such PS Group Challenge is filed on or before the Initial Challenge Deadline, (a) the Prepetition Liens shall have been deemed to have been, as of the Commencement Date, legal, valid, binding, perfected, and not subject to recharacterization, subordination and otherwise unavoidable with respect to assets included in the PS Group Sale and proceeds thereof, (b) the Prepetition Secured Obligations shall be deemed allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code with respect to any of the Collateral under the PS Group Sale and proceeds thereof (subject only to any issues that constitute a Challenge), (c) the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest in the Cases or any Successor Case with respect to the PS Group Sale and proceeds thereof and (d) all PS Group Challenges shall be deemed to have been forever relinquished and waived as to the Committee and each other party in interest in these Cases; provided however if such an action, objection or proceeding is commenced on or before the PS

Group Challenge Deadline, all PS Group Challenge shall be deemed to have been forever relinquished and waived as to the Debtors, the Committee and any other person or entity, except with respect to PS Group Challenges that are specifically asserted in such action or proceeding.

(b)    If no such Challenge is filed on or before the Final Challenge Deadline, (a) the Prepetition Liens shall have been deemed to have been, as of the Commencement Date, legal, valid, binding, perfected, and not subject to recharacterization, subordination and otherwise unavoidable, (b) the Prepetition Secured Obligations shall be deemed to be allowed in full and, to the extent of the value of the Prepetition Collateral on the Commencement Date, shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Case, (c) the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest in the Cases or any Successor Case and (d) all Challenges shall be deemed to have been forever relinquished and waived as to the Committee and each other party in interest in these Cases; provided however if such an action, objection or proceeding is commenced on or before the Challenge Deadline, all Challenges shall be deemed to have been forever relinquished and waived as to the Debtors, the Committee and any other person or entity, except with respect to Challenges that are specifically asserted in such action or proceeding.

(c)    Upon entry of an order sustaining any Challenge and/or PS Group Challenge brought pursuant to this paragraph that either is final and nonappealable or has not been stayed pending appeal, payments, including interest payments, made to the Secured Lenders or the Agent may be subject to appropriate reversal, disgorgement, reapplication or recharacterization as this Court may determine on notice and hearing.

12.    <u>Reversal of Adequate Protection</u>.    The Adequate Protection Liens and the Adequate Protection Superpriority Claim granted to the Agent, on behalf of the Secured Lenders, pursuant to this Final Order are provided solely to the extent of any diminution in the value of the Agent's and Secured Lenders' interests in the Prepetition Collateral since the Commencement Date.    To the extent this Court finds that the value, as of the Commencement Date, of the Prepetition Collateral did not exceed the Prepetition Secured Obligations and that there was no diminution in value of the Agent's and the Secured Lenders' interests in the Prepetition Collateral, then the Adequate Protection Payments may be subject to recharacterization, reapplication or disgorgement.

13.    <u>Remedies</u>.    The Agent (at the direction of the Required Lenders) shall provide the Debtors, counsel for the Committee and the U.S. Trustee with written notice of the occurrence of a Termination Event (the "**Remedies Notice**").    Upon the expiration of five (5) business days after the Debtors, counsel for the Committee and the U.S. Trustee's receipt of the Remedies Notice (the "**Waiting Period**"), if no order is entered that either (i) finds the Termination Event did not occur or (ii) finds or grants adequate protection for the Agent and Secured Lenders and authorizes additional Cash Collateral use, then the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed vacated and modified automatically to the extent necessary to permit Agent (at the direction of the Required Lenders) to exercise its rights and remedies against all or a  portion of the Collateral, including, but not limited to, setoff of any existing Cash Collateral securing the Prepetition Secured Obligations, collection of accounts receivable and application of the proceeds thereof in partial satisfaction of the Prepetition Secured Obligations.    Twenty-four  (24) hours from receipt of the Remedies Notice, the Debtors' authorization to use Cash Collateral shall terminate and unless consented to in writing by the

LEGAL_US_E # 82815894.11

Agent (at the direction of the Required Lenders), or as provided for in the Carve Out, and no Cash Collateral shall be used absent further order of the Court. The Debtors, Committee and U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief.

14.    <u>Monitoring of Collateral</u>. The Debtors shall permit representatives, agents and/or employees of the Agent to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may request.

15.    <u>Section 506(c) and 552(b) Waivers</u>. Without the prior written consent of the Agent, which consent shall not be implied from any action, inaction, or acquiescence by the Agent, no costs or expenses of administration that have been or may be incurred in the Cases at any time shall be charged against the Agent, the Secured Lenders or any of their claims pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, nor shall such costs or expenses be charged against the Collateral unless and until all Prepetition Secured Obligations have been indefeasibly paid in full and in cash. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived; provided, however, that the Committee's right to assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code is preserved solely with respect to proceeds of sales of assets outside of the ordinary course of business by non-debtor entities' that are repatriated to the Debtors. Further, none of the Agent or Secured Lenders shall be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Collateral.

LEGAL_US_E # 82815894.11

16.     <u>Modified Adequate Protection</u>.  Nothing in the Interim Order or this Order waives any rights of the Agent or Secured Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided for herein proves to be inadequate. Furthermore, in the event the Agent and Secured Lenders have received in full in cash amounts sufficient to satisfy and repay the Prepetition Secured Obligations under the Term Loan and LC Loans and any related fees, expenses and charges and have been authorized to apply such cash to satisfy the Prepetition Secured Obligations under the Term Loan and the LC Loans and any related fees, expenses and charges, then the Debtors or the Committee may seek to revise or modify the grant of any adequate protection provided to the Agent and Secured Lenders (including, but not limited to, the budget requirements contained in this Order) going forward with respect to any remaining Prepetition Secured Obligations, including any Letters of Credit that have not been cash collateralized, and other contingent or unliquidated Obligations that have not been paid or satisfied under the Credit Agreement.

17.     <u>No Duty to Monitor Compliance</u>.  The Agent and Secured Lenders may assume the Debtors will comply with this Order and the Cash Collateral Budget and shall not (i) have any obligation with respect to the Debtors' use of Cash Collateral, (ii) be obligated to ensure or monitor the Debtors compliance with any financial covenants, formulae, or other terms and conditions of this Order or the Credit Agreement or (iii) be obligated to pay (directly or indirectly from Cash Collateral) any expenses incurred or authorized to be incurred pursuant to this Order or be obligated to ensure or monitor that such Cash Collateral exists to pay such expenses.

LEGAL_US_E # 82815894.11

18.    <u>Injunction</u>.  Except as provided in the Cash Collateral Agreement and this Order, and until such time as the Prepetition Secured Obligations are indefeasibly paid in full, in cash and completely satisfied in accordance with the terms of the Credit Agreement, the Debtors shall be enjoined and prohibited from, at any time during the Cases, granting liens on the Collateral, any portion thereof or the Additional Foreign Stock to any other parties, pursuant to section 364 (d) of the Bankruptcy Code or otherwise, which liens are senior to or pari passu with the Prepetition Liens or Adequate Protection Liens, other than the Prior Liens (and the Prior Liens shall not include liens on any of the Additional Foreign Stock).

19.    <u>Survival; Successors and Assigns</u>.  The provisions of the Interim Order and this Order shall be binding upon and inure to the benefit of the Agent, the Secured Lenders, the Committee and the Debtors and their respective successors and assigns (including, to the extent permitted by applicable law, any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate or as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).  If an order dismissing any of these Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the Adequate Protection Superpriority Claim, Adequate Protection Liens, and any other replacement security interests and liens and other protections afforded or granted to the Agent and Secured Lenders pursuant to the Interim Order and this Order as of the date of such dismissal shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such Adequate Protection Superpriority Claim and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest).  Notwithstanding any reversal, stay, modification or

LEGAL_US_E # 82815894.11

vacation of the Interim Order or this Order, any use of Cash Collateral prior to such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the Interim Order or this Order (as applicable), and the Agent and Secured Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to such use.

20.    <u>Findings of Fact and Conclusions of Law</u>.  This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable upon the entry thereof.

21.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Order.

Dated: April __20__, 2009
New York, New York                  *s/ Robert E. Gerber*_____
                                                           The Honorable Robert E. Gerber
                                                           United States Bankruptcy Judge

**Annex A**

Material Event

As used in this Order, the term "**Material Event**" shall mean any of the following:

(a)        failure of the Debtors to obtain approval for new federal government contracts based upon the review and audit by the Defense Contract Audit Agency if not cured within ten (10) days (the "<u>Audit Default</u>"); provided however, upon the closing the PS Group Sale, the Audit Default shall be deemed automatically eliminated and of no further force and effect under this Order; and

(b)        Debtors' average week end North American cash balance (excluding   any amounts with respect to "VEBA" and "imprest" accounts)   for each of the immediately preceding two weeks is less than 90% of the Company's average North American week end cash balance (excluding  any amounts with respect to "VEBA" and "imprest" accounts) set forth  for such period in the Cash Collateral Budget (the "**Cash Variance Test**"); provided that no cash (i) transferred out of the ordinary  course by any foreign subsidiaries of Debtors to Canada or (ii) located in any of the Debtor's foreign accounts, in each case, shall count for purposes of compliance with the  Cash Variance Test; provided further, however, that a Material Event shall not be deemed to have occurred at that time, and the Debtors shall be permitted to deliver to the Agent and Required Lenders a proposed updated budget and only upon written acceptance by the Agent (at the direction of the Required Lenders), such updated budget shall become a Cash Collateral Budget and the Material Event shall be deemed waived; provided however, if such updated budget is not accepted by the Agent and Required Lenders, Cash Collateral use shall immediately terminate upon the later of (i) three (3) business days from the date of the default under the Cash Variance Test and (ii) the Agent's (at the direction of the Required Lenders) written rejection of any updated budget.