**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                 :

<u>In re</u>                               :                **Chapter 11 Case No.**
                                 :

**BEARINGPOINT, INC., <u>et al.</u>,**         :          **09 - 10691 (REG)**
                                 :

       **Debtors.**                 :          **(Jointly Administered)**
                                 :
-------------------------------------------------------------x

**ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTORS
OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING
THE SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING AND APPROVING
THE ASSET PURCHASE AGREEMENT, (IV) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
<u>CONTRACTS RELATED THERETO, AND (V) GRANTING RELATED RELIEF</u>**

Upon the motion, dated July 10, 2009 [Docket No. 1037] (the "***Motion***"),[1] of
BearingPoint, Inc. and certain of its affiliates, as debtors and debtors-in-possession (collectively,
the "***Debtors***"), pursuant to sections 105, 363, and 365 of chapter 11 of the United States Code
(the "***Bankruptcy Code***") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of
Bankruptcy Procedure (the "***Bankruptcy Rules***"), for, inter alia, (i) authorization to enter into
that certain Asset Purchase Agreement, dated July 2, 2009, between BearingPoint, Inc. (the
"***Seller***") and Éclat Consulting, LLC (the "***Buyer***") (attached hereto as Exhibit A, as further
amended, supplemented or restated, the "***Asset Purchase Agreement***"), in which the Seller
agreed to sell certain assets (the "***Acquired Assets***"), (ii) authorization to consummate the
transactions (the "***Transactions***") contemplated in such Asset Purchase Agreement, and
(iii) approval of the assumption and assignment of certain executory contracts (the "***Assigned***

---

[1] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the
Motion.

*Contracts*"); upon the Debtors' Supplemental Motion to Establish Procedures in Aid of the Assumption and Assignment and Sale of Certain Public Service and Commercial Services Contracts, dated June 3, 2009 (the "***Procedures Motion***"); and upon the hearing on June 19, 2009, the Bankruptcy Court[2] entered an order dated June 23, 2009 (the "***Procedures Order***") [Docket No. 942], approving, inter alia, the procedures for the assumption, assignment, and sale of the Legacy Contracts (as defined in the Procedures Motion), certain of which are included in the Acquired Assets; upon the Court's entry of the Supplemental Order Authorizing the Debtors to Establish Procedures in Aid of the Assumption, Assignment and Sale of Certain Public Service and Commercial Service Contracts dated July 23, 2009 [Docket No. 1114], (a) authorizing the sale of any Legacy Contracts (as defined in the Procedures Motion) sold pursuant to the Procedures Order, free of any liens, claims, and encumbrances, other than any liabilities expressly assumed by a purchaser, pursuant to section 363(f) of the Bankruptcy Code, with any such liens claims, and encumbrances paid to the secured creditors and/or attaching to the proceeds of the sale, and (b) granting those purchasers of Legacy Contracts protections afforded under section 363(m) of the Bankruptcy Code; and the Buyer having been selected as the successful purchaser; and all parties in interest having been heard or having had the opportunity to be heard, regarding the Asset Purchase Agreement; and the Bankruptcy Court having reviewed and considered the Motion and all objections thereto; and the arguments of counsel made, and the evidence adduced, at the hearing (the "***Sale Approval Hearing***") on July 23, 2009; and upon the Declaration of Edward Hunt in Support of the Sale of the Debtors' Public Services Industry Group Legacy Contracts to Éclat Consulting, LLC (the "***Hunt Declaration***"); and upon the record of the hearing of the Procedures Motion and the Sale Approval Hearing and these

---

[2] The "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**[3]

A. **Jurisdiction and Venue**. This Court has jurisdiction over the Motion and the Transactions under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "***Local Rules***").

C. **Sale Notice**. Based upon the representations of counsel at the Sale Approval Hearing and as approved under the Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion and the transactions contemplated in the Asset Purchase Agreement has been provided to all parties in interest; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases and was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii) no other or further notice of the Motion, and the Transactions, or of the entry of this Sale Order is necessary or shall be required.

D. **Contract Notices**. A separate notice of assignment and cure costs (the "***Contract***

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052.

*Notice"*) has been provided to all of the counterparties to the Assigned Contracts identified on Exhibit A to the Asset Purchase Agreement. Such Contract Notices were adequate and sufficient for the assumption and assignment of the Assigned Contracts designated by the Buyer, all in accordance with and as provided by the Procedures Order and subject to the Buyer's right to remove contracts from the schedule of Assigned Contracts.

E. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the sale of the Acquired Assets, the assumption and assignment of the Assigned Contracts and the defaults and Cure Amounts (as defined in the Procedures Motion) related thereto, the Transactions, the Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) all counterparties to the Assigned Contracts, (ii) all parties listed on the Master Services List, in accordance with the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated March 5, 2009 (the "***Case Management Order #2***") [Docket No. 117], and (iii) all applicable federal, state and local taxing and regulatory authorities.

F. **Acquired Assets**. The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Acquired Assets required to transfer and convey the Acquired Assets as contemplated by the Asset Purchase Agreement and any other documents or instruments related to and connected with the Transactions and consummation thereof.

G. **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications for, and (ii) compelling circumstances for, the

Transactions being consummated other than in the ordinary course of business under Bankruptcy Code section 363(b) and before, and outside of, a plan of reorganization or liquidation, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Acquired Assets if the sale is not consummated quickly; (ii) the Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets; (iii) the Asset Purchase Agreement and the Closing (as defined in the Asset Purchase Agreement) will present the best opportunity to realize the value of substantially all of the Legacy Contracts related to the Debtors' PS Group that were not sold pursuant to the Deloitte Transaction; and (iv) unless the sale is approved as provided for in the Motion and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

The Debtors and their professionals marketed the Acquired Assets to all potential purchasers as set forth in the Motion and the Hunt Declaration. The Debtors' marketing efforts afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

H.    **<u>Sale Order Required by Buyer</u>**. Entry of an order approving the Asset Purchase Agreement and the Transactions, and all the provisions thereof, on the terms requested in the Motion and set forth in the form and substance of this Order, is a necessary and appropriate condition precedent to the Buyer's consummation of the Transactions.

I.       **Consideration**. The total consideration provided by the Buyer for the Acquired Assets is the highest and best offer received by the Debtors, and the consideration for the Acquired Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.

J.       **Arm's-Length Sale**. The Asset Purchase Agreement and other documents and instruments related to and connected with the Transactions and the consummation thereof were negotiated, proposed and entered into by the Seller and the Buyer without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors, the Buyer or its respective affiliates, partners, principals, or shareholders or their representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any or other documents and instruments related to or connected with the Transactions and the consummation thereof to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any person. The terms and conditions of the Asset Purchase Agreement and other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under section 363(n) of the Bankruptcy Code.

K.       **Good Faith Purchaser**. The Buyer, its respective affiliates, partners, principals, shareholders and their respective representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding. Such persons are therefore entitled

to all of the benefits and protections section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, all documents and instruments related to or connected with the Transactions and the consummation thereof, and the assumption and assignment of the Assigned Contracts).  No stay pending appeal of this Order has been requested, and the stay contained in Fed. R. Bankr. P. 6004(h) has been and hereby is expressly and irrevocably waived as set forth in paragraph 25 below.

L.      **Corporate Authority**. Subject to the entry of this Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the Asset Purchase Agreement and all other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the Asset Purchase Agreement and other documents and instruments is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Transactions, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the Asset Purchase Agreement, and all other documents and instruments related to or connected with the Transactions and the consummation thereof and the Transactions themselves, and (iv) no consents or approvals are required to consummate Transactions or otherwise perform obligations under the Asset Purchase Agreement, or other documents and instruments, except for the closing conditions expressly agreed to therein.

M.      **Cure/Adequate Assurance**. The assumption and assignment or transfer of the Assigned Contracts pursuant to the terms of the Procedures Order is integral to the Asset Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable

exercise of sound and prudent business judgment by the Seller. The Seller has or will have as of the Closing: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Assigned Contracts on Exhibit A to the Asset Purchase Agreement, within the meaning of 11 U.S.C. § 365(b)(1)(A) and 365(f)(2)(A) and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts on Exhibit A to the Asset Purchase Agreement. The Buyer's promise to perform the obligations under the Assigned Contracts after their assumption and assignment shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b)(1)(C) and 365(f)(2)(B) to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Any objections to any Cure Amounts or defaults under Assigned Contracts to the Buyer, or the assumption and assignment of any of the Assigned Contracts to the Buyer, are hereby overruled, withdrawn or otherwise resolved. Notwithstanding the foregoing provisions of this paragraph M and notwithstanding any other provisions of this Order or the Asset Purchase Agreement, no contract to which the California Department of Motor Vehicles (the "*CDMV*"), SAP Public Services, Inc., SAP America Inc., (collectively, "*SAP*") Alion Science and Technology Corporation ("*Alion*"), Pratt & Whitney, the City of Fresno, the Pennsylvania Department of Transportation (the "*Pennsylvania DOT*") or Booz Allen Hamilton, is a party shall be assumed or assigned to Éclat Consulting, LLC absent (a) a consensual resolution of the objection filed by Alion [Docket No. 1075], Pratt & Whitney [Docket No. 1069], the City of Fresno [Docket No. 1082], the Pennsylvania DOT [Docket No. 1070], or Booz Allen Hamilton [Docket No. 1094] (collectively, the "*Filed Objections*") or any other issue or objection raised by CDMV or SAP

or (b) further order of the Bankruptcy Court; provided that upon any such consensual resolution of the Filed Objections of Alion, Pratt & Whitney, the City of Fresno, the Pennsylvania DOT, or Booz Allen Hamilton, or of any other issue or objection raised by CDMV or SAP, no further order of the Bankruptcy Court shall be required and the applicable contracts shall be deemed to be assumed and assigned pursuant to the terms of this Order.  Further, the Debtors will not assume and assign their Montgomery County, Maryland contract absent consent of counsel to the Westchester Fire Insurance Company and ACE USA.  Finally, the Debtors will not assume and assign to Éclat Consulting, LLC any of the contracts listed on Annex A to the Limited Objection of the Deloitte U.S. Firms to Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code for a Comfort Order Authorizing the Sale of Certain Legacy Contracts and Related Assets to Éclat Consulting, LLC and Granting Related Relief (the "**Deloitte Objection**") [Docket No. 1099] absent (a) a consensual resolution of the Deloitte Objection or (b) further order of the Bankruptcy Court; provided that upon any such consensual resolution of the Deloitte Objection, no further order of the Bankruptcy Court shall be required and the contracts on Annex A to the Deloitte Objection shall be deemed to be assumed and assigned to Éclat Consulting, LLC pursuant to the terms of this Order.  All of the Deloitte U.S. Firms' rights with respect to the Asset Purchase Agreement, dated as of March 23, 2009, with BearingPoint, Inc. and the subsidiaries of BearingPoint that are signatories thereto and the Assignment and Assumption Agreements dated May 8, 2009 and May 29, 2009 are hereby preserved.

N.      **Contract Assignments in Best Interests**. The Debtors have demonstrated that assuming and assigning the Assigned Contracts in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion, including, without

limitation, because the assumption and assignment of the Assigned Contracts in connection with the Transactions will maintain service to a significant portion of the Debtors' customers, limit the losses of counterparties to Assigned Contracts, and maximize the distribution to creditors of the Debtors.

O.     **<u>Free and Clear</u>**. The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement will be a legal, valid, and effective transfer, and will vest at the Closing the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all of the following (collectively, "***Interests***") liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Acquired Assets, or any similar rights if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, (iii) those Interests that are retained as set forth in the Asset Purchase Agreement; and (iv) those Interests arising in connection with any agreements, acts, or failures to act, of the Seller or any of the Seller's predecessors, Affiliates, or representatives including, but not limited to, Interests arising under

any doctrines of successor liability or similar theories under applicable state or federal law or otherwise. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Assigned Contract is free and clear of all Interests. All such Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.

P. **Free and Clear Findings Required by Buyer**. The Buyer would not have entered into the Asset Purchase Agreement and would not have consummated the Transactions, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Acquired Assets to the Buyer, and the assumption and assignment or transfer of the Assigned Contracts to the Buyer, were not free and clear of all Interests of any kind or nature whatsoever, as set forth in this Order, or if the Buyer would, or in the future could, be liable for any of the Interests. A sale of the Acquired Assets other than one free and clear of all Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the sale contemplated by the Asset Purchase Agreement. Therefore, the sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Q. **Satisfaction of Section 363(f) Standards**. The Seller may sell the Acquired Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Contract Notices are deemed to have consented to the Motion and sale and assignment of the Acquired Assets to the Buyer pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other

subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests attach to the net proceeds ultimately attributable to the Acquired Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Acquired Assets or their proceeds, subject to any rights, claims and defenses the Seller or its estates, as applicable, may possess with respect thereto.

R. **No Fraudulent Transfer**. The Asset Purchase Agreement and the Transactions are not consummated, for the purpose of hindering, delaying or defrauding creditors of the Seller under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Seller nor the Buyer has entered into the Asset Purchase Agreement or are consummating the Transactions with any fraudulent or otherwise improper purpose. The consideration for the purchase of the Acquired Assets by the Buyer and for the other Transactions that are set forth in the Asset Purchase Agreement is at least reasonably equivalent value for the purchase of such assets and for such other Transactions.

S. **No Successor Liability**. Without limiting the effect or scope of the foregoing, the transfer of the Acquired Assets from the Seller to the Buyer does not and will not subject the Buyer or its affiliates, successors or assigns or their respective properties (including the Acquired Assets) to any liability for Interests against the Seller or the Seller's Interests in such Acquired Assets by reason of such transfer or otherwise under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to such Transaction, including, without limitation, any successor liability or similar theories. The Transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation,

merger or de facto merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors' or their estates, and the Buyer does not constitute a successor to the Debtors or their estates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Buyer of certain persons previously employed by the Seller, Buyer shall not have any obligations or liabilities to any employee of the Seller or in respect of any employee benefits owing to any employee of the Seller by the Seller or by any plan or program administered by the Seller or for the benefit of the Seller's employees, and any obligations of the Buyer to any such person shall be limited to those obligations expressly agreed by Buyer with such person on and following the later of the Closing and the date, if any, that such person first becomes employed by Buyer.

T. **Prompt Consummation**. The Transactions must be approved by the Court and consummated promptly in order to maximize the value of the Debtors' estates, for the reasons set forth in the Motion. For those reasons, time is of the essence in consummating the Sale. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004.

U. **Modifications to Acquired Assets and Assigned Contracts**. The Debtors and the Buyer have agreed that the Buyer shall maintain certain rights to modify the Assigned Contracts, after the date of this Order and up to the Closing. Such modification rights include but are not limited to the right of the Buyer, prior to Closing, to remove any Contract from the list of Assigned Contracts for any of the reasons set forth in the Asset Purchase Agreement Section 4.05.

V. **Sale in Best Interests**. Good and sufficient reasons for approval of the Asset

Purchase Agreement, and the Transactions have been articulated to the Court in the Motion, and the relief requested in the Motion and set forth in this Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.     <u>**Motion is Granted**</u>. The Motion and the relief requested therein is **GRANTED** and **APPROVED.**

2.     <u>**Objections Overruled**</u>. Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Procedures Order, and the Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.  Notwithstanding the foregoing provisions of this paragraph M and notwithstanding any other provisions of this Order or the Asset Purchase Agreement, no contract to which the California Department of Motor Vehicles (the "*CDMV*"), SAP Public Services, Inc., SAP America Inc., (collectively, "*SAP*") Alion Science and Technology Corporation ("*Alion*"), Pratt & Whitney, the City of Fresno, the Pennsylvania Department of Transportation (the "*Pennsylvania DOT*") or Booz Allen Hamilton, is a party shall be assumed or assigned to Éclat Consulting, LLC absent (a) a consensual resolution of the objection filed by Alion [Docket No. 1075], Pratt & Whitney [Docket No. 1069], the City of Fresno [Docket No. 1082], the Pennsylvania DOT [Docket No. 1070], or Booz Allen Hamilton [Docket No. 1094] (collectively, the "*Filed Objections*") or any other issue or objection raised by CDMV or SAP or (b) further order

of the Bankruptcy Court; provided that upon any such consensual resolution of the Filed

Objections of Alion, Pratt & Whitney, the City of Fresno, the Pennsylvania DOT, or Booz

Allen Hamilton, or of any other issue or objection raised by CDMV or SAP, no further

order of the Bankruptcy Court shall be required and the applicable contracts shall be

deemed to be assumed and assigned pursuant to the terms of this Order.  Further, the

Debtors will not assume and assign their Montgomery County, Maryland contract absent

consent of counsel to the Westchester Fire Insurance Company and ACE USA.  Finally,

the Debtors will not assume and assign to Éclat Consulting, LLC any of the contracts

listed on Annex A to the Limited Objection of the Deloitte U.S. Firms to Debtors' Motion

Pursuant to Section 363 of the Bankruptcy Code for a Comfort Order Authorizing the Sale

of Certain Legacy Contracts and Related Assets to Éclat Consulting, LLC and Granting

Related Relief (the "***Deloitte Objection***") [Docket No. 1099] absent (a) a consensual

resolution of the Deloitte Objection or (b) further order of the Bankruptcy Court; provided

that upon any such consensual resolution of the Deloitte Objection, no further order of the

Bankruptcy Court shall be required and the contracts on Annex A to the Deloitte

Objection shall be deemed to be assumed and assigned to Éclat Consulting, LLC pursuant

to the terms of this Order.  All of the Deloitte U.S. Firms' rights with respect to the Asset

Purchase Agreement, dated as of March 23, 2009, with BearingPoint, Inc. and the

subsidiaries of BearingPoint that are signatories thereto and the Assignment and

Assumption Agreements dated May 8, 2009 and May 29, 2009 are hereby preserved.

      3.     **Approval**. The Asset Purchase Agreement, and all other documents and

instruments related to and connected with the Transactions and the consummation thereof,

and all of the terms and conditions thereto, are hereby approved.  Seller is hereby

authorized to (i) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the Asset Purchase Agreement and the Transactions, and any prior execution by Seller of such agreements, documents, and instruments is hereby ratified; (ii) perform all obligations under the Asset Purchase Agreement, and other documents and instruments related to or connected with the Transactions and the consummation thereof, including but not limited to deeds, assignments, stock powers, and other instruments of transfer, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) assume and assign to Buyer the Assigned Contracts; and (iv) take all other and further actions as may be reasonably necessary to consummate and implement the Transactions and perform all obligations under the Asset Purchase Agreement, and all other documents and instruments related to and connected with the Transactions and the consummation thereof, without any further corporate action or orders of the Bankruptcy Court. Without limiting the foregoing, the Seller is hereby authorized to release, with respect to former employees of the Debtors hired by the Buyer, (i) public inspection files and any other immigration-related document, and (ii) immigration documentation in the possession of the Debtors' outside immigration counsel (including but not limited to visa applications and other related documents containing confidential information), in each case necessary or useful to the Buyer's efforts to assume, on an employee by employee basis, certain immigration-related obligations with respect to former employees of the Debtors hired by the Buyer, subject to any employee consent required under applicable law. Any and all prior acts of the Debtors in respect of the foregoing are hereby ratified. The Buyer shall have no obligation to proceed with the

Closing until all conditions precedent to their obligations to do so have been met, satisfied or waived.

4. **Valid Transfer**. As of the Closing, (i) the Transactions shall effect a legal, valid, enforceable and effective sale and transfer of the Acquired Assets to Buyer, and shall vest Buyer with title to such Acquired Assets free and clear of all Interests of any kind whatsoever; and (ii) the Asset Purchase Agreement, any other documents or instruments related to or connected with the Transactions and the consummation thereof, and the Transactions shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Seller, any successor trustee appointed with respect thereto, and each other person and entity; provided, however, this paragraph is subject to the rights of the United States Government pursuant to paragraph 29 of this Order.

5. **Free and Clear**. Except as expressly provided for in the Asset Purchase Agreement or this Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the Acquired Assets to the Buyer and the Buyer shall take title to and possession of the Acquired Assets, upon the Closing, free and clear of all Interests of any kind or nature whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Acquired Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments,

consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

6.    **Injunction**. Except as expressly permitted by the Asset Purchase Agreement as to those liabilities specifically assumed in Section 1.02 of the Asset Purchase Agreement (the "***Assumed Liabilities***"), all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Interests or Claims of any kind or nature whatsoever against or in the Seller or the Seller's interests in the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Seller, the Acquired Assets, the operation of the Seller's businesses before the Closing or the transfer of the Seller's interests in the Acquired Assets to the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests and/or claims against the Buyer, its property, its successors and assigns, or any of its Affiliates, partners, principals, or shareholders or the interests of the Debtors in such Acquired Assets.  Following the Closing, no holder of an Interest against the Debtors shall interfere with Buyer's title to or use and enjoyment of the Debtors' interests in the Acquired Assets based on or related to such Interests, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such Acquired Assets as of the

Closing, subject to any rights, claims and defenses that the Seller's estates and Seller, as applicable, may possess with respect thereto.

7. **General Assignment**. As of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Buyer under the Asset Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets, including the Assigned Contracts, to the Buyer. Each and every state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions, and the United States and each federal agency is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

8. **No Successor Liability**. Neither Buyer nor its affiliates, successors or assigns shall, as a result of the consummation of the Transaction: (i) be a successor to the Seller or the Debtors' estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Seller or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Seller or any enterprise of the Seller. The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law. Except for the Assumed Liabilities, the transfer of the Acquired Assets to Buyer under the Asset Purchase Agreement shall not result in (i) Buyer, its affiliates, partners, principals or shareholders, or the Acquired Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) Buyer, its Affiliates, partners, principals or shareholders, or the Acquired Assets

having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or liability retained by the Debtors under the Asset Purchase Agreement, or (iii) Buyer, its Affiliates, Member Firms, partners, principals or shareholders, or the Acquired Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Asset Purchase Agreement. The Motion constituted sufficient notice of the limitation set forth herein in accordance with Rule 6004-1 of the Local Rules.

9. **Examples of No Successor Liability.** Without limiting the generality, effect or scope of the foregoing, as a result of and following the Closing of the Transactions, the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor or employment or benefits law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Seller or any obligations of the Seller, including, but not limited to, liabilities arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the Acquired Assets prior to the Closing, or any taxes in connection with, or in any way relating to the cancellation of debt of the Seller or its Affiliates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Buyer of certain persons previously employed by the

Seller, Buyer shall not have any obligations or liabilities to any employee of the Seller or in respect of any employee benefits owing to or on behalf of any employee of the Seller (except to the extent the Buyer has expressly agreed to pay certain employee benefits to designated employees in the Asset Purchase Agreement or any related documents), or with respect to any plan or program administered by the Seller or any other person or entity or administered for the benefit of the Seller's employees, and any obligations of the Buyer to any such person shall be limited to those obligations agreed to by Buyer with such person, if any, on and following the later of the Closing and the date, if any, that such person first becomes employed by Buyer. In the event that the Buyer elects to be treated as a successor employer under section 3121(a)(1) of the Internal Revenue Code, or makes an election to assume, on an employee by employee basis, immigration-related liabilities with respect to former employees of the Debtors hired by the Buyer, the Buyer shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

10. **Assumption and Assignment**. Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing, the Seller's assumption and assignment to the Buyer of the Assigned Contracts, and the Buyer's acceptance of such assignment on the terms set forth in the Asset Purchase Agreement, are hereby approved subject to the terms set forth below. On or before Closing, the Buyer retains the right to withdraw the designation of a Contract to be assumed and assigned in accordance with the Asset Purchase Agreement and the Contract Notices. On the Closing, the Assigned Contracts shall be transferred to the Buyer free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities. The Assigned Contracts shall remain in full force and effect for the benefit of the Buyer in accordance with their respective terms, notwithstanding

any provision in any such Assigned Contracts of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code that prohibits, restricts, or conditions such assignment, transfer or sublease. Pursuant to Bankruptcy Code section 365(k), the Seller shall be relieved from any further liability with respect to the Assigned Contracts arising after assignment to the Buyer, except liability for Cure Amounts as set forth in the Asset Purchase Agreement and herein. Seller is hereby authorized to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign or transfer the Assigned Contracts to the Buyer at Closing.

11. **Contract Notices**. The Debtors have served by overnight mail delivery service, fax, or email on all of the nondebtor counterparties to the Assigned Contracts, a Contract Notice that included, to the extent applicable (i) the Contract, (ii) the name of the counterparty to the Contract, (iii) the Cure Costs, (iv) the identity of the assignee, and (v) the deadline by which any such Contract counterparty must file an objection to the proposed assumption and assignment and no other or further notice is required. All objections to the Transactions have been settled, withdrawn or otherwise resolved, expect as provided in paragraph 2 of this Order.

12. **Payment of Cure Costs**. To the extent there are any unpaid Cure Amounts at the Closing the Seller is and shall be obligated, and are hereby directed, to pay or cause to be paid such Cure Amounts in accordance with the Asset Purchase Agreement. The Seller's obligation to pay the Cure Amounts and the Buyer's performance of its obligations under the Assigned Contracts after the Closing shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b)(1) and 365(f)(2)(B).

13. **Determination of Cure Costs**. The Cure Amounts set forth on the applicable

Contract Notice shall constitute findings of the Bankruptcy Court and shall be final and binding on parties to such Assigned Contracts and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assumption and assignment, irrespective of the terms and conditions of such Assigned Contracts. Each counterparty to an Assigned Contract, whether entered before or after the Commencement Date, is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Buyer or its property (including without limitation the Acquired Assets), any default arising prior to or existing as of Closing, or any counterclaim, defense, recoupment, setoff or any other Interest asserted or assertable against the Debtors (including, without limitation, a claim that a counterparty was overcharged or otherwise due a payment on account of the Debtor's performance of the contract prior to the Closing Date); and (ii) imposing or charging against Buyer or its affiliates any accelerations, assignment fees, increases or any other fees as a result of the Seller's assumption and assignment or assumption and sublease to Buyer of the Assigned Contract. To the extent that any counterparty was notified of Cure Amounts or defaults (or the absence thereof), in accordance with the Procedures Order, and failed to object to such Cure Amounts or defaults (or the absence thereof) with respect to an Assigned Contract, in accordance with the Procedures Order, such counterparty is deemed to have consented to such Cure Amounts or defaults (or the absence thereof) and is deemed to have waived any right to assert or collect any Cure Amounts or enforce any defaults that may arise or have arisen prior to or as of the Closing.

14. **Ipso Facto Clauses Ineffective**. Upon the Debtors' assignment of the Assigned Contracts to the Buyer under the provisions of this Order, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to

declare or enforce a default by the Debtor or Buyer thereunder or otherwise take action against the Buyer as a result of any Debtor's financial condition, change in control, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract. Any provision in an Assigned Contract that prohibits or conditions the assignment or sublease of such Assigned Contract (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. The failure of the Seller or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Seller's and Buyer's rights to enforce every term and condition of the Assigned Contract.

15. **Binding Effect of Order**. This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. The terms and provisions of the Asset Purchase Agreement, all other documents and instruments related to or connected with the Transactions and the consummation thereof, the Transactions themselves, the Procedures Order, and this Order shall be binding in all respects upon the Seller, the Debtors' estates, all creditors thereof (whether known or unknown), all holders of equity interests in the Seller, the Buyer and its respective affiliates, successors and

assigns, and any and all third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

16. **Release of Interests**. This Order (i) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. On the Closing, the Debtors and persons holding an Interest in the Acquired Assets as of the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist.

17. **Release of Non-Compete Obligations**. Prior to or upon the Closing, the Seller on behalf of itself and its bankruptcy estate, hereby releases, for the benefit of Buyer each employees of the Buyer from their respective employment, confidentiality, non-compete, non-solicitation and related obligations as described in section 4.04(a) of the Asset Purchase Agreement.

18.     **Release of Avoidance Actions**. As of the Closing, each Seller, on behalf of itself and its bankruptcy estate, is deemed to have fully and irrevocably released all avoidance actions relating to the Assigned Contracts to the extent actually assigned to the Buyer.  Prior to or upon the Closing, the Seller, on behalf of itself and its bankruptcy estate, is hereby authorized to execute and deliver to Buyer a full and irrevocable release of all avoidance actions and similar rights and causes of action, including causes of action under sections 544 through 553 of the Bankruptcy Code of such Seller and such Seller's bankruptcy estate against (i) Buyer, or any affiliate of Buyer, and (ii) any counterparty to an Assigned Contract and any Affiliate of such counterparty, in each case with respect to the Acquired Assets.  Seller is hereby authorized and directed to execute and deliver to Buyer at Closing a written instrument memorializing such release, provided that the failure to execute or deliver such instrument shall not limit the effectiveness or enforceability of this paragraph on and after Closing.

19.     **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to Buyer; (ii) interpret, implement and enforce the provisions of the Procedures Order, this Order, and any related order; (iii) protect Buyer, its affiliates, partners, principals or shareholders against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, including, without limitation, through the grant of declaratory and injunctive relief determining that the Buyer, its affiliates, partners, principals or shareholders and their assets (including the Acquired Assets) are not subject to such Interests and prohibiting persons and entities from asserting such Interests against the Buyer, its affiliates, partners,

principals or shareholders and their assets (including the Acquired Assets), and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

20.    **Fees, Expenses and Other Obligations**. All obligations of the Debtors under the Asset Purchase Agreement and any and all of the documents delivered by the Debtors in connection with the Asset Purchase Agreement shall be paid in the manner provided in the Asset Purchase Agreement and the Procedures Order, without further order of this Court.  All such obligations shall constitute allowed administrative claims in each of the Debtors' chapter 11 cases, with first priority administrative expense under section 507(a)(1) of the Bankruptcy Code as set forth in the Procedures Order.  Until satisfied, all such obligations shall continue to have the protections provided in the Procedures Order and this Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Buyer.

21.    **Sale Proceeds**. Any and all valid and perfected Interests in the Acquired Assets of the Debtors shall attach to any proceeds of such Acquired Assets immediately upon receipt of such proceeds by the Seller (or any party acting on any Seller's behalf) in the order of priority, and with the same validity, force and effect which they now have against such Acquired Assets, subject to any rights, claims and defenses the Seller, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Order.  Except as required by the Asset Purchase Agreement, no proceeds subject to an asserted security interest or lien shall be used or disbursed by the Debtors without the express consent of the party or parties asserting a security interest or lien therein or further order of the Bankruptcy Court after notice (to all parties who

have asserted an Interest in such proceeds) and a hearing, consistent with the requirements of the Bankruptcy Code.

22. **No Material Modifications**. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Debtors and the Buyer, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement be provided on seventy-two (72) hours prior notice to its effectiveness to Bingham McCutchen LLP, as counsel for the Official Committee of Unsecured Creditors and Paul, Hastings, Janofsky & Walker LLP, as counsel for the Administrative Agent for the Debtors' prepetition secured lenders (the "***Agent***"). At the sole discretion of the Buyer, the Debtors and the Buyer are expressly authorized, without further order of the Bankruptcy Court, to execute an amendment to the Asset Purchase Agreement to provide for the Closing to occur on one or more Closing Dates so long as the amendment to the Asset Purchase Agreement is filed with the Bankruptcy Court. Any material modification, amendment, or supplement to the Asset Purchase Agreement must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

23. **Subsequent Orders and Plan Provisions**. Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these or other chapter 11 cases (including without limitation, an order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order, and

the provisions of this Order shall survive and remain in full force and effect.

24. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this–Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

25. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the ten (10) day stay provided in such rules is hereby expressly waived and shall not apply. Time is of the essence in approving the Transactions, and the Debtors and the Buyer intend to close the Transactions as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to Closing, or risk its appeal will be foreclosed as moot.

26. **Closing Conditions and Termination Rights**. Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in Articles 5 and 7 of the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

27. **Allocation**. The Buyer shall pay proceeds of the Transactions to the Seller. The rights of all parties in interest, including the Agent and the Official Committee of Unsecured Creditors, in respect of the proper allocation of proceeds received by the Seller on account of the Acquired Assets are reserved (and without impairing or affecting, in any way, Buyer's rights under the Asset Purchase Agreement).

28.     Nothing contained in this Order shall affect or impair the rights granted to the Agent pursuant to the Final Order Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code (A) Authorizing the Debtors' Use of Cash Collateral by Consent and (B) Granting  Adequate Protection, dated April 20, 2009.

29.     Nothing in this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. §§ 15, *et seq.* or otherwise affect the rights of the United States under the Act.

Dated: New York, New York
         *<u>July 24, 2009</u>*

                                   *<u>s/ Robert E. Gerber</u>*
                                   HONORABLE ROBERT E. GERBER
                                   UNITED STATES BANKRUPTCY JUDGE

## Exhibit A
## Asset Purchase Agreement