**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BEARINGPOINT, INC., <u>et al.</u>, | ) ) | Case No. 09-10691 |
| Debtors.[1] | ) ) ) | Jointly Administered |

### ORDER (A) AUTHORIZING DEBTORS TO SELL AND TAKE ALL STEPS NECESSARY TO CONSUMATE THE (I) SALE OF ALL THE ISSUED SHARE CAPITAL OF BEARINGPOINT EUROPE HOLDINGS B.V., (II) SALE OF CERTAIN INTELLECTUAL PROPERTY, AND (III) LICENSE OF CERTAIN INTELLECTUAL PROPERTY AND (B) GRANTING RELATED RELIEF

Upon consideration of the motion (the "***Sale Motion***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") with respect to that certain Agreement for the Sale and Purchase of the Share Capital of BearingPoint Europe Holdings B.V., dated [July 15], 2009 (the "***Stock Purchase Agreement***") among BE Holdings I CV (the "***BE Holdings***"), Caravane Holdings LLC ("***Caravane***"), BearingPoint LLC ("***BE LLC***"), Peloton Holdings, L.L.C. ("***Peloton***"), BearingPoint, Inc. ("***BE***"), Echelon Holdings C.V. ("***Echelon***" and collectively with BE Holdings, Caravane, BE LLC, BE, and Peloton, the "***Sellers***"), BearingPoint Europe Holdings B.V. ("***BE EMEA***"), and BE Partners B.V. (together with its designees or assignees, as applicable, the "***Buyer***") and other related transaction documents contemplated thereby (the "***Transaction Documents***") seeking, among other things, the entry of an order (the "***Sale Order***") (a) authorizing the Debtors to sell and take all steps necessary to

---

[1] The Debtors are BearingPoint, Inc., BE New York Holdings, Inc., BearingPoint LLC, BearingPoint Americas, Inc., BearingPoint BG, LLC, BearingPoint Enterprise Holdings, LLC, BearingPoint Global Operations, Inc., BearingPoint International I, Inc., BearingPoint Israel, LLC, BearingPoint Puerto Rico, LLC, BearingPoint Russia, LLC, BearingPoint South Pacific, LLC, BearingPoint Southeast Asia, LLC, BearingPoint Technology Procurement Services, Inc., BearingPoint USA, Inc., i2 Mid Atlantic LLC, i2 Northwest LLC, Metrius, Inc., OAD Acquisition Corp., OAD Group, Inc., Peloton Holdings, L.L.C., Softline Acquisition Corp., Softline Consulting and Integrators, Inc.

consummate the (i) sale of all of the issued share capital (the "*Acquired Shares*") of BE EMEA, (ii) sale of certain intellectual property (the "*Acquired IP*"), and (iii) license of certain related intellectual property (the "*Licensed IP*" and collectively with the Acquired Shares and the Acquired IP, the "*Acquired Assets*") pursuant to the License Agreement[2] and BE Trademark License (the "*Transaction*") and (b) granting related relief; and the Court's consideration of the Sale Motion, the relief requested therein, and the responses thereto (if any) being a core proceeding in accordance with 28 U.S.C. § 157(b); and upon consideration of the Declaration of John DeGroote in Support of the Sale of All the Issued Share Capital of BearingPoint Europe Holdings B.V., and Related Transactions, dated August 11, 2009 [Docket No. 1196]; and adequate notice of the Sale Motion having been given; and the appearances of all interested parties and all responses and objections to the Sale Motion, if any, having been duly noted in the Sale Hearing; and upon the record of the Sale Hearing, the Sale Motion, said responses and objections, if any; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.[3]

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Stock Purchase Agreement.

[3] Findings of fact shall be construed as, and constitute, conclusions of law and conclusions of law shall be construed as, and constitute, findings of fact when appropriate. See Fed. R. Banks. P. 7052. Any statements made by the Court from the bench at the Sale Hearing shall constitute additional conclusions of law and findings of fact as appropriate.

B. Notice of the Sale Motion, and the Sale Hearing has been given in accordance with Bankruptcy Rules 2002 and 6004, Local Rules 2002 and 6004 and such notice has constituted good and sufficient notice of the Sale Motion and the Sale Hearing to all parties in interest, including, without limitation, potential bidders for the Acquired Assets, parties who hold all of the following (collectively, the "*Interests*"): liens claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise in the Acquired Assets; and no other or further notice of the Sale Motion, the Sale Hearing, or the entry of this Sale Order need be given.

C. The Acquired Shares, and certain of the Acquired IP and Licensed IP constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

D. Prior to the execution of the Stock Purchase Agreement, the Seller adequately marketed the Acquired Assets by soliciting higher and better offers, and a reasonable opportunity has been afforded any interested party to make a higher and better offer for the Acquired Assets. No other person or entity or group of persons or entities has submitted a higher and better offer to purchase or license the Acquired Assets than the offer set forth in the Transaction Documents.

E. Exigent circumstances and sound business reasons exist for the Transaction and the other transactions contemplated in the Transaction Documents. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Transaction is not consummated quickly, (ii) the Transaction constitutes the highest and best offer for the Acquired Assets, (iii) the Transaction will present the best opportunity to realize value of the Acquired Assets on a going concern basis and avoid decline and devaluation of the Acquired Assets, and (iv) unless the Transaction is concluded expeditiously as provided for in the Sale Motion and pursuant to the Transaction Documents, potential creditor recoveries may be substantially diminished.

F. The sale of the Acquired Shares and Acquired IP and the license of the Licensed IP and the consummation of the Transaction and other transactions pursuant to the Transaction Documents constitute the exercise of sound business judgment and fiduciary duties by the Debtors, the Sellers, and Dallas Project Holdings Limited ("**DPHL**") and such acts are in the best interests of the Debtors, their estates, and their creditors, the Sellers, and DPHL.

G. The Debtors, the Sellers and DPHL, have the authority and power to execute, deliver and perform their obligations under each of the Transaction Documents to which they are a party. The Debtors and Sellers have taken all corporate action necessary to authorize and approve each of the Transaction Documents, and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Transaction Documents, are required for the Debtors, Sellers, and DPHL to consummate the Transaction and other transactions under the Transaction Documents.

H. The transfer of the Acquired Shares and Acquired IP to the Buyer will be a legal, valid, and effective transfer of the Acquired Shares and Acquired IP, and will vest with the

Buyer and BE EMEA, as the case may be, with full title guarantee and all right, title and interest of Sellers, DPHL, the Debtors, and the Debtors' bankruptcy estates to the Acquired Shares and Acquired IP.

I. Except as otherwise permitted in the Transaction Documents, the Transfer of any of the Licensed IP to the Trust in accordance with the Transaction Documents will vest the Trust with full title guarantee and all right, title and interest of Seller, the Debtors, the Debtors' bankruptcy estates, and DPHL to such Licensed IP.

J. The price to be paid under the Stock Purchase Agreement and other consideration to be provided under the Transaction Documents (the "***Consideration***") represents the highest and best offer received, individually and collectively, by the Sellers, the Debtors, the Debtors' bankruptcy estates, and DPHL for the Acquired Assets and each of the transactions contemplated by the Transaction Documents. The Consideration constitutes reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, fair consideration under the Uniform Fraudulent Conveyance Act, and reasonably equivalent value, fair consideration and fair value under any other applicable laws, for the Acquired Assets.

K. The transactions contemplated by the Transaction Documents are undertaken by the Debtors, Sellers, DPHL, BE EMEA, and the Buyer at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and such parties are entitled to the protections of section 363(m) of the Bankruptcy Code.

L. The Sellers, the Debtors, DPHL, BE EMEA, and the Buyer have not engaged in any actions or conduct that is prohibited by section 363(n) of the Bankruptcy Code. The Buyer is entitled to all protections and immunities of Section 363(n) of the Bankruptcy Code.

M. The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

N. The Transaction and other transactions contemplated by the Transaction Documents are in the best interests of the Sellers, the Debtors, their estates and creditors, and DPHL.

O. Other than with respect to Swiss Share Pledge, the Debtors may sell the Acquired Shares and the Acquired IP (to the extent the Acquired IP is owned by the Debtors) free and clear of all Interests, with respect to each creditor asserting an Interest, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Other than with respect to the Swiss Share Pledge, those holders of Interests who did not object or who withdrew their objections to the transactions contemplated by the Transaction Documents are deemed to have consented to the Sale Motion and the sale of the Acquired Shares and the Acquired IP to the Buyer and to BE EMEA, as the case may be, pursuant to Bankruptcy Code section 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the transactions contemplated by the Transaction Documents in which such holders allege an Interest, in the same order of priority, with the same validity, force and effect that such holder had prior to the transactions contemplated by the Transaction Documents, and subject to any claims and defenses of the Debtors and their estates may possess with respect thereto.

P. The Transaction and other transactions contemplated by the Transaction Documents do not amount to a consolidation, merger or *de facto* merger of the Buyer and BE EMEA, and the Debtors and/or the Debtors' estates. There is not substantial continuity between

the Buyer or BE EMEA, and the Debtors, there is no common identity between the Debtors and the Buyer or BE EMEA, neither the Buyer nor BE EMEA are mere continuations of the Debtors or their estates, and neither the Buyer nor BE EMEA constitutes a successor to the Debtors or their estates. Except as set forth in the Transaction Documents, neither the Buyer nor BE EMEA shall have obligations with respect to any liabilities of the Debtors and the Debtors will release and forever discharge the Buyer and BE EMEA and its successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale and license of the Acquired Assets, except for liabilities and obligations under the Transaction Documents.

Q. The Transaction and other transactions under the Transaction Documents outside of a plan of reorganization pursuant to the Transaction Documents neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The transactions under the Transaction Documents do not constitute a *sub rosa* plan.

Therefore, for all of the foregoing and after due deliberation, the Court hereby:

**ORDERS, ADJUDGES, AND DECREES THAT:**

1. The Sale Motion and the relief requested therein is granted and approved in all respects.

2. The Transaction Documents, and each of the transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects.

3. All objections and responses concerning the Sale Motion are hereby resolved in accordance with the terms of this Sale Order and as set forth in the record of the Sale

Hearing. To the extent any such objections or responses were not otherwise withdrawn, waived, or settled, they, and all reservations and rights therein, are overruled and denied.

4. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to sell and take all steps necessary to consummate the Transaction in accordance with the Transaction Documents and to take any other actions contemplated by the Transaction Documents.

5. Each of the Debtors, the Sellers, DPHL and the Buyer are hereby authorized to take all actions and execute all documents and instruments that the Debtors, the Sellers, DPHL, and the Buyer deem necessary or appropriate to implement and effect the transactions contemplated by the Transaction Documents.

6. Except as expressly provided in the Transaction Documents or any written agreement directly between the Buyer or BE EMEA and a third party, neither the Buyer nor BE EMEA shall have liability for any claims, obligations, liens or liabilities of the Debtors, the Sellers, or DPHL, whether arising prior to, on or after Completion.

7. Except as expressly provided in the Transaction Documents, neither the Buyer nor BE EMEA has assumed, and shall have no liability or obligation for any liabilities of the Debtors, the Sellers or DPHL, as a successor in interest or otherwise. Except as permitted under the express terms of the Transaction Documents, the transfer of the Acquired Shares and Acquired IP from the Debtors, the Sellers, and DPHL will vest with the Buyer and BE EMEA, as the case may be, all right, title and interest of the Sellers, the Debtors and their bankruptcy estates, and DPHL to the Acquired Shares and Acquired IP free and clear of any and all Interests.

8. Except as otherwise permitted in the Transaction Documents, the Transfer of the Licensed IP to the Trust in accordance with the Transaction Documents will vest the Trust with full title guarantee and all right, title and interest of Seller, the Debtors, the Debtors' bankruptcy estates, and DPHL to the Licensed IP free and clear of any and all Interests.

9. At or prior to Completion, the Buyer shall pay the Purchase Price to BE Holdings, BE EMEA shall pay the ROW Cash Amount to BE Holdings and shall pay the Excess Cash Amount to BE Holdings or to one or more of the Debtors, and BE Holdings shall deliver the Purchase Price, the ROW Cash Amount and any Excess Cash Amount not already received by the Debtors to one or more of the Debtors.

10. At or prior to Completion, BE EMEA and BE Holdings shall enter into the Loan Agreement, which shall be secured by the Share Pledge Agreement granting a security interest over all issued shares in the capital of BE EMEA to BE Holdings.

11. The Consideration constitutes reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, fair consideration under the Uniform Fraudulent Conveyance Act, and reasonably equivalent value, fair consideration and fair value under any other applicable laws, for the Acquired Assets.

12. Neither the Buyer nor BE EMEA is and nor shall be deemed a successor to the Debtors or their estates as a result of the consummation of the Transaction and other transactions contemplated by the Transaction Documents or any other event occurring in the chapter 11 cases under any theory of law or equity, and, except as set forth in the Transaction Documents, neither the Buyer nor BE EMEA shall assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their

estates including, but not limited to, any successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability.

13. Each and every federal, state, local and foreign governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents and this Sale Order.

14. This Sale Order shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local and foreign officials, and all other persons or entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Acquired Shares or Acquired IP.

15. The Buyer and BE EMEA, as the case may be, as a good faith purchaser of the Acquired Shares and Acquired IP and BE EMEA as a good faith licensee of the Licensed IP, each is hereby granted all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code such that the reversal or modification on appeal of the Sale Order shall not affect the validity of the sale of the Acquired Shares or Acquired IP or the license of the Licensed IP as contemplated under the Transaction Documents.

16. The transactions approved by this Order are not subject to avoidance pursuant to Bankruptcy Code section 363(n).

17. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Buyer or the Buyer's affiliates (as they existed immediately prior to Completion) to recover any claim which such "person" has solely against the Debtors, the Sellers, DPHL, or any other of the Debtors' affiliates (as they exist immediately following Completion).

18. Effective upon Completion, pursuant to section 363 of the Bankruptcy Code, the sale of the Acquired Shares and Acquired IP to the Buyer (and its designees or assignees, as applicable) shall constitute a legal, valid, and effective transfer of the Acquired Shares and Acquired IP and shall vest the Buyer (and its designees or assignees, as applicable) with all right, title and interest of the Sellers, the Debtors and their estates, and DPHL in and to the Acquired Shares and Acquired IP free and clear of all Interests, pursuant to Bankruptcy Code section 363(f).

19. For the avoidance of doubt, upon Completion all Interests of the Administrative Agent, the Collateral Agent, and each of the lenders party to the Amended and Restated Credit Agreement dated as of June 1, 2007 amongst BE, BE LLC, the Guarantors, the Lead Arranger, the Issuing Banks, the Administrative Agent (the "*Agent*") and the Collateral Agent, as amended from time to time (collectively the "*Agents and the Secured Lenders*") with respect to the Acquired Assets shall be released and the Agents and each of the Secured Lenders shall be deemed to have expressly consented to such release upon the entry of this Order. In connection with the foregoing, the Interests of the Agents and each of the Secured Lenders shall attach to the proceeds of the transactions contemplated by the Transaction Documents in which such holders allege an Interest, in the same order of

priority, with the same validity, force and effect that such holder had prior to the transactions contemplated by the Transaction Documents, and subject to any claims and defenses of the Debtors and their estates may possess with respect thereto. Any proceeds from the EMEA Sale (or the repatriation of cash as a result of or in furtherance of such sale) shall not be used by the Debtors absent consent of the Agent or further order of the Bankruptcy Court, given that the Agent has asserted an interest in such funds.

20. Effective upon Completion, pursuant to section 363 of the Bankruptcy Code, the transfer of any of the Licensed IP to the Trust in accordance with the Transaction Documents will vest the Trust with full title guarantee and all right, title and interest of Sellers, the Debtors, the Debtors' bankruptcy estates, and DPHL to such Licensed IP.

21. The Debtors are authorized to exercise their stock power to cause each of their non-debtor affiliates that are party to any of the Transaction Documents to take any and all actions necessary to comply with their obligations under the Transaction Documents.

22. From and after the date of the entry of this Sale Order, the Debtors, the Sellers, DPHL, or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transactions contemplated by the Transaction Documents in accordance with the terms of this Sale Order.

23. The Buyer and BE EMEA shall continue the document retention directive that was established by BE in connection with the securities class action (the "*Directive*") entitled *In re BearingPoint, Inc. Securities Litigation*, Civil Action No. 1:05-cv-00454 (E.D. Va) (the "*Action*") with respect to documents already maintained by BE EMEA (the "*Documents*") for a period of four years following the date of the entry of this Order ("*Retention Period*"); provided, however, nothing set forth herein shall require the Buyer or BE EMEA to produce

any documents or other information in connection with the Action nor shall anything herein create any rights or obligations in excess of those provided by the Federal Rules of Civil Procedure. During the Retention Period, Buyer and BE EMEA shall upon written request by BE, furnish or cause to be furnished to BE the Documents (or copies thereof, at the Buyer's or BE EMEA's sole discretion), within a reasonable time; provided, however, Buyer and BE EMEA shall not be required to expend any cost (other than a nominal expenditure) in complying with such written request. Nothing in this Order shall be construed to change the obligations or rights of the parties in the Action under the Federal Rules of Civil Procedure.

24. Neither the Buyer nor BE EMEA has assumed or otherwise become obligated for any of the Debtors', Sellers', or DPHL's liabilities other than as set forth in the Transaction Documents.

25. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Sale Order in all respects; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

26. The Transaction Documents may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court, provided, that any (a) such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Buyer and (b) such modification, amendment or supplement is filed with the Bankruptcy Court and provided on seventy-two (72) hours prior

notice to its effectiveness to Bingham McCutchen LLP, as counsel for the Official Committee of Unsecured Creditors, and Paul, Hastings, Janofsky & Walker LLP, as counsel for the Administrative Agent for the Debtors' prepetition secured lenders.

27. The provisions of this Sale Order are nonseverable and mutually dependent.

28. This Sale Order shall inure to the benefit of the Buyer, BE EMEA, the Debtors, the Sellers, DPHL, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further cases involving the Debtors, the Sellers, or DPHL, whether under chapter 7 or chapter 11 of the Bankruptcy Code or other insolvency or similar proceeding.

29. The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtors, converting the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code, or dismissing any of the Debtors' chapter 11 cases.

30. Because time is of the essence, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h), shall not apply to this Sale Order.

31. The Debtors and Seller are authorized to close the sale immediately upon entry of this Sale Order.

Dated: **_August 13, 2009_**  *s/ Robert E. Gerber*
       New York, New York    HONORABLE ROBERT E. GERBER
                                            UNITED STATES BANKRUPTCY JUDGE