**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **BEARINGPOINT, INC., et al.,** | : | **09 - 10691 (REG)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

----------------------------------------------------------------x

**ORDER CONFIRMING DEBTORS' MODIFIED SECOND AMENDED JOINT PLAN**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED DECEMBER 17, 2009**

BearingPoint, Inc. and certain of its affiliates, as debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "*Debtors*"), having proposed and filed

the Debtors' Modified Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code,

dated December 17, 2009 (the "*Plan*") with the United States Bankruptcy Court for the Southern

District of New York (the "*Bankruptcy Court*"); and the Bankruptcy Court having entered, after

due notice and a hearing, the Order (i) Approving the Proposed Disclosure Statement, (ii)

Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and

(iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Second

Amended Joint Plan, dated November 4, 2009 [Docket No. 1400] (the "*Disclosure Statement*

*Order*"); and the Disclosure Statement for Debtors' Second Amended Join Plan under Chapter

11 of the Bankruptcy Code (the "*Disclosure Statement*") and the Plan and the Solicitation

Package (as defined below) having been distributed to holders of Claims entitled to vote thereon

as provided in the Disclosure Statement Order; and due notice of (i) entry of the Disclosure

Statement Order, (ii) the Confirmation Hearing, and (iii) the deadline for voting on, and/or

objecting to, the Plan having been provided to holders of Claims against and Equity Interests in

the Debtors and other parties in interest in accordance with the Disclosure Statement Order, the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the

Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"); and such

notice being sufficient under the circumstances and no other or further notice being required; and

objections (the "***Objections***") to the Plan having been interposed; and the Objections having been

overruled or resolved prior to the hearing; upon consideration of the (i) Memorandum of Law in

Support of Confirmation of the Debtors' Second Amended Joint Plan Under Chapter 11 of the

Bankruptcy Code (the "***Confirmation Brief***") [Docket No. 1527], (ii) Declaration of Craig

Johnson of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes

on and Results of Voting With Respect to the Debtors' Second Amended Joint Plan Under

Chapter 11 of the Bankruptcy Code, Dated November 2, 2009 [Docket No. 1326] (describing the

methodology for the tabulation and results of voting with respect to the Plan and evidencing that

the Debtors have received the requisite acceptances of the Plan in both number and amount as

required by section 1126 of the Bankruptcy Code) (the "***GCG Declaration***"); (iii) Declaration of

John DeGroote in Support of Entry of an Order Confirming the Debtors' Second Amended Joint

Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2009 [Docket No. 1525] (the

"***DeGroote Declaration***"); (iv) Declaration of David C. Johnston In Support of Confirmation of

the Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code (the "***Johnston***

***Declaration***," and, together with the GCG Declaration, the DeGroote Declaration, the

"***Declarations***"); and (v) each of the Objections which has not been withdrawn or otherwise

mooted; and the hearing to consider confirmation of the Plan having been held before the

Bankruptcy Court on December 17, 2009 (the "***Confirmation Hearing***"); and the Bankruptcy

Court having reviewed and considered the Plan, the Disclosure Statement, the Disclosure

Statement Order, the Confirmation Brief, each of the Objections which has not been withdrawn

or otherwise mooted and the responses thereto and all related documents; and the appearance of

all interested parties having been duly noted in the record of the Confirmation Hearing, including

the Declarations filed and testimony therein and the exhibits admitted into evidence; and upon all

of the proceedings had before the Bankruptcy Court and upon the entire record of the

Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the

foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings

made herein and on the record of the Confirmation Hearing; and after due deliberation and

sufficient cause appearing therefor, it is hereby DETERMINED, FOUND, ADJUDGED,

DECREED:

## **FINDINGS OF FACT**

A.      <u>Findings</u>.   The findings set forth herein and on the record of the Confirmation

Hearing constitute the Bankruptcy Court's findings of fact pursuant to Rule 52 of the Federal

Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.   To

the extent any of the following findings of fact constitute conclusions of law, they are adopted as

such.   To the extent any of the following conclusions of law constitute findings of fact, they are

adopted as such.

B.      <u>Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2),</u>

<u>1334(a))</u>.   This Court has jurisdiction over the Debtors' Chapter 11 Cases (as defined below),

the confirmation of the Plan and the Objections pursuant to 28 U.S.C. § 1334.   Confirmation of

the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to

enter a final order with respect thereto.   Venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

C.      Commencement and Joint Administration of the Debtors' Chapter 11 Cases.    On February 18, 2009 (the "***Commencement Date***"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").    The Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.    No trustee has been appointed in these Chapter 11 Cases.

D.      Official Committee of Unsecured Creditors.    On February 27, 2009, the Office of the United States Trustee for the Southern District of New York (the "***U.S. Trustee***") appointed a committee of unsecured creditors (the "***Creditors' Committee***").

E.      Judicial Notice.    The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced and/or presented at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

F.      Burden of Proof.    The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

G.      Solicitation and Notice.    On November 4, 2009, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation of votes of acceptances and rejections with respect to the Plan.    The (a) Disclosure Statement (with a copy of the Plan attached thereto), (b) Disclosure Statement Order, (c) Confirmation Hearing Notice, and (d) appropriate ballots for voting on the Plan (the "***Ballots***"), and (d) a letter from the Creditors' Committee (collectively, the "***Solicitation Package***") were served in compliance with

the Bankruptcy Rules and the Disclosure Statement Order.    As described in the Disclosure

Statement Order, (i) the service of the Solicitation Package was adequate and sufficient under the

circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the

Confirmation Hearing and other requirements, deadlines, hearings and matters described in the

Disclosure Statement Order were timely provided in compliance with the Bankruptcy Rules, and

provided due process to all parties in interest.

    H.    As is evidenced by the Affidavit of Service mailing, dated November 13, 2009, of

Karen E. Petriano, an Assistant Director with The Garden City Group, Inc., ("*GCG*") [Docket

No. 1423], all parties required to be provided notice of the Confirmation Hearing (including the

deadline for filing and serving objections to confirmation of the Plan) have been given due,

proper, timely and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy

Rules, and the Disclosure Statement Order, and have had an opportunity to appear and be heard

with respect thereto.    No other or further notice is required.

    I.    <u>Voting</u>.    Votes on the Plan were solicited after disclosure of "adequate

information" as defined in section 1125 of the Bankruptcy Code.    As evidenced by the GCG

Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good

faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code and

the Bankruptcy Rules.

    J.    <u>Plan Supplement</u>.    On December 1, 2009, the Debtors filed that certain

supplement to the Plan [Docket No. 1466] (the "***Plan Supplement***"), which includes the

following documents:   (i) Schedule of Executory Contracts to be Assumed Pursuant to Section

8.01(A) of the Plan; (ii) Schedule of Leases to be Assumed Pursuant to Section 8.01(B) of the

Plan; (iii) Schedule of Executory Contracts Subject to Deferred Rejection Pursuant to Section

8.02 of the Plan; (iv) Form of Liquidating Trust Agreement; (v) Liquidating Trustee's

Biographical Information; and (vi) List of Potential Preference Action Parties.   On December

15, 2009, the Debtors filed a revised Plan Supplement, which included certain non-substantive,

technical modifications (the "***Plan Supplement Modifications***").   [Docket No. 1532].   The Plan

Supplement Modifications are hereby made a part of the Plan Supplement.   All such materials

comply with the terms of the Plan, and the filing and notice of such documents is good and

proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and

no other or further notice is or shall be required.

**<u>Modifications of the Plan</u>**

      K.     <u>Modification of Plan</u>.   Subsequent to Solicitation, on December 17, 2009, the

Debtors filed an amendment to the Plan with certain non-substantive, technical modifications to

the Plan.   Subsequent to the Confirmation Hearing, additional non-substantive, technical

modifications were made to the Plan, as well as certain changes to conform to the Court's rulings

regarding the releases contained in the Plan (all modifications discussed in this paragraph,

collectively the "***Modifications***").   Pursuant to section 1127(a) of the Bankruptcy Code, the

Modifications are hereby made a part of the Plan.

      L.     <u>Notice of Modifications</u>.   The filing and the description of the Modifications on

the record at the Confirmation Hearing constitute due and sufficient notice thereof under the

circumstances of these Chapter 11 Cases.   The Modifications do not materially or adversely

affect the treatment of any Claims against or Equity Interests in the Debtors under the Plan.

Additionally, creditors voting on the Plan were put on notice of potential modifications to the

releases in the Plan to conform with the Creditors Committee's objection to the releases.   The

Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of vote on the Plan under section 1126 of the Bankruptcy Code.

M.    <u>Deemed Acceptance of Plan as Modified</u>.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Plan as amended consistent with the Modifications.

N.    No holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

O.    <u>Compliance with Bankruptcy Code Section 1127</u>.    The Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**<u>Compliance With Section 1129 of the Bankruptcy Code</u>**

P.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

Q.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.    In addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Indenture Trustee Fees, Priority Tax Claims, and Claims related to Employees' Paid Time Off in Article II of the Plan, which need not be classified, Article III of the Plan designates the following eight classes of Claims and one class of Equity Interests:   Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), Class 3 (Other Secured Claims), Class 4(a) (Series C Noteholder Claims), Class 4(b) (FFL Noteholder Claims), Class 5 (Junior Noteholder Claims), Class 6 (General Unsecured Claims), Class 7 (Other Subordinated Claims), and Class 8 (Equity Interests).   Each of the Claims or Equity Interests, as the case may be, in each particular Class is

substantially similar to the other Claims or Equity Interests in such Class.    Valid business, legal

and factual reasons exist for separately classifying the various Claims and Equity Interests

pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims

and Equity Interests.    The Plan therefore satisfies sections 1122 and 1123(a)(1) of the

Bankruptcy Code.

      R.      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.    Article III and Sections

4.1, 4.2 and 4.3 of the Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax

Claims), and Class 3 (Other Secured Claims) are unimpaired by the Plan, thereby complying

with section 1123(a)(2) of the Bankruptcy Code.    The Plan therefore satisfies section 1123(a)(2)

of the Bankruptcy Code.

      S.      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.    Article III

and Sections 4.4 – 4.9 of the Plan specify that Class 4(a) (Series C Noteholder Claims), Class

4(b) (FFL Noteholder Claims), Class 5 (Junior Noteholder Claims), Class 6 (General Unsecured

Claims), Class 7 (Other Subordinated Claims), and Class 8 (Equity Interests) are impaired

pursuant to the Plan, thereby complying with section 1123(a)(3) of the Bankruptcy Code.    The

Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

      T.      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.    The Plan provides for the same

treatment for each Claim or Equity Interest in each respective Class unless the holder of a

particular Claim or Equity Interest has agreed to a less favorable treatment on account of such

Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.    The

Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

      U.      <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.    The Plan, together with the

documents and agreements contemplated in the Plan Supplement, provide adequate and proper

means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy

Code.   The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

   V. <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.   The Plan provides for

the transfer of the Debtors' assets to the Liquidating Trust and the Liquidation of all of the

Debtor entities.   As such, the Plan does not provide for the issuance of nonvoting equity

securities, and the Plan satisfies section 1123(a)(6).

   W. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.   Pursuant to the

Plan, the Debtors will be liquidated.   As such, no officers or directors will be selected with

respect to any of the Debtors.   The selection of the Liquidating Trustee was made in

consultation with the Creditors' Committee, and the Liquidating Trust will be overseen by the

Trust Advisory Board (the "***TAB***").   The TAB will consist of two members of the current

Creditors' Committee.   As such, the Plan satisfies section 1123(a)(7).

   X. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.   The other provisions of the

Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.   The failure to specifically address a

provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of

this Order.

   Y. <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (§</u>

<u>1123(b)(1))</u>.   As contemplated by section 1123(b)(1) of the Bankruptcy Code, (a) Class 1

(Priority Non-Tax Claims), Class 2 (Secured Tax Claims), and Class 3 (Other Secured Claims)

are not impaired by the Plan; and (b) Class 4(a) (Series C Noteholder Claims), Class 4(b) (FFL

Noteholder Claims), Class 5 (Junior Noteholder Claims), Class 6 (General Unsecured Claims),

Class 7 (Other Subordinated Claims), and Class 8 (Equity Interests) are impaired by the Plan.

Z.      Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).    In

accordance with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides

that pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts

and unexpired leases that exist between the Debtors and any person or entity shall be deemed

rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired

lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered

prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such

executory contract or unexpired lease has been filed and served prior to the Confirmation Date,

or notice of proposed assumption and assignment has been served pursuant to this Court's Order

Authorizing the Debtors' to Establish Procedures in Aid of the Assumption, Assignment and

Sale of Certain Public Service and Commercial Service Contracts    [Docket No. 942, 1114],

prior to the Confirmation Date, (iii) that is subject to deferred rejection in accordance with

Section 8.2, or (iv) that is specifically designated as a contract or lease to be assumed on

Schedules 8.01(A) (executory contracts) or 8.01(B) (unexpired leases), which schedules are

contained in the Plan Supplement.    The listing of a document on Schedules 8.01(A) or 8.01(B)

shall not constitute an admission by the Debtors that such document is an executory contract or

an unexpired lease or that the Debtors have any liability thereunder.    Accordingly, the Plan

satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

AA.      Payments Related to Assumption of Contracts and Leases (11 U.S.C. § 1123(d)).

Section 8.5 of the Plan provides for the satisfaction of default claims associated with each

executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with

section 365(b)(1) of the Bankruptcy Code.    All cure amounts will be determined in accordance

with the underlying agreements and applicable bankruptcy and nonbankruptcy law.   Thus, the

Plan complies with section 1123(d) of the Bankruptcy Code

      BB.   <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

Except as otherwise provided or permitted by orders of the Bankruptcy Court, the Debtors have

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation

Package and in tabulating the votes with respect to the Plan, thereby complying with section

1125 with respect to the Disclosure Statement and the Plan.

      CC.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3))</u>.   The Debtors are the

proponents for the Plan.   The Debtors have proposed the Plan (including all documents

necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby

complying with section 1129(a)(3) of the Bankruptcy Code.   The Debtors' good faith is evident

from the DeGroote Declaration, the record of these Chapter 11 Cases, including the record of the

hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other

proceedings held in connection with these Chapter 11 Cases.   The Plan is based upon extensive,

arms'-length negotiations between and among the Debtors, the Creditors' Committee, and other

parties in interest, and represents the culmination of months of intensive negotiations and

discussions among all parties in interest.   Moreover, the Plan accomplishes maximization of the

Debtors' estates and equitable distribution of the Debtors' assets by providing the means through

which the Debtors and the Liquidating Trust may effectuate distributions to their creditors.

Inasmuch as the Plan promotes the purposes of the Bankruptcy Code, the Plan and the related

documents have been filed in good faith and the Debtors have satisfied its obligations under

section 1129(a)(3).

DD.    Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)).    Pursuant

to the interim compensation procedures previously approved by this Court and established in

these Chapter 11 Cases pursuant to section 331 of the Bankruptcy Code, all payments made or to

be made by the Debtors for services or for costs and expenses in connection with these Chapter

11 Cases, or in connection with the Plan and incident to the chapter 11 case, have been approved

by, or are subject to the approval of, the Court as reasonable, thereby satisfying section

1129(a)(4) of the Bankruptcy Code.

EE.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).    The Debtors have

complied with section 1129(a)(5) of the Bankruptcy Code.    The Debtors are liquidating, and, as

such, will have no ongoing officers and directors.    To the extent he appointment of the

Liquidating Trustee implicates section 1129(a)(5), such appointment was made in conjunction

with and with the support of the Creditors' Committee and is in the best interest of all creditors.

The Debtors have included certain biographical and compensation information for the

Liquidating Trustee in the Liquidating Trust Agreement.    As such, the Plan satisfies section

1129(a)(5).

FF.    No Rate Changes (11 U.S.C. § 1129(a)(6)).    The Debtors are liquidating and

have no ongoing business subject to any such regulatory approval and accordingly, this section is

inapplicable to the Plan.

GG.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).    As demonstrated by the

DeGroote Declaration and the Johnston Declaration and the liquidation analysis contained in the

Disclosure Statement, which employed commonly accepted methodologies and reasonable

assumptions, with respect to each impaired class of Claims against or Equity Interests in the

Debtors, each holder of a Claim or Equity Interest in such Class has accepted the Plan or will

receive or retain pursuant to the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.   Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

HH.   Acceptance by Certain Classes (11 U.S.C. 1129(a)(8)).   Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), and Class 3 (Other Secured Claims) are unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan pursuant to section 1126(f).   Class 4(a) (Series C Noteholder Claims), Class 4(b) (FFL Noteholder Claims) and Class 6 (General Unsecured Claims), which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the Plan.   As such, section 1129(a)(8) is satisfied with respect to these Classes of Claims.   Class 5 (Junior Noteholder Claims) has voted to reject the Plan, and holders of Other Subordinated Claims in Class 7 and Equity Interests in Class 8 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, as neither will receive or retain any property on account of their interests in the Debtors.   Although, if, and to the extent, section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to Class 5, Class 7 and Class 8, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 5, Class 7 and Class 8.

II.   Treatment of Administrative Expense Claims, Secured Tax Claims, and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).   The treatment of Administrative Expense Claims, Secured Tax Claims and Priority Tax Claims pursuant to Sections 2.1, 2.3 and 4.2, respectively, of the Plan satisfies the requirements of sections 1129(a)(9)(A), (C) and (D) of the Bankruptcy Code.   The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Plan satisfies the requirements of sections 1129(a)(9)(B) of the Bankruptcy Code, as applicable.

JJ.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).   Class 4(a) (Series C

Noteholder Claims), Class 4(b) (FFL Noteholder Claims) and Class 6 (General Unsecured

Claims), each of which is impaired pursuant to the Plan and entitled to vote, voted to accept the

Plan by the requisite majorities, determined without including any acceptance of the Plan by any

insider.   Specifically, as set forth in the GCG Declaration, Class 4(a) and Class 4(b) voted 100%

in number and total dollar amount to accept the Plan, and Class 6 has voted 90.24% in number

and 93.06% in total dollar amount to accept the Plan, thereby satisfying the requirements of

section 1129(a)(10) of the Bankruptcy Code.

KK.    Feasibility (11 U.S.C. § 1129 (a)(11)).   As demonstrated in the Johnston

Declaration, the Debtors will have sufficient resources to timely meet all of their obligations

under the Plan, including post-Confirmation Date obligations to pay for the costs of

administering and fully consummating the Plan and closing the chapter 11 cases.   Accordingly,

the Plan is feasible and section 1129(a)(11) is satisfied.

LL.    Payment of Fees (11 U.S.C. § 1129(a)(12)).   As required pursuant to Section

13.7 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have

been or will be paid on the Effective Date, or as soon thereafter as is practicable without effect

given the proposed administrative substantive consolidation of the Debtors, thereby satisfying

the requirements of section 1129(a)(12) of the Bankruptcy Code.

MM.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   The Debtors have

no obligations with respect to retiree benefits.   Accordingly, section 1129(a)(13) of the

Bankruptcy Code is inapplicable in these Chapter 11 Cases.

NN.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).   The Debtors are

not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.    Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

OO.    <u>The Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.    The Debtors are not

individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to these

Chapter 11 Cases.

PP.    <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. §</u>

<u>1129(a)(16))</u>.    The Debtors are moneyed, business, or commercial corporations and/or

partnerships, as the case may be, and accordingly, section 1129(a)(16) of the Bankruptcy Code is

inapplicable in these Chapter 11 Cases.

QQ.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.    The

Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy

Code with respect to Class 5 (Junior Noteholder Claims), Class 7 (Other Subordinated Claims)

and Class 8 (Equity Interests) (collectively, the "***Rejecting Classes***").    Based on the evidence

proffered, adduced, and/or presented at the Confirmation Hearing and in the Declarations, the

Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting

Classes.    As required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, the Plan does

not "unfairly discriminate" because each Rejecting Class is of a different legal nature and

priority, and no Class of Claims or Equity Interests of similar legal rights is receiving different

treatment under the Plan.    The Plan is "fair and equitable" as to the Rejecting Classes because

the Plan maintains the relative priority among the classes.    Specifically, holders of Junior

Noteholder Claims in Class 5 meet the requirements of section 1129(b)(2)(B) because the Plan

enforces the contractual subordination, which subordinates the Junior Noteholder Claims to the

Series C Noteholder Claims (Class 4(a)) and the FFL Noteholder Claims (Class 4(b)).    As such,

the only interests junior in priority to Junior Noteholder Claims are Other Subordinated Claims

(Class 7) and Equity Interests (Class 8), neither of which will receive or retain any property

under the Plan.   Holders of (i) Other Subordinated Claims in Class 7 and (ii) Equity Interests in

Class 8 meet the requirements of section 1129(b)(2)(B) of the Bankruptcy Code because no

junior interest will receive or retain any property under the Plan on account of such junior

interests.   Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code

are met with respect to each of the Rejecting Classes.   As such, the Plan may be confirmed

notwithstanding the rejection by the Rejecting Classes.

       RR.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.   The Plan is the only plan filed in this case,

and accordingly, section 1129(c) of the Bankruptcy Code is satisfied in these Chapter 11 Cases.

       SS.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.   The principal purpose of

the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933, as such satisfying the requirements of section 1129(d) of the Bankruptcy

Code.

       TT.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>.   None of these Chapter 11 Cases are a

"small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section

1129(e) of the Bankruptcy Code is inapplicable.

       UU.    <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.   Based on the record before the

Court in these Chapter 11 Cases, the Debtors have solicited acceptances of the Plan in good faith

and in compliance with the applicable provisions of the Bankruptcy Code, including without

limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy

law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

VV.    <u>Satisfaction of Confirmation Requirements</u>.    Based upon the foregoing, the Plan

satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

WW.    <u>Implementation</u>.    All documents necessary to implement the Plan and all other

relevant and necessary documents have been negotiated in good faith and at arms'-length and

shall, upon completion of documentation and execution, be valid, binding, and enforceable

agreements and not be in conflict with any federal or state law.

XX.    <u>Good Faith</u>.    The Debtors, and all of their respective members, officers, directors,

agents, financial advisers, attorneys, employees, partners, affiliates, and representatives, (i) have

acted in good faith in negotiating, formulating and confirming the Plan and agreements,

compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting

in good faith in proceeding to (a) consummate the Plan and the agreements, compromises,

settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized

and directed or contemplated by this Order.

YY.    <u>Executory Contracts and Unexpired Leases</u>.    The Debtors have satisfied the

provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment

and rejection of executory contracts and unexpired leases pursuant to the Plan.

ZZ.    <u>Transfers by Debtors</u>.    All transfers of property of the Debtors' estate, including,

but not limited to transfers to the Liquidating Trust, shall be free and clear of all liens, charges,

Claims, encumbrances, and other interests, except as otherwise expressly provided in the Plan,

the Plan Documents, or this Order.

AAA.    <u>Transfer of LC Cash Collateral Account</u>.    The transfer of the LC Cash Collateral

Account from Wells Fargo Bank N.A. to Wells Fargo Foothill was appropriate and in the best

interests of Debtors, their creditors, and all parties in interest.

BBB.   Dissolution of the Debtors.   Notwithstanding anything herein to the contrary, as may be required for purposes of dissolution of the Debtors, the Debtors are authorized to issue a single share of stock, nominally in the name of the creditors of the Debtors, in order to take any action necessary thereof.

CCC.   Employees.   The Debtors are authorized, but not required, to assign the employment agreements of any existing employees of the Debtors who have not been terminated as of the Effective Date to the Liquidating Trust.

DDD.   Injunction, Exculpation, and Releases.   The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, releases, and exculpation set forth in Article X of the Plan.   Such provisions, in accordance with section 105(a) of the Bankruptcy Code, (i) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estate, (iii) are fair and reasonable and (iv) are in the best interests of the Debtors, their estates, and parties in interest.   Further, the exculpations and releases in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence or the other exceptions set forth therein.   Based upon the record of these Chapter 11 Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

EEE.   Compromise and Settlement.   Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and

settlement of all Claims or controversies resolved pursuant to the Plan.    All Plan distributions

made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and

no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or

reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral

trust agreement, shared collateral agreement, subordination agreement, other similar inter-

creditor arrangement or deficiency Claim.

     FFF.    <u>Liquidating Trust</u>.    Entry into the Liquidating Trust Agreement is in the best

interests of the Debtors, the Debtors' Estates and creditors and holders of Equity Interests.    The

establishment of the Liquidating Trust, the selection of John DeGroote to serve as the

Liquidating Trustee, the form of the proposed Liquidating Trust Agreement (as it may be

modified or amended), is appropriate and in the best interests of creditors and holders of Equity

Interests.    The Liquidating Trust Agreement shall, upon execution, be valid, binding and

enforceable in accordance with its terms.

     GGG.    <u>Preservation of Causes of Action</u>.    It is in the best interests of the Debtors and

their creditors and holders of Equity Interests that all Causes of Action, other than those

expressly released under the Plan, be retained by the Liquidating Trust as set forth in the Plan.

<b><u>CONCLUSIONS OF LAW</u></b>

     NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

     1.    <u>Confirmation</u>.    All requirements for confirmation of the Plan have been satisfied.

The Plan is CONFIRMED in its entirety pursuant to section 1129 of the Bankruptcy Code.    A

copy of the confirmed Plan is attached as <u>Exhibit "A"</u> to this Order.    The terms of the Plan and

the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

2.    Objections.    All parties have had a full and fair opportunity to litigate all issues

raised by the Objections, or which might have been raised, and the Objections have been fully

and fairly litigated.    All other Objections, responses, statements, and comments in opposition to

the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation

Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are

overruled for the reasons stated on the record.

3.    Solicitation and Notice.    Notice of the Confirmation Hearing complied with the

terms of the Disclosure Statement Order, was appropriate and satisfactory based on the

circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.    The solicitation of

votes on the Plan and the Solicitation Package complied with the solicitation procedures in the

Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of

these Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the

Bankruptcy Rules, and the Local Bankruptcy Rules.

4.    Plan Supplement.    The documents contained in the Plan Supplement, and any

amendments, modifications, and supplements thereto, and all documents and agreements

introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and

attachments thereto and documents referred to therein or contemplated thereby), as applicable,

are authorized and approved when they are finalized, executed and delivered.    Without further

order or authorization of this Court, the Debtors, the Liquidating Trust, and their successors are

authorized and empowered to make all modifications to all documents included as part of the

Plan Supplement that are consistent with the Plan.    Execution versions of the documents

comprising the Plan Supplement, with such changes therein and modifications thereto as shall be

agreed to by the Debtors and/or the Liquidating Trust, shall constitute legal, valid, binding, and

authorized obligations of the respective parties thereto, enforceable in accordance with their

terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security

interests purported to be created thereby.

5.      <u>Omission of Reference to Particular Plan Provisions</u>.    The failure to specifically

describe or include any particular provision of the Plan in this Order shall not diminish or impair

the effectiveness of such provision, it being the intent of this Court that the Plan be approved and

confirmed in its entirety.

6.      <u>Plan Classification Controlling</u>.    The classifications of Claims and Equity

Interests for purposes of the distributions to be made pursuant to the Plan shall be governed

solely by the terms of the Plan.    The classification set forth on the Ballots tendered or returned

by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the Ballots

solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in

no event shall be deemed to modify or otherwise affect, the actual classification of such Claims

and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the

Debtors, the Liquidating Trust, creditors, or interest holders for purposes other than voting on the

Plan.

7.      <u>Binding Effect</u>.    Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the

Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Equity

Interest in the Debtors and its respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is impaired under the Plan and whether or not such holder has

accepted the Plan, (ii) any and all non-debtor parties to assumed executory contracts and

unexpired leases with the Debtors, (iii) the Objectors, (iv) every other party in interest in these

Chapter 11 Cases, and (v) all parties receiving property under the Plan, and their respective heirs,

executors, administrators, successors, or assigns.

8.    Payment of Claims Related to Employees' Paid Time Off.    As set forth in

Section 2.4 of the Plan and in accordance with the Supplemental Order (A) Authorizing the

Debtors' Use of Cash Collateral by Consent and (B) Granting Related Relief [Docket No. 1123],

the Debtors or the Liquidating Trust, as the case may be, shall make payments of $4 million per

month for payment of claims of the Debtors' current or former employees on account of their

paid time off (the "***PTO Claims***") until all such claims are satisfied in full either through such

monthly payments or in a lump-sum payment prior to the termination of the Liquidating

Trust.    Allowed Claims of the Debtors' current or former employees on account of their paid

time off shall have the same priority as Administrative Expense Claims under the Plan.    Neither

the Debtors nor the Liquidating Trust shall make any distributions to holders of Allowed Claims

in Class 4(a), Class 4(b), Class 5 or Class 6 until such a time as all PTO Claims have been paid

in full.

9.    Merger, Dissolution, or Consolidation of Corporate Entities.    Pursuant to Section

5.2 of the Plan, on or as of the Effective Date or as soon as practicable thereafter and without the

need for any further action, the Debtors or the Liquidating Trustee, as applicable may: (i) cause

any or all of the Debtors to be merged into one or more of the Debtors, dissolved or otherwise

consolidated, (ii) cause the transfer of assets between or among the Debtors, (iii) to the extent

determined appropriate by the Debtors or the Liquidating Trustee, cause the reduction,

reinstatement or discharge of any Intercompany Claim and any claim held against any Non-

Debtor Subsidiary or Affiliate by any Debtor or by any other Non-Debtor Subsidiary or Affiliate or (iv) engage in any other transaction in furtherance of the Plan.

      10.    <u>Cancellation of Existing Securities and Agreements</u>.   Pursuant to Section 5.3 of the Plan, except (a) as otherwise expressly provided in the Plan, (b) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (c) for purposes of evidencing a right to distributions under the Plan, or (d) with respect to any Claim that is reinstated and rendered unimpaired under the Plan, on the Effective Date, the Secured Credit Facility, the FFL SPA, all Equity Interests in BearingPoint, Inc. ("***BE***") and other instruments evidencing any Claims against the Debtors or Equity Interests in the BE shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged. All Series A Notes, Series B Notes, and Series C Notes, and the Junior Noteholder Indenture and the Series C Noteholder Indenture, shall be deemed automatically cancelled and discharged on the Effective Date, provided, however, that the Series A Notes, Series B Notes, and Series C Notes, and the Junior Noteholder Indenture and the Series C Noteholder Indenture shall continue in effect solely for the purposes of (i) allowing the Series A Noteholders, Series B Noteholders, and Series C Noteholders to receive their distributions hereunder, (ii) allowing the applicable Indenture Trustee to make the distributions, if any, to be made on account of the Series A Notes, Series B Notes, and Series C Notes, (iii) permitting the applicable Indenture Trustee to assert their Indenture Trustee Charging Lien against such distributions, in a manner consistent with the provisions of the Plan, for payment of the Indenture Trustee Fees, and (iv) allowing the applicable Indenture Trustee and holders of FFL Noteholder Claims to enforce the applicable subordination provisions contained in the applicable indentures.   As soon as

practicable after the Effective Date, the Debtors with the cooperation of the Indenture Trustees

shall send a letter of transmittal to each holder of a Series A Note, Series B Note, and Series C

Note, advising such holder of the effectiveness of the Plan and providing instructions to such

holder to deliver to the Indenture Trustees such notes in exchange for the distributions to be

made pursuant to the Plan.    Delivery of any Series A Note, Series B Note, or Series C Note will

be effected, and risk of loss and title thereto shall pass, only upon delivery of such note to the

Indenture Trustees in accordance with the terms and conditions of such letter of transmittal, such

letter of transmittal to be in such form and have such other provisions as the Debtors (or the

Liquidating Trustee) may reasonably request. Each holder of any Series A Note, Series B Note,

and Series C Note shall surrender such note to the relevant Indenture Trustee.    No distribution

hereunder shall be made to or on behalf of any such holder unless and until such note is received

by the relevant Indenture Trustee, or the loss, theft or destruction of such note is established to

the satisfaction of the relevant Indenture Trustee, including requiring such holder (i) to submit a

lost instrument affidavit and an indemnity bond, and (ii) to hold the Debtors and the Indenture

Trustees harmless in respect of such note and any distributions made in respect thereof.    Upon

compliance with Section 5.3 of the Plan by a holder of any Series A Note, Series B Note, or

Series C Note, such holder shall, for all purposes under the Plan, be deemed to have surrendered

such note.    Any such holder that fails to surrender such note or satisfactorily explain its non-

availability to the relevant Indenture Trustee within eighteen months of the Effective Date shall

be deemed to have no further Claim against the Debtors or their property, the Liquidating Trust,

or the relevant Indenture Trustee in respect of such Claim and shall not participate in any

distribution hereunder, and the distribution that would otherwise have been made to such holder

shall be distributed by the relevant Indenture Trustee to all holders who have surrendered their

notes or satisfactorily explained their non-availability to the relevant Indenture Trustee within eighteen months of the Effective Date.

11.     Notwithstanding anything herein to the contrary, the Board of Directors of BE is hereby authorized to cancel and/or terminate, without any further act or action under any applicable agreement, law, regulation, order or rule, any equity interest in BE's Debtor affiliates or any other instruments evidencing any Claims against such Debtor affiliates.   Upon cancellation or termination, any obligations of the Debtors under any such cancelled or terminated instrument shall be discharged.   Further, the Board of Directors of BE authorized to issue a single equity interest in BE, and take any action in furtherance thereof, for the purpose of dissolving BE.

12.     <u>Substantive Consolidation for Plan Purposes Only</u>.   Entry of this Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited substantive consolidation of the Chapter 11 Cases for the purposes of voting, confirmation and distribution as provided in this Plan.   On and after the Effective Date: (i) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors except at the discretion of the Liquidating Trustee; (ii) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.   The limited substantive consolidation approved hereby and set forth in Section 5.4 of the Plan shall not be

construed as the substantive consolidation for any purpose than that described above.    A

creditors' vote to accept the Plan shall be deemed such creditors agreement to accept, as

consideration for any and all Allowed Claims against any and all Debtors, the treatment specified

in the Plan.

      13.   <u>Release of Funds Securing Issued Letters of Credit</u>.    Within five (5) days

following the receipt by Wells Fargo Bank, N.A., or Wells Fargo Foothill LLC, as applicable

(the "***LC Agent***") from the Debtors or the Liquidating Trustee, as applicable, of a written request

therefor, the LC Agent shall transfer funds equal in amount to 105% of the amount of any

terminated Letter of Credit from the LC Cash Collateral Account to an account designated by the

Debtors or the Liquidating Trustee, as applicable, in such written request; *provided* that (i) the

aggregate amount of Cash Collateral on deposit in the LC Cash Collateral Account shall remain

equal to or exceed 105% of the outstanding Letters of Credit after taking into account any such

termination and (ii) if the fifth day following the receipt by LC Agent of such written notice shall

be a day other than a Business Day, such transfer shall be made no later than the next succeeding

Business Day.    At such time as there are no outstanding Letters of Credit, LC Agent will

transfer all remaining funds (including, without limitation, interest income earned on the cash

collateral on deposit in the LC Cash Collateral Account, but exclusive of any fees owing to LC

Agent) to an account designated in writing by the Debtors or the Liquidating Trustee, as

applicable.    If, at any point, the funds in the LC Cash Collateral Account exceed 105% of the

amount of the outstanding Letters of Credit, plus any fees owing to LC Agent, LC Agent, upon

written request of the Debtors or the Liquidating Trustee, as applicable, shall transfer such excess

funds to an account designated in such written request by the Debtors or the Liquidating Trustee,

as applicable.

14.    <u>The Liquidating Trust</u>.    On or before the Effective Date, the Liquidating Trust

Agreement shall be executed by the Debtors and the Liquidating Trustee.    In addition, the

parties will take all other steps necessary to establish the Liquidating Trust and the Beneficial

Interests therein.    In the event of any conflict between the terms of Section 5.7 of the Plan and

the terms of the Liquidating Trust Agreement, the terms of the Plan shall govern.    The

Liquidating Trust Agreement may provide powers, duties and authorities in addition to those

explicitly stated in the Plan, but only to the extent that such powers, duties and authorities do not

affect the status of the Liquidating Trust as a liquidating trust for United States federal income

tax purposes.    The Liquidating Trust Assets shall be transferred to the Liquidating Trust in

accordance with the provisions of the Plan and the Liquidating Trust Agreement.    John

DeGroote is hereby appointed as Liquidating Trustee.

15.    <u>Vesting of Property in the Liquidating Trust</u>.    Except as otherwise provided in

the Plan and/or this Order, on the Effective Date, all property of the Debtors' Estates shall vest in

the Liquidating Trust, free and clear of all Claims, Interests, liens and encumbrances of any kind.

16.    <u>Nahigian Escrow</u>.    Notwithstanding anything in the Plan or herein, the funds that

have been escrowed in connection with the adversary proceeding filed by Nahigian Strategies,

LLC (*Nahigian Strategies, LLC v. BearingPoint, Inc*., Adv. Pro. 09-01390 REG), shall remain in

the escrow account where they are currently being held, subject however to a determination in

the adversary proceeding of Nahigian's entitlement to the funds, and any appeals thereof, or

agreement of Nahigian and the Debtors, with the consent of the Creditors' Committee or the

Liquidating Trustee, to the contrary.

17.    Notwithstanding anything in the Plan or herein, all of the Debtors' books, records

and other documents relating to the securities class action entitled *In re BearingPoint, Inc.*

*Securities Litigation*, Civil Action No. 1:05-cv-00454 (E.D. Va.) (the "***Securities Litigation***")

shall be maintained by the Debtors or the Liquidating Trustee, as applicable, in the same manner

as such are currently maintained, for a period of sixty (60) days following the effective date of

the Plan, or as otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and

the Lead Plaintiffs (as defined herein) or as otherwise ordered by the Bankruptcy Court; provided,

however, that all rights of the Lead Plaintiffs with respect to the disposition of the Debtors'

books, records and other documents relating to the Securities Litigation are preserved.

18.    <u>Insurance Policies</u>.    Notwithstanding anything contained in the Plan to the

contrary, the Debtors' insurance policies, and any agreements, documents or instruments relating

thereto, shall not be considered executory contracts subject to rejection pursuant to Section 8.1 of

the Plan.    To the extent any of the Debtors' insurance policies are deemed executory contracts,

they are hereby deemed assumed by the Debtors.

19.    <u>Distributions Under the Plan</u>.    All distributions pursuant to the Plan shall be

made in accordance with Article VI of the Plan; *provided*, *however*, that the Debtors shall not

make any distributions under $100.00 unless a written request therefor is made to the Liquidating

Trustee.

20.    <u>Treatment Is in Full Satisfaction</u>.    All distributions under the Plan shall be made

in accordance with the Plan and the Liquidating Trust Agreement.    The treatment set forth in the

Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that

each entity holding a Claim or Equity Interest may have in or against the Debtors, the Estates,

the Liquidating Trust or the Liquidating Trustee, or their respective property.    This treatment

supersedes and replaces any agreements or rights those entities may have in or against the

Debtors, the Estates, the Liquidating Trust and the Liquidating Trustee, or their respective

property.

21.   <u>Disputed Claims</u>.   The provisions of Article VII of the Plan, including, without

limitation, the provisions governing procedures for resolving Disputed Claims, are fair and

reasonable and are approved.

22.   <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (11</u>

<u>U.S.C. § 1123(b)(2))</u>.   Pursuant to Section 8.1 of the Plan, all executory contracts and unexpired

leases that exist between the Debtors and any person or entity shall be deemed rejected by the

Debtors as of the Effective Date, except for any executory contract or unexpired lease (i) that has

been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the

Effective Date and (ii) as to which a motion for approval of the assumption of such executory

contract or unexpired lease has been filed and served prior to the Confirmation Date, or notice of

proposed assumption and assignment has been served pursuant to this Court's Order Authorizing

the Debtors' to Establish Procedures in Aid of the Assumption, Assignment and Sale of Certain

Public Service and Commercial Service Contracts   [Docket No. 942, 1114], prior to the

Confirmation Date, (iii) that is subject to deferred rejection in accordance with Section 8.2 of the

Plan, or (iv) that is specifically designated as a contract or lease to be assumed on Schedules

8.01(A) (executory contracts) or 8.01(B) (unexpired leases), which schedules shall be contained

in the Plan Supplement.   The listing of a document on Schedules 8.01(A) or 8.01(B) of the Plan

shall not constitute an admission by the Debtors that such document is an executory contract or

an unexpired lease or that the Debtors have any liability thereunder.

23.   <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired</u>

<u>Leases</u>.   Entry of this Order shall, subject to and upon the occurrence of the Effective Date,

constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the

assumption, assignment, or rejection, as the case may be, of the executory contracts and

unexpired leases assumed, assigned, or rejected pursuant to Section 8.1 of the Plan.    The effect

of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any

other effect of these chapter 11 case, shall not be and are not a "change of control" and shall not

trigger any such or similar provision of any of the executory contracts and unexpired leases

assumed and assigned pursuant to the Plan.

24.    <u>Cure of Defaults</u>.    Except to the extent that different treatment has been agreed to

by the nondebtor party or parties to any executory contract or unexpired lease on Schedule

8.01(A) or 8.01(B) to be assumed pursuant to Section 8.1 of the Plan, the Debtors shall, pursuant

to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and

consistent with the requirements of section 365 of the Bankruptcy Code, within at least (20) days

prior to the later of (a) the hearing on the Debtors' motion for assumption or assumption and

assignment and (b) the Confirmation Hearing, file with the Bankruptcy Court and serve by first

class mail on each non-debtor party to such executory contracts or unexpired leases pursuant to

Section 8.1 of the Plan, a notice, which shall include, on Schedule 8.01(A) or 8.01(B) the cure

amount as to each executory contract or unexpired lease to be assumed. The parties to such

executory contracts or unexpired leases to be assumed or assumed and assigned by the Debtors

shall have until the objection deadline to the Plan to file and serve any objection to assumption or

the cure amounts listed by the Debtors.    If there are any objections filed, the Bankruptcy Court

shall hold a hearing on a date to be set by the Bankruptcy Court.    Notwithstanding Section 8.1

of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or

unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults

through the Effective Date.

25. _Oracle Contracts._   Notwithstanding anything to the contrary in the Plan, Plan

Supplement, or this Order, all of the Debtors' contracts with Oracle USA, Inc., or its affiliates or

subsidiaries (the "***Oracle Contracts***") that have not already been rejected shall be subject to

deferred rejection subject to Article VIII of the Plan until such time as all of the objections filed

by Oracle in this case (the "***Oracle Objections***") are withdrawn, overruled or otherwise resolved;

provided, however, that if any or all of the Oracle Objections are resolved in a manner that

permits the assignments of any or all of the Oracle Contracts, those contracts will no longer be

subject to deferred rejection and will be assigned to the Debtors' proposed assignee.   If the

Debtors and Oracle cannot resolve the Oracle Objections within 60 days from December 17,

2009, Oracle or the Debtors may request a hearing to address the Oracle Objections.   For

avoidance of doubt, notwithstanding anything to the contrary in this Order, the Oracle Objections

are specifically preserved.

26. _Deloitte APA Documents._   Notwithstanding any language in the Plan, this Order

or any related documents, any executory contract that was to be assigned to Deloitte LLP or its

designee pursuant to Asset Purchase Agreement, dated March 23, 2009, among Deloitte LLP,

BearingPoint, Inc., and other signatories thereto and the documents, agreements, or undertakings

entered into in contemplation thereof, as contemplated thereby, or otherwise relating thereto (as

such may have been amended, restated, supplemented, or otherwise modified, the "***Deloitte APA***

***Documents***") that is subject to the Anti-Assignment Act, 41 U.S.C. § 15 et seq., and for which

the novation and administrative modification process has not been completed as of the Effective

Date shall (i) not be rejected pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code

or (ii) transferred to the Liquidating Trust pursuant to Section 5.7(c) and 5.7(d)(i), provided,

however, in no event will BearingPoint, Inc. be prevented from taking any action, including any

action described above, that in the reasonable judgment of the Liquidating Trustee, is necessary

or desirable for the orderly dissolution of BearingPoint Inc. and its subsidiaries on or after July 1,

2010.

27.    Inclusiveness.    Unless otherwise specified on Schedules 8.01(A), 8.01(B) or 8.02

of the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein

shall include any and all modifications, amendments, supplements, restatements or other

agreements made directly or indirectly by any agreement, instrument or other document that in

any manner affects such executory contract or unexpired lease, without regard to whether such

agreement, instrument or other document is listed on Schedules 8.01(A), 8.01(B) or 8.02.

28.    Bar Date for Filing Proofs of Claim Relating to Executory Contacts and

Unexpired Leases Rejected Pursuant to the Plan.    If the rejection of an executory contract or

unexpired lease by the Debtors under the Plan results in damages to the other party or parties to

such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof

of claim, shall be forever barred and shall not be enforceable against the Debtors, or its

properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy

Court and served upon the attorneys for the Debtors or on and after the Effective Date, the

Liquidating Trustee, no later than thirty (30) days after the later of (a) notice of entry of an order

approving the rejection of such executory contract or unexpired lease, (b) notice of entry of this

Confirmation Order, (c) notice of an amendment to Schedules 8.01(A) or (B) of the Plan

Supplement (solely with respect to the party directly affected by such modification), or (d) notice

of the Debtors' election to reject under Section 8.1 of the Plan.

29.    <u>Post-Effective Date Assets</u>.    Pursuant to Section 10.1 of the Plan, on and after the

Effective Date, the Liquidating Trustee may dispose of the assets of the Liquidating Trust free of

any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and

the Liquidating Trust Agreement.

30.    <u>Injunction</u>.    Pursuant to Section 10.4 of the Plan, except as otherwise expressly

provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may

hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after

the Effective Date, from (a) commencing or continuing in any manner any action or other

proceeding of any kind on any such Claim or Equity Interest against any of the Debtors or the

Liquidating Trust, (b) the enforcement, attachment, collection or recovery by any manner or

means of any judgment, award, decree or order against any Debtor or the Liquidating Trust with

respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance

of any kind against any Debtor or the Liquidating Trust or against the property or interests in

property of any Debtor or the Liquidating Trust with respect to such Claim or Equity Interest, (d)

asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to

any Debtor or the Liquidating Trust or against the property or interests in property of any Debtor

or the Liquidating Trust with respect to such Claim or Equity Interest, except as contemplated or

allowed by the Plan, (e) acting or proceeding in any manner in any place whatsoever, that does

not conform to or comply with the provisions of the Plan, (f) commencing, continuing, or

asserting in any manner any action or other proceeding of any kind with respect to any claims

which are extinguished or released pursuant to the Plan, and (g) taking any actions to interfere

with the implementation or consummation of the Plan.

31.    <u>Terms of Injunction</u>.    Unless otherwise provided in this Order, all injunctions or

stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the

Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in

full force and effect until the Effective Date, provided, however, that no such injunction or stay

shall preclude enforcement of parties' rights under the Plan and the related documents.

32.    <u>Lead Plaintiffs' Right to Proceed Against Available Insurance</u>.    Nothing in the

Plan or in any Order confirming the Plan shall preclude the lead plaintiffs (the "***Lead Plaintiffs***")

in the Securities Litigation and any class (the "***Class***") certified therein from pursuing their

claims against the Debtors solely to the extent of available insurance coverage and proceeds.

The claims of the Lead Plaintiffs and the Class against the Debtors, solely to the extent of

available insurance, are preserved and not discharged by the Plan.

33.    <u>Exculpation</u>.    Notwithstanding anything herein to the contrary, as of the

Effective Date none of the Debtors, the Liquidating Trust, the Liquidating Trustee, the Indenture

Trustees (solely in their capacity as such), the members of the Creditors' Committee (solely in

their capacity as such), and their respective officers, directors, employees, managing directors,

accountants, financial advisors, investment bankers, agents, restructuring advisors, and attorneys,

and each of their respective agents and representatives (but solely in their capacities as such)

shall have or incur any liability for any Claim, cause of action or other assertion of liability for

any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases,

the formulation, dissemination, confirmation, consummation or administration of the Plan,

property to be distributed under the Plan or any other act or omission in connection with the

Chapter 11 Cases, the Plan (or any prior proposed version of the Plan), the Disclosure Statement

or any contract, instrument, document or other agreement related thereto; and such claims shall

be deemed expressly waived and forever relinquished as of the Effective Date; *provided*,

*however*, that the foregoing shall not affect the liability of any Person that otherwise would result

from any such act or omission to the extent such act or omission is determined by a Final Order

to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct

of any such person or entity.    Provided, further, (i) that nothing herein shall limit the liability of

the Debtors' professionals to their clients contrary to the requirements of Rule 1.8(h)(1) of the

New York Rules of Professional Conduct.    N.Y. Comp. Code R. & Regs., Tit. 22, Sect. 1200.8

and (ii) that nothing in the Plan or this Order shall exculpate or release any party from any

liability to the United States Government or any of its agencies, including any liabilities arising

under the Internal Revenue Code, the environmental laws or any criminal laws of the United

States, or otherwise enjoin or impair the ability of the United States from bringing any claim, suit,

action or other proceedings against any party regarding such liability.

34.    <u>Limited Releases</u>.

a.    Effective as of the date hereof, but subject to the occurrence of the
Effective Date and the provisions of this Order, and in consideration of the
services and other consideration provided by the present and former
directors, officers, members, employees, managing directors, affiliates,
agents, financial advisors, restructuring advisors, attorneys and
representatives of or to the Debtors, the Secured Lenders, the Indenture
Trustees, and the members of the Creditors' Committee, who acted in such
capacities after the Commencement Date (but not limited to such
postpetition actions), John DeGroote, and each present or former director
of any of the Debtors' nondebtor subsidiaries organized or incorporated
outside of the United States of America; (x) the Debtors; (y) the Secured
Lenders; and (z) each holder of a Claim or Equity Interest regardless of
whether such holder abstained from voting or voted to accept or voted to
reject the Plan, shall be deemed to release unconditionally and forever (a)
John DeGroote and each present or former director of any of the Debtors'
nondebtor subsidiaries organized or incorporated outside of the United
States of America from any and all Claims or causes of action whatsoever
through the Effective Date; provided, however, that the foregoing shall not
operate as a waiver of or release from any causes of action arising out of
the willful misconduct, gross negligence, intentional fraud, or criminal

conduct of any such person or entity; and (b) each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors, the Secured Lenders (solely in that capacity), the Indenture Trustees (solely in that capacity), and the members of the Creditors' Committee (solely in that capacity) who acted in such capacity after the Commencement Date, and each of their respective officers, directors, agents, advisors, and professionals (but, in each case, solely in their capacities as such) from any and all Claims or causes of action whatsoever accruing on or after the Commencement Date in connection with, related to, or arising out of the Debtors' restructuring or reorganization efforts, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; provided, however that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, gross negligence, intentional fraud, or criminal conduct of any such person or entity.   Provided, further, that nothing herein shall limit the liability of the Debtors' professionals to their clients contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct.   N.Y. Comp. Code R. & Regs., Tit. 22, Sect. 1200.8.

b.      Effective as of the date hereof, but subject to the occurrence of the Effective Date, and in consideration of the services of the present and former directors, officers, members, employees, managing directors, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Debtors, the Secured Lenders, the Indenture Trustees, and the members of the Creditors' Committee, who acted in such capacities after the Commencement Date (but not limited to such postpetition actions), each holder of a Claim that voted to accept the Plan (or is deemed to have accepted the Plan) shall be deemed to release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors, the Secured Lenders (solely in that capacity), the Indenture Trustees (solely in that capacity), and the members of the Creditors' Committee (solely in that capacity) who acted in such capacity after the Commencement Date, and each of their respective officers, directors, agents, advisors, and professionals (but, in each case, solely in their capacities as such) from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of the Debtors' restructuring or reorganization efforts on or after January 18, 2008; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, gross negligence, intentional fraud, or criminal conduct of any such person or entity. Provided, further, that nothing herein shall limit the liability of the Debtors' professionals to their clients contrary to the requirements of Rule

1.8(h)(1) of the New York Rules of Professional Conduct.   N.Y. Comp. Code R. & Regs., Tit. 22, Sect. 1200.8.

c.    Notwithstanding anything contained in the Plan, this Court (and the United States District Court for the Southern District of New York) shall retain exclusive jurisdiction to adjudicate any and all claims or causes or action brought by (a) the Debtors (or the Liquidating Trustee, as applicable) and the Secured Lenders or (b) each holder of a Claim or Equity Interest against any party granted a limited release in subparagraphs 34(a) and 34(b), above.

35.    Except as provided in Section 10.8(a) of the Plan, nothing contained in any other section of the Plan shall be deemed a release waiver or discharge of any claims, demands, debts, rights, causes of action or liabilities held by the estates or the Liquidating Trust (pursuant to Section 5.7 of the Plan) against any current or former directors or officers of the Debtors for fraud, negligence, corporate waste, abuse, mismanagement, or for breach of fiduciary or other duties under Delaware, New York, or other applicable state or federal law, including, but not limited to, any act or failure to act in connection with: (i) from January 2007 through and including January 18, 2008, a potential transaction for the merger, sale or acquisition of the BearingPoint or any component part thereof; (ii) the merger and/or acquisition of additional foreign and/or domestic subsidiaries from December 1999 through and including January 18, 2008; (iii) the operations of BearingPoint, including, without limitation, accounting, internal controls, and financial reporting from January 2000 through and including January 18, 2008; and (iv) the Debtors' secured debt financings, including, without limitation, credit facilities entered into in 2004, 2005 and 2007.

36.    <u>Non-Debtor Defendants in Securities Litigation</u>.   Nothing in the Plan or in any Order confirming the Plan shall affect, release, enjoin or impact in any way the prosecution of the claims asserted against any non-Debtor, including the non-Debtor defendants in the Securities Litigation.

37.    <u>Causes of Action/Avoidance Actions/Objections</u>.    Other than any releases

granted herein and by this Order or by Final Order of the Bankruptcy Court, as applicable, from

and after the Effective Date, the Liquidating Trust shall have the right to prosecute any and all

Causes of Action including, but not limited to, any and all avoidance or equitable subordination

actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542

through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in

Possession.

38.    <u>Conditions to Effective Date</u>.    The Plan shall not become effective unless and

until the conditions set forth in Section 9.1 of the Plan are satisfied or waived pursuant to Section

9.2 of the Plan.

39.    <u>Retention of Jurisdiction</u>.    Pursuant to Article XI of the Plan, the Bankruptcy

Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy

Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is

legally permissible.

40.    <u>Effectuating Documents and Further Transactions</u>.    On or before the Effective

Date, and without the need for any further order or authority, the Debtors shall file with the

Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in

form and substance satisfactory to them as may be necessary or appropriate to effectuate and

further evidence the terms and conditions of the Plan.    As of the Effective Date, the Liquidating

Trust is authorized to execute, deliver, file, or record such contracts, instruments, releases,

indentures and other agreements or documents and take such actions as may be necessary or

appropriate to effectuate and further evidence the terms and conditions of the Plan and any

securities issued pursuant to the Plan.

41.    <u>Corporate Action</u>.    On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the managers or directors of one or more of the Debtors, as the case may be, shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated or established, without any requirement of further action by the managers or directors of the Debtors.

42.    <u>Settlement of Claims</u>.    Pursuant to Section 5.1 of the Plan and Bankruptcy Rule 9019, in consideration for the classification, distribution, resolution of intercompany claims, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.    All Plan distributions made to creditors holding Allowed Claims in any class are intended to be and shall be final, and, subject to the provisions of Article IV, no Plan distribution to the holder of a Claim in one class shall be subject to being shared with or reallocated to the holders of any Claim in another class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency claim.

43.    <u>Withholding and Reporting Requirements</u>.    Pursuant to Section 12.2 of the Plan, in connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.    Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and

exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such

holder by any governmental unit, including income, withholding and other tax obligations, on

account of such distribution.   Any party issuing any instrument or making any distribution under

the Plan has the right, but not the obligation, to not make a distribution until such holder has

made arrangements satisfactory to such issuing or disbursing party for payment of any such tax

obligations.

      44.    <u>Modification</u>.    Pursuant to Section 12.4 of the Plan, alterations, amendments or

modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the

Confirmation Date, provided that (a) the Debtors have provided the Creditors' Committee with

notice of such alterations, amendments or modifications and the Creditors' Committee has

consented; (b) the Plan, as altered, amended or modified satisfies the conditions of sections 1122

and 1123 of the Bankruptcy Code; and (c) the Debtors shall have complied with section 1125 of

the Bankruptcy Code.   The Plan may be altered, amended or modified at any time after the

Confirmation Date and before substantial consummation, provided that (x) the Debtors have

provided the Creditors' Committee with notice of such alterations, amendments or modifications

and the Creditors' Committee has consented; (y) the Plan, as altered, amended or modified,

satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code; and (z) the

Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or

modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such

alterations, amendments or modifications.   A holder of a Claim that has accepted the Plan shall

be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration,

amendment or modification does not materially and adversely change the treatment of the Claim

of such holder.   Prior to the Effective Date, the Debtors may make appropriate technical

adjustments and modifications to the Plan, subject to the consent of the Creditors' Committee,

without further order or approval of the Bankruptcy Court, provided that such technical

adjustments and modifications do not adversely affect in a material way the treatment of holders

of Claims or Equity Interests and the Creditors' Committee has consented to such alteration or

modification.   For the avoidance of doubt, the foregoing shall not constitute a waiver of any

rights that any party may have with respect to modification of the Plan under section 1127 of the

Bankruptcy Code.

45.    <u>Payment of Statutory Fees</u>.   All fees payable under section 1930 of chapter 123

of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation

Hearing, shall be paid on the Effective Date.

46.    <u>Post-Effective Date Fees and Expenses</u>.   From and after the Confirmation Date,

the Liquidating Trust, shall, in the ordinary course of business and without the necessity for any

approval by the Bankruptcy Court, be authorized to pay the reasonable fees and expenses of

professional persons thereafter incurred by them.

47.    <u>Indenture Trustee as Claim Holder</u>.   Consistent with Bankruptcy Rule 3003(c),

the Liquidating Trustee shall recognize a proof of Claim filed by the Series C Noteholder

Indenture Trustee or the Junior Noteholder Indenture Trustee in respect of the Series C

Noteholder Claims or the Junior Noteholder Claims, as applicable.   Accordingly, any Claim,

proof of which is filed by the registered or beneficial older of such Claim, may be disallowed as

duplicative of the Claim of the applicable Indenture Trustee, without need for any further action

or Bankruptcy Court Order.

48.    <u>Dissolution of the Creditors' Committee</u>.   On the Effective Date, the Creditors'

Committee appointed in the Chapter 11 Cases shall be dissolved and the members thereof shall

09-10691-mg   Doc 1550   Filed 12/22/09   Entered 12/22/09 10:17:29   Main Document
Pg 42 of 46

be released and discharged of and from all further authority, duties, responsibilities and

obligations related to and arising from and in connection with the Chapter 11 Cases, and the

retention or employment of such Creditors' Committee's attorneys, accountants and other agents,

if any, shall terminate other than for purposes of (i) filing and prosecuting applications for final

allowances of compensation for professional services rendered and reimbursement of expenses

incurred in connection therewith, and (ii) reviewing and objecting to the applications of other

parties for the allowance of compensation for professional services rendered and reimbursement

of expenses incurred in connection therewith.

49.     <u>Exemption from Transfer Taxes</u>.   Pursuant to section 1146(a) of the Bankruptcy

Code, the issuance, transfer or exchange of notes or equity securities under or in connection with

the Plan, the creation of any mortgage, deed of trust or other security interest, the making or

assignment of any lease or sublease or the making or delivery of any deed or other instrument of

transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp,

real estate transfer, mortgage recording or other similar tax.

50.     <u>Professional Compensation and Reimbursement</u>.   All entities seeking awards by

the Bankruptcy Court of compensation for services rendered or reimbursement of expenses

incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2),

503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that

is sixty (60) days after the Effective Date their respective applications for final allowances of

compensation for professional services rendered and reimbursement of expenses incurred and (b)

be paid in full by the Liquidating Trustee, in Cash, in such amounts as are Allowed by the

Bankruptcy Court in accordance with the order relating to or allowing any such Administrative

Expense Claim or upon such other terms as may be mutually agreed upon between the holder of

US_ACTIVE:\43248342\17\22638.0013                        42

such Administrative Expense Claim and the Debtors or, if on or after the Effective Date, the

Liquidating Trustee.   The Liquidating Trust is authorized to pay compensation for services

rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary

course of business and without the need for Bankruptcy Court approval.

51.    <u>Notice of Entry of Confirmation Order</u>.   Pursuant to Bankruptcy Rules

2002(f)(7), 2002(k) and 3020(c), the Debtors or the Liquidating Trustee, as the case may be,

shall file and serve notice of entry of this Order in substantially the form annexed hereto as

Exhibit "B" (the "***Notice of Confirmation Order***") on all creditors and interest holders, the

United States Trustee for the Southern District of New York, the attorneys for the Creditors'

Committee, and other parties in interest, by causing the Notice of Confirmation Order to be

delivered to such parties by first-Class mail, postage prepaid, within 10 business days after entry

of this Order.   The Notice of Confirmation Order shall also be posted on the website of the

Debtors' Court-appointed voting and tabulation agent, GCG, at: http://bearingpointinfo.com.

Such notice is adequate under the particular circumstances and no other or further notice is

necessary.   The form of Notice of Confirmation Order substantially in the form annexed hereto

as Exhibit B is approved.

52.    <u>Notice of the Effective Date</u>.   As soon as practicable after the occurrence of the

Effective Date, the Liquidating Trustee shall file notice of the occurrence of the Effective Date

and shall serve a copy of same on all parties entitled to receive notice pursuant to these Chapter

11 Cases.

53.    <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to

be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

54.     <u>Governing Law</u>.   Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of laws.

55.     <u>Stay of Confirmation</u>.   The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived.   This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

56.     <u>Conflicts Between Order and Plan</u>.   The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.   The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

57.    <u>Final Order</u>.    This Order is a final order and the period in which an appeal must

be filed shall commence upon the entry hereof.

Dated: New York, New York
   December <u>**22**</u>, 2009


       <u> ***s/ Robert E. Gerber***     </u>
       UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**The Plan**