UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
─────────────────────────────────────
                                    )
In re:                              )    Chapter 11
                                    )
BearingPoint, Inc., et al,          )    Case No. 09-10691 (REG)
                                    )
                    Debtors.        )    Jointly Administered
─────────────────────────────────────)
```

## BENCH DECISION ON LIQUIDATING TRUSTEE'S OBJECTION TO CLAIM NOS. 1019 AND 1076 OF THE MINISTRY OF FINANCE FOR THE REPUBLIC OF INDONESIA

APPEARANCES:

McKOOL SMITH P.C.
Counsel to the Liquidating Trustee
One Bryant Park, 47th Floor
New York, NY 10036
By:  Peter S. Goodman, Esq.

600 Travis, Suite 7000
Houston, TX 77002
By:  Basil A. Umari, Esq. (argued)
     Blake H. Bailey, Esq.

MINISTRY OF FINANCE OF THE REPUBLIC OF INDONESIA
Counsel to the Ministry of Finance of the Republic of Indonesia
Gedung Djuanda I, 15th Floor
J1. Wahidin No. 1
Jakarta 10710
By:  Hana Kartika (argued)
     Indra Surya
     Astera Primanto Bhakti
     R. Fendy Dharma Saputa
     Budi Setiabudi.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the chapter 11 cases of the reorganized Debtor BearingPoint, and its affiliates, Liquidating Trustee John DeGroote moves to disallow two claims filed by the Republic of Indonesia, in the amounts of approximately $389,000 and $3.5 million, respectively. While the Trustee reserves his rights to object on the merits of the claims, he bases his objection now on a separate doctrine under U.S. law, commonly referred to as the "Revenue Rule."

Because I determine that the Revenue Rule is firmly entrenched in the law of the Second Circuit, which, of course, is binding upon me as a judge in that Circuit, and because it does indeed apply as the Trustee contends that it does, the two claims must be disallowed.

The following are my Findings of Fact and Conclusions of Law in connection with this determination.

Findings of Fact

As facts I find that the Republic of Indonesia filed two proofs of claim in this Court, to recover on taxes allegedly owed by BearingPoint subsidiary PT Barents Indonesia, a nondebtor, to the Republic of Indonesia. I make no finding as to whether or not those taxes are actually owing by PT Barents, but assume for the purposes of this analysis that they are.

The Republic of Indonesia asserts (and once more, for the purposes of this analysis I assume its assertions to be true) that under Indonesia law, the controlling shareholder of a corporate subsidiary present in Indonesia is responsible for the

subsidiary's taxes if they're not paid by the subsidiary in Indonesia. BearingPoint LLC owns 99% of the stock of its subsidiary PT Barents Indonesia, which plainly makes it a majority shareholder. Though I don't think it matters, I also find that another Debtor in the chapter 11 cases before me, BearingPoint affiliate Peloton Holdings LLC, holds the remaining 1%.

Both sides agree that what Indonesia is trying to recover are taxes. They appear to be wholly or principally a combination of VAT and/or Sales Taxes, and Income Tax, along with interest on the unpaid sums.

## Conclusions of Law

I discuss the law in greater detail than I otherwise might, so that the Republic of Indonesia can be comfortable that this is not an arbitrary decision.

I assume, without deciding, that at least BearingPoint LLC, and possibly BearingPoint Inc. and Peloton as well, are liable, under Indonesian law, for the taxes that PT Barents failed to pay. But the issue, from the perspective of a United States Bankruptcy Judge sitting in the Second Circuit, is whether under United States law, and "Revenue Rule" in particular, the Indonesian Government can pursue its claim in the United States courts.

The Revenue Rule is a longstanding common law doctrine providing that courts of one sovereign will not enforce final tax judgments or unadjudicated tax claims of other sovereigns. It has been defended on several grounds, including respect for sovereignty, concern for judicial role and competence, and separation of powers. *See Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc*., 268 F.3d 103, 109 (2d Cir. 2001).

By reason of the *RJ Reynolds* decision, the Revenue Rule is, of course, fully binding on me as a judge of a lower court in the Second Circuit. But to the extent it matters, the rule has been laid down by the United States Supreme Court. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 413-14 (1964) (noting the view that many courts in the United States have adhered to the principle that "a court need not give effect to the penal or revenue laws of foreign countries"); *Oklahoma v. Gulf, Colo. & Santa Fe Ry. Co.,* 220 U.S. 290, 299 (1911) ("The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue or other municipal laws, and to all judgments for such penalties." (quoting *State of Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 291 (1888))); *See also United States v. First Nat'l City Bank,* 321 F.2d 14, 23-24 (2d Cir. 1963) ("It has long been a general rule that one sovereignty may not maintain an action in the courts of another state for the collection of a tax claim."), *rev'd on other grounds,* 379 U.S. 378 (1965).

The *RJ Reynolds* decision speaks of the historic and jurisprudential underpinnings of the Revenue Rule, but since the Second Circuit's decision in that case would be binding on me no matter how well or poorly its rationale were articulated, I needn't repeat that discussion here. Similarly, while if there were a dispute as to the issue, the U.S. court would have to examine whether the substance of the claim is, either directly or indirectly, one for tax revenues, *see RJ Reynolds*, 268 F.3d at 130, I needn't do so here, as the fact that we here have claims for taxes is undisputed.

In its response, the Republic of Indonesia does not challenge the existence of the Revenue Rule, or its application. Instead, in paragraphs 9, 10 and 12 of its response in particular, the Republic of Indonesia makes eloquent pleas for fairness. But while I understand the Republic of Indonesia's frustration with the impairment of its revenue collection, and I always try to be fair, I nevertheless am a U.S. judge sworn to apply, as best I can, U.S. common law as higher courts have established it. The Republic of Indonesia's arguments insufficiently recognize that under U.S. law, bankruptcy judges are not free to decide issues based on personal views of fairness. *See e.g.*, *In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 & n. 4 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process . . . We have repeatedly emphasized the importance of the bankruptcy court's equitable power." But "[t]his power is not unlimited. Thus, a bankruptcy court may not exercise this power in contravention of provisions of the Code."); *In re Joint Eastern & Southern District Asbestos Litig.,* 982 F.2d 721, 751 (2d Cir. 1992) ("[A] reorganization is assuredly governed by equitable considerations, but that guiding principle is not a license to courts to invent remedies that overstep statutory limitations."); *See also In re Aquatic Dev. Group, Inc.,* 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[T]his Court has repeatedly cautioned that 105(a) 'does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." ' " (quoting *In re Dairy Mart Convenience Store, Inc.*, 351 F.3d 86 (2d Cir 2003))), and my 2009 decision in *General Motors*, *In re General Motors Corp.*, 407 B.R. 463, 517 & n. 136 (Bankr. S.D.N.Y. 2009), discussing the authority in this area.

Rather, bankruptcy judges are constrained by statutory provisions or, as here, precedent that is binding upon them by higher courts.

I wish to emphasize that this has nothing to do with the fact that the foreign taxing authority here happens to be the Republic of Indonesia, or the specifics of Indonesia's tax regime. It is a rule of general application, which in *RJ Reynolds*, by way of example, was applied against the Government of Canada as to taxes not particularly different from those that many states and municipalities in this country impose.

BearingPoint is to settle an order in accordance with this decision. The time to appeal from this decision will run from the time of the resulting order, and not from the date of this decision.

Dated: New York, New York       *s/Robert E. Gerber*
       November 5, 2010            United States Bankruptcy Judge