**BINGHAM McCUTCHEN LLP**
Jeffrey S. Sabin
399 Park Avenue
New York, NY 10022-4689
Telephone: (212) 705-7000

Sabin Willett (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000

-and-

**MCKOOL SMITH P.C.**
Peter S. Goodman
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400

Lew LeClair (*pro hac pending*)
Robert Manley (*pro hac pending*)
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

Basil A. Umari (*pro hac vice*)
600 Travis, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300

*Counsel for John DeGroote Services, LLC
as Liquidating Trustee to the
BearingPoint, Inc. Liquidating Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BearingPoint, Inc., <u>et al.</u>, | ) | Case No. 09-10691 (REG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

----------------------------------------------------------------

**MOTION OF LIQUIDATING TRUSTEE FOR LIMITED RELIEF FROM ARTICLE XI
OF DEBTORS' MODIFIED SECOND AMENDED JOINT PLAN AND SECTIONS 34(C)
AND 39 OF CONFIRMATION ORDER AS TO F. EDWIN HARBACH**

A/73574910.2

# TABLE OF CONTENTS

Page

I. RELIEF REQUESTED .................................................................................................. 1
II. JURISDICTION AND VENUE ..................................................................................... 2
III. BACKGROUND ............................................................................................................ 2
IV. BASIS FOR RELIEF REQUESTED ........................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adelphia Communications Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...........4, 12

*Beal Bank S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376 (Bankr. E.D. Pa. 1996) ..........11, 13

*Brown v. Brewer,* No. CV 06-3731-GHK, slip op., 2010 WL 2472182 (C.D. Cal. June 17, 2010) .................................................................................................8, 10

*In re Casse*, 198 F.3d 327 (2d Cir. 1999) ......................................................................11

*In re CBI Holding Co.*, 311 B.R. 350 (S.D.N.Y. 2004) *aff'd in part, rev'd in part on other grounds*, 529 F.3d 432 (2d Cir. 2008) ...........................................................10

*In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49 (Bankr. S.D.N.Y. 1988)............11

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ..................................................................................................................11

*In re International Institute of The Americas, Inc.*, 63 B.R. 294 (Bankr. D. P. R. 1986) ....................................................................................................................11

*In re Lion Capital Group*, 44 B.R. 690 (Bankr. S.D.N.Y. 1984) .......................................11

*In re Marshall*, 600 F.3d 1037 (9th Cir. 2010), *cert. granted sub nom. Stern v. Marshall*, 131 S. Ct. 63 (Sept. 28, 2010) ................................................................9, 10

*In re Pacor, Inc.*, 743 F.2d 984 (3d Cir. 1984) ................................................................10

*In re Reserve Production, Inc.*, 232 B.R. 899 (Bankr. E.D. Tex. 1999).......................12, 13

## STATE CASES

*Gantler v. Stephens*, 965 A.2d 695 (Del. 2009).................................................................8

## FEDERAL STATUTES

11 U.S.C. § 105(a) ................................................................................1, 2, 11, 12

11 U.S.C. § 157..................................................................................................................2

28 U.S.C. § 157(b)(2) ........................................................................................................2

28 U.S.C. § 157(c) ...................................................................................................................9

28 U.S.C. § 1334 ....................................................................................................................2

28 U.S.C. § 1334(b) ..............................................................................................................12

28 U.S.C. § 1334(c)(1) ..........................................................................................................13

28 U.S.C. § 1408 ....................................................................................................................2

28 U.S.C. § 1409 ....................................................................................................................2

## COURT RULES

Fed. R. Civ. P. 41 .................................................................................................................14

Fed. R. Civ. P. 60(b)(6) ....................................................................................................1, 14

Fed. R. Bankr. P. 9024 ..................................................................................................1, 2, 14

Fed. R. Bankr. P. 7041 .........................................................................................................14

Pursuant to section 105(a) of the Bankruptcy Code, or alternatively through Federal Rule 9024 of Bankruptcy Procedure (incorporating Fed. R. Civ. P. 60(b)(6)), John DeGroote Services, LLC, as liquidating trustee (the "**Trustee**") of the BearingPoint, Inc. Liquidating Trust (the "**Liquidating Trust**"), submits this motion (the "**Motion**") for entry of an order granting it limited relief from Article XI, ¶ p of the Debtors' Modified Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code (the "**Plan**") and paragraphs 34(c) and 39 of this Court's Confirmation Order, entered December 22, 2009 (the "**Confirmation Order**"), and granting the Trustee leave to file suit in another available jurisdiction. In support of this Motion, the Trustee relies on the declaration of Mr. Jeffrey S. Sabin ("**Sabin Decl."**), and respectfully states as follows:

I. **RELIEF REQUESTED**

1. The Trustee has retained the firms of McKool Smith P.C. and Whiteford, Taylor & Preston L.L.P to pursue claims against a number of intended defendants. A draft of the complaint is attached hereto as **Exhibit A**. By this Motion, the Trustee seeks limited relief from Article XI, ¶ p of the Plan and paragraphs 34(c) and 39 of the Confirmation Order, insofar as the provisions would preclude the Trustee from prosecuting suit against BearingPoint's former Chief Executive Officer, Mr. F. Edwin Harbach, in a different court.[1] By this motion, the Trustee seeks leave to file the contemplated action against BearingPoint's former Chief Executive Officer, Mr. F. Edwin Harbach, in any jurisdiction in which the Trustee concludes it prudent to do so, including, without limitation, before the circuit courts of the Commonwealth of Virginia,

---

[1] The Trustee does not *by this Motion* seek relief in connection with any putative defendant other than BearingPoint Inc.'s Chief Executive Officer, F. Edwin Harbach. Relief as to other putative defendants is being requested on behalf of the Trustee by the firm of McKool Smith P.C., by motion filed contemporaneously herewith.

A/73574910.2

the jurisdiction in which BearingPoint's former world headquarters was located and where it appears that jurisdiction could be obtained over all putative defendants.[2]

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion pursuant to 11 U.S.C. § 105(a), 28 U.S.C. §§ 157 and 1334, and Article XI of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for this Motion are 11 U.S.C. § 105(a) of the Bankruptcy Code and Federal Rule 9024 of Bankruptcy Procedure.

## III. BACKGROUND

3. On December 22, 2009, the Court confirmed the Plan (the "**Confirmation Order**" [Docket No. 1550]).

4. Pursuant to the Plan and the BearingPoint, Inc. Liquidating Trust Agreement, dated as of December 30, 2009 (the "**Trust Agreement**"), the Trustee is the assignee of estate causes of action, holds the debtors' attorney-client privileges, and has the power to investigate and prosecute for the benefit of the Liquidating Trust Beneficiaries causes of action that may from time to time be held by the Liquidating Trust.

5. Prior to confirmation of the Plan, the Debtors in Possession had been operated and managed by their Board of Directors and management. The Debtors, at the direction of their Directors and Officers, originally sought in the Plan a release that would have released Mr. Harbach from claims, actions, or causes of action based on prepetition misconduct.

6. The Official Committee of Unsecured Creditors ("**Creditors' Committee**")

---

[2] Except as expressly requested, the Trustee does not by this Motion seek relief from this Court's retention of exclusive jurisdiction over any other matters set forth in the Plan and Confirmation Order.

objected to the proposed release provision.

7. The Court sustained the Creditors' Committee's objection, but ruled in its Confirmation Order that "this Court (and the United States District Court from the Southern District of New York) shall retain exclusive jurisdiction to adjudicate any and all claims or causes of action brought by (a) the Debtors (or the Liquidating Trustee, as applicable). . . ." Confirmation Order ¶ 34(c). In paragraph 39 of the Confirmation Order, this Court ordered: "Pursuant to Article XI of the Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is legally permissible."

8. Articles X and XI of the Plan reflect the Court's resolution of the Creditors' Committee's objection to confirmation of Plan. Under Article X, section 10.8(c) of the Plan, officers, including Mr. Harbach, were not released from, among other things:

> [A]ny claims, demands, debts, rights, causes of action or liabilities held by the estates or the Liquidating Trust . . . against any current or former directors or officers of the Debtors for fraud, negligence, corporate waste, abuse, mismanagement, or for breach of fiduciary or other duties under Delaware, New York, or other applicable state or federal law, including, but not limited to, any act or failure to act in connection with: (i) from January 2007 through and including the Commencement Date, a potential transaction for the merger, sale or acquisition of the BearingPoint or any component part thereof; (ii) the merger and/or acquisition of additional foreign and/or domestic subsidiaries from December 1999 through and including the Commencement Date [or] (iii) the operations of BearingPoint, including, without limitation, accounting, internal controls, and financial reporting from January 2000 through and including the Commencement Date[.]

9. Under Article XI of the Plan, this Court retained "exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including . . . (p) to hear and

- 3 -

A/73574910.2

determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory." Plan, Article XI, ¶ (p).

10.     The Trustee believes that the Court's purpose in retaining such jurisdiction (as embodied in paragraphs 34(c) and 39 of the Confirmation Order and Article XI of the Plan) stemmed from a desire to protect against frivolous litigation. The Court stated as follows during the hearing on confirmation of the Plan:

> On balance, I don't think I can find it to be in the best interests of the estate for the estate to release away these claims now based on the amalgam of the consideration or perhaps more properly, lack of consideration provided to date and the investigation that took place before giving up these claims.
>
> But once more, I can and will find it to be in the best interests of the estate to modify the plan, which in light of the way the plan was structured, I don't believe requites [*sic*] re-solicitation . . . to provide that any such claims if they are to be brought, be brought before me or a District judge in this [district] for at least several reasons that I articulated before. I think it's in the best interests that if claims aren't going to be released, *prospective targets have the comfort that the validity of these claims will be thoughtfully analyzed with the benefit of as much knowledge of the surrounding facts as possible*.
>
> So I won't approve a full release of these claims now but I will approve provisions of the type I approved in *Adelphia*, that give this court exclusive jurisdiction over any such claims. As I said in *Adelphia*, see 368 B.R. at 269, in a case that to be sure, had a materially higher level of creditor aggressiveness and discord and which involved claims that might have been asserted vis-a-vis a different stage in the Chapter 11 process, I'll be able to tell the difference between legitimate claims on the one hand and harassment, retaliation or frivolous litigation on the other.

Transcript of Hearing on Confirmation at 76-77, In Re BearingPoint, Inc. et al., No. 09-10691 (Bankr. S.D.N.Y. Dec. 17, 2009) (emphasis added) (attached as **Exhibit 1** to Sabin Decl.).

11.     The Trustee acknowledges that the Court's concerns were prudent and

- 4 -

appropriate. Relief can be fashioned, however, in a manner that fairly balances both those appropriate concerns and the appropriate desire of the Trustee to reduce the cost of litigation and greatly expedite its resolution.

12. After its appointment, the Trustee commissioned an investigation of potential director and officer claims related to conduct in 2007 through 2008, and has retained special trial counsel in connection therewith. That investigation, while not fully complete, has disclosed that the Trustee, as successor to the corporation, holds in trust for the creditors valuable fiduciary-duty claims against BearingPoint's Chief Executive Officer, Mr. Harbach, based upon breaches of his duties as established under Delaware law. The Trustee has prepared a draft complaint, setting out, *inter alia*, those claims, which is attached hereto as **Exhibit A**,[3] and is prepared to commence an action with respect thereto.

13. The allegations in the draft complaint are detailed and drawn from actual and contemporaneous statements made by witnesses with actual and personal knowledge. The Trustee has had substantial access to BearingPoint's documents and emails of BearingPoint employees and officers who were centrally involved. The factual allegations are comprised from those documents, as well as other documentary support for the claims, including numerous email correspondence, internal reports and presentations, formal warnings and correspondence from then-counsel, investment bankers, and other advisors, documents obtained from third parties through Bankruptcy Rule 2004 examinations, including potential purchasers and professional advisors, corporate minutes and related records, as well as contemporaneous industry and analyst materials. Many factual allegations have also been corroborated by witness interviews and testimony from either hearings or through testimony obtained through Bankruptcy Rule 2004

---

[3] The draft complaint attached as **Exhibit A** represents the Trustee's investigation to date and it is subject to change as the investigation continues and new facts are brought to light.

examinations. In addition, the Trustee has commissioned a damages analysis from an expert, which demonstrates that the harm caused to the Debtors and creditors—and thus the resulting value of the claims—ranges to as high as $1.884 billion.

14. In brief, the draft complaint alleges, *inter alia*, that the Chief Executive Officer, Mr. Harbach hijacked the Company's sales process, causing BearingPoint to ignore large segments of the sales market—including strategic buyers and buyers of business units—and to deflect and/or avoid numerous opportunities in 2007 and 2008 to sell the business to a strategic buyer or to a buyer of business units, and that this resulted in diminished recovery of proceeds for the units when they were later sold in chapter 11, in 2009. (**Exhibit A**, ¶¶ 56 - 65; 77 - 98; 102 - 112; 114 - 128; 130; 134 - 136; 140 - 144; 146 - 164; 168 - 172; 174; 180 - 211; 214 - 218; 224; 226 - 228; 236 - 238; 240 - 241; 247 - 248; 251; 255 - 259; 262 - 263; 266 - 270; 272 - 275; 278 - 283; 285 - 305; 333 - 342)[4]. The draft complaint alleges that Mr. Harbach had a personal interest in ignoring significant areas of the marketplace in order to maintain his management position, vest his equity interests, and obtain new equity holdings in the purchasing entity. Indeed, scores of interested purchasers were ignored and overlooked because they did not fit the model that would benefit Mr. Harbach. These failures directly resulted in the decline of the company's value and inability to obtain the best price available for its assets, which could have been achieved by either selling the company as a whole or selling the company's business units.

15. The Trustee has engaged Mr. Robert Sherwin of The Analysis Group to investigate and confirm whether such sales of BearingPoint, or its business units, could have been achieved in 2007-2008. Mr. Sherwin's preliminary analysis, based on currently available

---

[4] Descriptions of, and references to, the allegations in the draft complaint are provided for the Court's convenience only. They do not limit or define any of the Trustee's factual or legal theories with respect to **Exhibit A**, or any action filed on the basis thereof (with respect to which the Trustee reserves all rights).

information, shows that the company could have been sold as a whole for a price in the approximate range of $1.0 to $1.4 billion and that the company's business units could have been sold for an aggregate price of $1.56 to $2.3 billion. Instead, the company was liquidated in bankruptcy and yielded approximately $424 million in proceeds, resulting in losses of $624 million to $1.88 billion. (**Exhibit A**, ¶¶ 288 - 304).

16. The draft complaint alleges that, throughout 2007 and 2008, Mr. Harbach was well aware of an April 2009 debt obligation, as well as numerous other corporate operational and financial obligations, and knew that the debt obligation would force a chapter 11 filing unless a sale or sales were arranged. (**Exhibit A**, ¶¶ 33 - 65).

17. Detailing more than a score of offers and overtures actually received from outside bidders in 2007 and 2008, and detailing at least a dozen further instances where the record shows that bidders, investment bankers and others who approached the Company with interest in purchasing all or parts of the company were deflected (**Exhibit A**, ¶¶ 146 - 164), the draft complaint further alleges that Mr. Harbach actively deflected and avoided bidders because the proposed transactions would all have resulted in the loss and/or erosion of his employment and equity interests, and that instead, he worked to position himself to capture additional, valuable equity from a financial buyer. (**Exhibit A**, ¶¶ 48 - 50; 56 - 65; 77 - 98; 102 - 112; 114 - 128; 130; 134 - 136; 140 - 144; 146 - 164).

18. The draft complaint further alleges that Mr. Harbach seized control of BearingPoint's forecasting process, causing the issuance of fanciful projections that falsely suggested that BearingPoint's liquidity was sufficient to meet the April 2009 debt obligation (when in fact it was not) while continuing operations, in order to avoid the urgent need for a sale. (**Exhibit A**, ¶¶ 119 - 128; 130; 134 - 136; 181; 185 - 212; 214 - 228; 233; 252; 264). This

- 7 -

A/73574910.2

conduct alarmed the company's general counsel, who in the summer of 2008 warned certain directors by formal letter of serious management dysfunction within the Company with respect to the sales process, and pleaded with certain of the directors to exercise some measure of control over Mr. Harbach (**Exhibit A**, ¶¶ 244). Serial resignations of two chief financial officers took place within three weeks of each other in May and June of 2008. (**Exhibit A**, ¶¶ 200 - 201; 243). Meanwhile, as the summer of 2008 progressed, Harbach continued to squander valuable sale opportunities, including by holding sale negotiations with BearingPoint's only remaining suitor hostage to personal demands for equity compensation, a fact shown, in part, by the general counsel's near desperate pleas to certain of the directors to intervene in the negotiations. (**Exhibit A**, ¶¶ 236 - 241; 244; 247 - 248; 255 - 259; 261 - 263; 266 - 275; 278 - 282; 285 - 286).

19. Recent case authority in Delaware and construing Delaware law[5] confirms the well-established principles and obligations of corporate fiduciaries in the context of the conduct alleged in the Complaint, including breaches of duties of care, loyalty and good faith when officers cause a corporation to avoid or pass over valuable sale opportunities because of personal interest. *See*, *e.g.*, *Gantler v. Stephens*, 965 A.2d 695, 708-709 (Del. 2009); *Brown v. Brewer*, No. CV 06-3731-GHK, slip op., 2010 WL 2472182 (C.D. Cal. June 17, 2010) (applying Delaware law) (attached hereto as **Exhibit B**).

20. The Trustee does not expect, on this motion, that this Court will in any way pass on the merits of the claims alleged against Mr. Harbach in **Exhibit A**, which have not been formally filed, and as to which Mr. Harbach has not had an opportunity to respond.[6] These

---

[5] BearingPoint was a Delaware corporation. The scope of the duties to the corporation of its fiduciaries will be governed by Delaware law. *See*, *e.g.*, *Gantler v. Stephens*, 965 A.2d 695 (Del. 2009).

[6] The Trustee is mindful that if this motion were to be denied, the claims would initially be commenced in this Court under non-core jurisdiction (given that Mr. Harbach has filed no

- 8 -

claims are detailed for the Court at this time simply to give it appropriate assurances that the Trustee is not proceeding in a hasty or frivolous manner. The Trustee has alleged only those factual claims that, after intensive and close research, appear in the factual record, and has alleged only those damages that are supported by documents and the opinion of a recognized economic expert. Further, the Trustee has, through its advisors, closely researched relevant law, and is pursuing only those claims that it believes are well grounded in Delaware law. If the claims succeed, the damages will be of substantial value to the trust and its beneficiaries. The damages would become, by far, the estate's largest asset.[7]

21. The Trustee can pursue the claims in this Court, as Article XI of the Plan provides, and as Mr. Harbach implicitly requested (by not objecting to jurisdiction of this Court (and the United States District Court for the Southern District of New York) in the Plan and Confirmation Order). But as the Court knows, Mr. Harbach, as well as the Trustee, will have jury trial rights, and the exercise of those rights by any party would likely cause the case to ultimately be tried in the Southern District of New York. The Trustee is aware, as a practical matter, of considerable procedural delays that could attend the prosecution of the claims in this Court, or in the Southern District.[8]

---

proof of Claims), and could be transferred to the Southern District in the event of a request for a jury trial. The Trustee is well aware that this Court certainly would not address the merits of any claim in any way without affording notice and a full opportunity to defend to Mr. Harbach.

[7] The Trustee believes that Mr. Harbach, in addition to having personal assets, is an insured under multiple policies aggregating nearly $300 million in insurance coverage that would be liable on the claims in the event the Trustee's claims were to prevail.

[8] Further underscoring the propriety, as a practical matter, of granting the relief requested herein is the recent grant of certiorari by the Supreme Court of the United States of a decision from the Ninth Circuit concerning the scope of "related to" jurisdiction under 28 U.S.C. § 157(c). *See Stern v. Marshall*, 131 S. Ct. 63 (2010) (order granting certiorari). The decision under review held that a compulsory counterclaim to proof of claims is not a core proceeding where the counterclaims are based on state law and not "so closely related to [the issues in the

22. The Trustee is aware of other courts that would have jurisdiction of the claims, in which the claims might more efficiently be pursued. Among such courts is the Circuit Court for Fairfax County, Virginia, in which county, at all relevant times, BearingPoint's corporate headquarters were located.

23. The Trustee's research indicates that a claim prosecuted in the Circuit Court for Fairfax County, Virginia would be likely to reach resolution years earlier[9], and at considerably lower expense, than a claim prosecuted initially in this Court, and it is not unusual for courts outside Delaware to apply Delaware corporate law. *See e.g. Brown v. Brewer*, slip op., No. CV 06-3731-GHK, 2010 WL 2472182 (C.D. Cal. June 17, 2010) (applying Delaware law to deny motion for summary judgment on complaint against directors alleging breaches of duty of loyalty and care in the context of evaluating competing bids for a company "in play"). The Trustee is aware that this Court has an extremely busy docket, and believes that this case, although not difficult to comprehend in concept, will involve time-consuming factual and expert disputes, which would greatly burden this Court's calendar in the event of jury waiver.

24. In the exercise of its business judgment, the Trustee believes it would be prudent to save the estate that time and cost.

---

adversary proceeding] that it must be resolved in order to determine the allowance or disallowance of" the claim. *See In re Marshall*, 600 F.3d 1037, 1059 (9th Cir. 2010). This decision conflicts with precedent from this circuit (*see In re CBI Holding Co.*, 311 B.R. 350 (S.D.N.Y. 2004)¸ *aff'd in part, rev'd in part on other grounds*, 529 F.3d 432 (2d Cir. 2008), and the Third Circuit (*see In re Pacor, Inc.*, 743 F.2d 984 (3d Cir. 1984). But the grant of certiorari indicates that the scope of "related to" jurisdiction is now in play. Time and money spent litigating the claims outlined in **Exhibit A** in this Court would be wasted should the parties discover during the next term of the Court that the case suffers a jurisdictional defect. The Court's discretion here would be well exercised by granting this motion and avoiding any question on this point.

[9] On information and belief, trials in the Circuit Court for Fairfax Country, Virginia are typically held within twelve to eighteen months of the filing of the complaint.

## IV. BASIS FOR RELIEF REQUESTED

25. Section 105(a) of the Bankruptcy Code provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" Title 11 of the United States Code. 11 U.S.C. § 105(a). Under section 105(a) and its equitable powers, the bankruptcy court has broad authority "to take any action or make any determination necessary or appropriate to enforce or implement orders," *Beal Bank S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 379 (Bankr. E.D. Pa. 1996) (internal quotation marks omitted), in order to protect the estate and its efficient administration. *See In re Int'l Inst. of The Americas, Inc.*, 63 B.R. 294, 299 (Bankr. D. P. R. 1986). *See generally*, *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (section 105(a) is the basis for a "broad exercise of power in the administration of a bankruptcy case," and was intended by Congress as the bankruptcy equivalent of the All Writs Act). The Court's exercise of its powers under this section is discretionary, *see In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 54 (Bankr. S.D.N.Y. 1988), and that discretion must be "carefully honed in light of the facts of the case, applicable precedent and appropriate policy." *In re Lion Capital Group*, 44 B.R. 690, 701 (Bankr. S.D.N.Y. 1984).

26. The relief sought by Trustee here does not alter or impact any substantive rights set forth in the Plan, and thus does not seek any modification of the Plan. It alters no rights of any creditor or interest holder in the Debtors. The question of whether Mr. Harbach should be subject to suit was anticipated and heavily-contested prior to confirmation. The forum for any such suit, however, was not an issue of concern raised by the directors or officers, and indeed, it would not have been a proper subject of dispute. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court . . . the consent of the parties is irrelevant.").

27. By this Motion, the Trustee seeks a path to a more efficient and cost-effective

- 11 -

resolution of a suit. If successful, such a suit will recover substantial assets on behalf of the estate.

28. Other courts have exercised their equitable power under 11 U.S.C. § 105(a) to enable a Trustee to more efficiently prosecute substantial claims on behalf of the estate. *See*, *e.g.*, *In re Reserve Prod., Inc.*, 232 B.R. 899, 901-03 (Bankr. E.D. Tex. 1999) (granting motion to approve, post confirmation, a joint prosecution agreement for the prosecution of estate causes of action because it would permit the Trustee to more efficiently bring the litigation and thereby "reduce[] the net financial burden on the estate").

29. Because this motion places the draft complaint before the Court, the relief sought here is consistent with the Plan and the Confirmation Order.[10] Through this Motion, supported by the detailed draft of a complaint, this Court is fully able to address the concerns it articulated at the confirmation hearing and assess whether the Trustee would be proceeding in a measured fashion, as opposed to inflicting "harassment, or retaliation, or frivolous litigation. . . ." *See In re Adelphia Commc'n Corp.*, 368 B.R. 140, 269 (Bankr. S.D.N.Y. 2007). Nothing in the Bankruptcy Code prevents this Court from relinquishing jurisdiction for the purposes of allowing a non-core proceeding to proceed more efficiently elsewhere. *Cf* 28 U.S.C. § 1334(b) ("[N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11");

---

[10] During the Confirmation Hearing, counsel for the Unsecured Creditors' Committee inquired as to the Court's preference in the event "the liquidating trustee determines as a jurisdictional matter, that he wants to sue somebody and can only get jurisdiction in a state court …." In response, the Court stated that while it had "some reservations as to that … in no small part because of my view that it's a classic case of related to . … jurisdiction, if not also 'arising under' jurisdiction and that therefore, that there'd be jurisdiction under 1334," it would nonetheless grant "the trustee a reservation of rights on that issue." Sabin Decl. Ex. 1 at 78.

28 U.S.C. § 1334(c)(1) (providing, in instances where litigation is filed in state court, that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11").

30. The Trustee has *not* prepared the kind of "kitchen sink" complaint this Court has seen before in other contexts. The Trustee has proceeded in a measured, fully supported way, that requires no expansion of existing law; rather, in the Trustee's view, it simply requires a fact finder to determine whether the conduct complies with the well-established fiduciary duties under Delaware law. The Trustee does not, however, formally waive any other cause of action it might have on grounds not discussed here or in the draft complaint. It has focused in the first instance on the most powerful and valuable claims. The Trustee seeks no relief by this motion with respect to any claims not described in **Exhibit A**, and reserves generally the right to pursue such supplemental and additional relief as may be appropriate concerning these and other matters.

31. Thus, this motion presents none of the formal concerns that would attend an actual modification of the rights of creditors under a confirmed plan. *See generally In re Reserve Prod., Inc.*, 232 B.R. at 901-02 (post-confirmation relief can be granted under section 105(a) without modifying confirmed plan where such relief does not "lead[] to results not contemplated under the Plan[,]" alter "any other specific mechanism contemplated for the enforcement by the Liquidating Trustee of these causes of action," or otherwise cause "any possible or potential detriment to the estate and its unsecured creditors"); *Beal Bank*, 201 B.R. at 380 (order extending payment deadline altered confirmed Chapter 11 plan provision, but did not constitute improper modification of confirmed Plan because it "did not alter the substantive rights of the claimants,

or frustrate legitimate claims.").

32. Even if, *arguendo*, the Plan were read to preclude the Court from granting the specific relief herein, the Court certainly could permit a notice of dismissal under Fed. R. Bankr. P. 7041 (incorporating Rule 41 of the Federal Rules of Civil Procedure), and issue an order under Fed. R. Civ. P. 41(a)(2) granting the Trustee leave to proceed elsewhere.

33. As set out above, the Trustee believes that the relief it seeks is entirely consistent with the Plan, as it is submitted to the sound discretion of this Court. However, if the Court disagrees, and believes that the Plan somehow strips the Court of power to grant this relief, the Court nevertheless would have the power under Federal Rule of Civil Procedure 60(b)(6), incorporated through Federal Rule of Bankruptcy Procedure 9024, to modify Article XI, ¶ p of the Plan and paragraphs 34(c) and 39 of the Confirmation Order in order to permit the Trustee to save the estate unnecessary time and expense in pursing the claims set forth in **Exhibit A**.

34. For all of the reasons above, the grant of such relief is consistent with the concerns the Court sought to protect in the Plan and the Confirmation Order, is equitable, and would prejudice no party in interest.

35. Accordingly, this Court should exercise this power to relieve the Trustee, as it relates to claims against Mr. Harbach, from paragraphs 34(c) and 39 of the Confirmation Order to allow it to file suit in any jurisdiction in which it concludes it is prudent to do so, including without limitation before the circuit courts of the Commonwealth of Virginia.

**WHEREFORE**, the Trustee respectfully requests that the Court issue an order:

  (i) relieving it of so much of Article XI, ¶ p of the Debtors' Modified Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code and paragraphs 34(c) and 39 of the Confirmation Order, as they operate to retain exclusive jurisdiction in this Court over the claims set out in the attached **Exhibit A**, as pursued against Chief Executive Officer, F. Edwin Harbach;

  (ii) permitting the Trustee to pursue the claims and causes of action as set forth in **Exhibit A**, as pursued against Chief Executive Officer, F. Edwin Harbach, in the Circuit Court for Fairfax County, Virginia, or such other court or tribunal as the Trustee, in its business judgment, determines is appropriate; and

  (ii) granting the Trustee such other and further relief as may be just and proper.

Dated: November 29, 2010
New York, NY

  **BINGHAM McCUTCHEN LLP**
  Jeffrey S. Sabin
  jeffrey.sabin@bingham.com
  399 Park Avenue
  New York, NY 10022
  Telephone: (212) 705-7000
  Facsimile: (212) 702 - 3668

  /s/ Sabin Willett
  Sabin Willett (*pro hac vice*)
  sabin.willett@bingham.com
  One Federal Street
  Boston, MA 02110
  Telephone: (617) 951-8000
  Facsimile: (617) 345 - 5033

  - and -

  **MCKOOL SMITH P.C.**
  Peter S. Goodman
  pgoodman@mckoolsmith.com

One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Lew LeClair (*pro hac pending*)
lleclair@mckoolsmith.com
Robert Manley (*pro hac pending*)
rmanley@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Basil A. Umari (*pro hac vice*)
bumari@mckoolsmith.com
600 Travis, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344

*Counsel for John DeGroote Services, LLC as Liquidating Trustee to the BearingPoint, Inc. Liquidating Trust*