**WILLIAMS & CONNOLLY LLP**
Robert A. Van Kirk (*pro hac vice*)
George A. Borden
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5163

*Attorneys for F. Edwin Harbach*

**SIMPSON THACHER & BARTLETT LLP**
Paul C. Curnin
William T. Russell, Jr.
Paul C. Gluckow
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000

*Attorneys for Albert L. Lord, Roderick C. McGeary, J. Terry Strange, Douglas C. Allred, Betsy J. Bernard, Spencer C. Fleischer, Jill Kanin-Lovers, and Edward Munson*

Endorsed Order:

The motion is denied without prejudice for failure to comply with Case Management Order #2, ¶ 41.

*/s/ Robert E. Gerber*
June 17, 2011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BearingPoint, Inc., <u>et al.</u>,<br><br>          Debtors. | Chapter 11<br><br>Case No. 09-10691 (REG)<br><br>(Jointly Administered) |

**FORMER DIRECTORS' MOTION REQUESTING ACCESS TO DOCUMENTS OBTAINED FROM THIRD PARTIES PURSUANT TO RULE 2004 EXAMINATIONS**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 2

ARGUMENT ............................................................................................................................... 9

    I.    As Parties in Interest, the Former Directors Should Be Allowed Access to the Rule 2004 Material ................................................................................................................. 9

    II.    Granting Access to the Rule 2004 Material Will Provide the Materials Necessary To Respond To the Complaint and Will Promote the Efficient Initiation of Discovery in the Anticipated Suit ..................................................................................... 11

    III.    None of the Trustee's Excuses Justifies His Refusal To Produce the Rule 2004 Material ............................................................................................................................... 14

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991) ..............................9

*In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D. Pa. 2008) .........................9, 12

*In re Drexel Burnham Lambert Grp.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) ..............................12

*In re Federated Dep't Stores, Inc. & Allied Stores Corp.*, No. 1-90-00130, 1990 Bankr. LEXIS 1833 (Bankr. S.D. Ohio Aug. 27, 1990)..................................................................9, 12

*In re Summit Corp.*, 891 F.2d 1 (1st Cir. 1989)................................................................9

*In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997)....................................................10

*Olsen v. Rupp (In re Olsen)*, No. UT-98-088, 1999 Bankr. LEXIS 791 (B.A.P. 10th Cir. July 9, 1999)..................................................................................................10

*Stein v. Elizabeth Trust Co (In re Winton Short Corp.).*, 104 F.2d 777 (3d Cir. 1939)..................10

## OTHER AUTHORITIES

11 U.S.C. § 105(a) ....................................................................................................1

11 U.S.C. § 704(a)(7)................................................................................................9

11 U.S.C. § 1106(a)(1)..............................................................................................9

11 U.S.C. § 1109(b)..................................................................................................9

Fed. R. Bankr. P. 2004(a) ................................................................................ *passim*

Fed. R. Bankr. P. 2004(b) .......................................................................................11

Fed. R. Bankr. P. 7026............................................................................................11

Fed. R. Bankr. P. 9014(a) .........................................................................................1

Fed. R. Civ. P. 26(b)(1)......................................................................................11, 13

Order Regarding Access by Third Parties to Bankruptcy Rule 2004 Material Obtained by the Official Committee of Unsecured Creditors, *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. Mar. 15, 2002)..................................................................10

After using the authority of this Court for over a year to obtain extensive discovery into potential claims against the former directors of BearingPoint, Inc. ("BearingPoint"), the Liquidating Trustee of the BearingPoint, Inc. Liquidating Trust, John DeGroote Services, LLC, ("the Trustee") has refused to provide the vast majority of this information to the former directors to permit them to mount an appropriate defense to the nearly $2 billion claim the Trustee has sought permission to prosecute against them. While the Trustee has grudgingly provided the former directors with transcripts of the ex parte depositions that were taken in the Rule 2004 process, the Trustee steadfastly has refused repeated requests for access to the documents he obtained and has had the luxury of reviewing for nearly a year. In addition, he has simultaneously impeded the former directors' efforts to obtain these materials directly from the producing third parties by interposing spurious and unspecified claims of privilege. Indeed, the Trustee even refuses to provide the former directors with the emails and other documents that are selectively quoted in the proposed complaint—documents that the Trustee has no good faith basis for withholding.

Accordingly, F. Edwin Harbach, Albert L. Lord, Roderick C. McGeary, J. Terry Strange, Douglas C. Allred, Betsy J. Bernard, Spencer C. Fleischer, Jill Kanin-Lovers, and Edward Munson (the "Former Directors"), the defendants named in the Trustees' proposed complaint, now move, pursuant to Federal Rule 9014(a) of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code, for access to discovery materials obtained from third parties by the Trustee pursuant to Rule 2004. In particular, the Former Directors seek documents produced to the Trustee as part of Rule 2004 examinations ("Rule 2004 Material") by, among others, Greenhill & Co., Inc. ("Greenhill"), Huron Consulting Services, LLC ("Huron"), and Cerberus Capital Management, L.P. ("Cerberus") (collectively, the "Third Parties"). As former directors of BearingPoint and the parties whom the

Trustee intends to sue, the Former Directors are clearly "interested persons" within the meaning of Rule 2004 and are therefore entitled to gain access to the materials. In addition, because the Trustee has asserted that the Rule 2004 Materials support the claims he intends to bring against the Former Directors, basic principles of fairness require that they receive access to these documents so that they may prepare their defense to the claims the Trustee has been honing for over a year.

## BACKGROUND

1. In December 2009, the Debtors represented to the Court that no claims or causes of action existed against BearingPoint's former officers and directors: "[T]he Debtors believe that granting the Debtors' Releases is in the best interests of the Debtors' estates and is a valid exercise of business judgment. Any other finding would result in the wasting of resources to pursue claims that the Debtors have already concluded do not exist." Memorandum of Law in Support of the Limited Releases Provided for in the Debtors' Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code, Dated November 2, 2009, ¶¶ 3, 9 (Dec. 14, 2009, Dkt. No. 1511).

2. Despite the 2009 investigation and representations that no claims against officers and directors existed, last year the Trustee sought leave of the Court to begin investigating "the facts and circumstances of the 2007-2008 [pre-bankruptcy] sale process . . . to understand whether the conduct of that process gives rise to any actionable breach of duty by estate fiduciaries." Liquidating Trustee's Motion for Entry of an Order Granting Authority to the Liquidating Trustee to Conduct Examinations Pursuant to Bankruptcy Rule 2004, ¶ 17 (Feb. 18, 2010, Dkt. No. 1673). The Trustee requested permission to conduct Rule 2004 examinations of "directors and officers" of BearingPoint, as well as "professionals," including "investment bankers and financial advisors who assisted the Debtors with efforts to market [BearingPoint]'s assets, negotiate with [BearingPoint]'s lenders and conduct the [BearingPoint] Sale Process." *Id.* ¶ 14.

3. In particular, the Trustee sought discovery from third parties involved in the pre-bankruptcy sale process: Greenhill, Cerberus, Huron, and Cravath Swaine & Moore LLP ("Cravath"). The Trustee requested from the Third Parties a broad swath of documentary material encompassing the 2008 attempts to sell BearingPoint, including all communications with and concerning BearingPoint's officers and board members; evidence of negotiations between potential buyers (such as Cerberus) and BearingPoint; and evaluations and communications created by advisors such as Greenhill and Huron regarding BearingPoint's finances and the pre-bankruptcy sale attempts. *Id.* The Trustee also requested permission to conduct Rule 2004 examinations of two of BearingPoint's former Chief Financial Officers, Judy Ethell and Eileen Kamerick. *See* Trustee's Motion for Leave to Conduct Rule 2004 Discovery of Eileen Kamerick (Apr. 16, 2010, Dkt. No. 1800); Trustee's Motion for Leave to Conduct Rule 2004 Discovery of Judy Ethell (May 3, 2010, Dkt. No. 1815). The Court granted all these requests. *See* Order Partially Allowing and Partially Continuing Rule 2004 Motion (Mar. 2, 2010, Dkt. No. 1673); Orders Authorizing Bankruptcy Rule 2004 Examination (May 5, 2010, Dkt. Nos. 1820, 1821, & 1823); Order Granting Trustee Leave to Conduct Rule 2004 Discovery of Eileen Kamerick (May 5, 2010, Dkt. No. 1822); Order Granting Trustee Leave to Conduct Rule 2004 Discovery of Judy Ethell (May 26, 2010, Dkt. No. 1838).

4. The Third Parties each produced documents in response to the Trustee's Rule 2004 requests. Huron, for example, produced two CDs containing approximately 1300 pages of e-mail messages and some native files. Exhibit ("Ex.") 1 (Letter from J. Feinstein to M. Hindley) (Apr. 22, 2011). No protective order was entered with regard to Huron's production. *Id.* The Trustee reached an agreement with Greenhill that it would produce all emails between certain key Greenhill personnel and BearingPoint's officers and directors between January 1, 2008 and

February 18, 2009. Notice of Presentment of Amended Proposed Order Granting Authority to the Liquidating Trustee Pursuant to Federal Bankruptcy Rule 2004 (Feb. 26, 2010, Dkt. No. 1691).[1] Greenhill and the Trustee signed a Confidentiality Agreement on April 6, 2010, governing that production. Ex. 2 (Greenhill Confidentiality Agreement, Apr. 6, 2010). And the Court entered a Stipulation and Protective Order between Cerberus and the Trustee governing the production of documents by Cerberus. Cerberus Stipulation and Protective Order (June 10, 2010, Dkt. No. 1846). None of the categories of documents requested from the Third Parties sought privileged communications nor did the relevant protective order or confidentiality agreement indicate that the parties were producing any information they considered privileged. Ex. 2; Cerberus Stipulation and Protective Order ¶ 12 (June 10, 2010) ("Nothing in this Protective Order shall require production of information which Cerberus contends is protected from disclosure by attorney-client privilege, the work product immunity, or any other applicable privilege or immunity."). Rather, the Cerberus Protective Order and the Greenhill Confidentiality Agreement sought to protect confidential commercial or proprietary information. Ex. 2, § 2(a); Cerberus Stipulation and Protective Order ¶ 2 (June 10, 2010).

5. In May and June 2010, the Trustee deposed representatives of Huron and Cravath, as well as Judy Ethell and Eileen Kamerick. The Former Directors were not given notice of these examinations and thus were not represented at them. Nor did they have the opportunity to review the Rule 2004 Material when it was produced to the Trustee.

6. Purportedly as a result of the Trustee's investigation, on November 29, 2010, the Trustee sought permission from this Court to file a complaint against the Former Directors in Virginia state court, in contravention of the BearingPoint's Plan of Reorganization and this Court's

---

[1] The Trustee presumably did not request a deposition of a Greenhill employee because the Committee of Unsecured Creditors deposed Greenhill employee Dhiren Shah on March 30, 2009, during the sale of the Public Services Industry Group.

Confirmation Order.  Mot. for Relief as to F. Edwin Harbach (Nov. 29, 2010, Dkt. No. 1977) [hereinafter "Harbach Mot. for Relief"]; Mot. for Relief as to Certain Former Directors (Nov. 29, 2010, Dkt. No. 1979) [hereinafter "Director Mot. for Relief"].  The Trustee attached a draft of the complaint he intends to file against the Former Directors and Mr. Harbach ("Draft Complaint").  The Draft Complaint is filled with revisionist and internally inconsistent assertions.[2]  In its Motions for Relief, the Trustee estimated that the damages he intends to seek from the Former Directors could be as high as $1.884 billion, and that those damages would become "by far, the estate's largest asset."  Director Mot. for Relief at 10; Harbach Mot. for Relief at 9.  The Trustee told the Court that he seeks permission to file the Draft Complaint in Virginia state court, rather than this Court, to avoid "procedural delays" and thereby reach a faster resolution.  Harbach Mot. for Relief at 9-10.  During the January 21, 2011 hearing on the Motions for Relief, the Trustee repeatedly expressed concerns about time and expense.  Tr. at 16-17 (Dkt. No. 2120).

7. The Trustee explicitly stated in his Motion for Relief that the documents and testimony obtained from the Rule 2004 discovery informed many of the allegations in the Draft Complaint: "The factual allegations are comprised from . . . documents obtained from third parties through Bankruptcy Rule 2004 examinations, including potential purchasers and professional advisors . . . .  Many factual allegations have also been corroborated by witness interviews and testimony from either hearings or through testimony obtained through Bankruptcy Rule 2004 examinations."  Director & Harbach Mots. for Relief at 5-6.  In addition, counsel for the Liquidating Trust told this Court during the January 21, 2011 hearing that "<u>every allegation in this</u>

---

[2] Among other allegations, the Draft Complaint alleges that Mr. Harbach failed to pursue the sale of parts of the company in addition to sale of the whole.  *See, e.g.*, Director & Harbach Mots. For Relief, Ex. A, ¶ 4 (Dkt. Nos. 1977, 1979).  However, this Court already found that Mr. Harbach "understandably abandoned" the option of selling parts of the company because it "wasn't feasible."  Hr'g Tr. on Apr. 2, 2009, at 266-267 (Dkt. No. 365).

complaint was checked against an actual record or piece of testimony. . . ." Tr. at 51 (Dkt. No. 2120) (emphasis added).

8. Despite the Trustee's assertion that it wishes to reach a speedy resolution of this matter and that every allegation in the Draft Complaint is based on documentary or testimonial evidence, the Trustee has refused to provide the Former Directors with a complete set of the Rule 2004 Material that allegedly forms the basis for the Draft Complaint notwithstanding repeated requests.

9. On December 22, 2010, counsel for Mr. Harbach wrote to the Trustee to request transcripts of Rule 2004 examinations and all documentary materials obtained by the Trustee in the course of its investigation into potential claims. Ex. 3 (E-mail from R. Van Kirk to R. Manley) (Dec. 22, 2010). Counsel for Mr. Harbach wrote again on January 6, 2011, requesting that the Trustee provide Mr. Harbach and the Former Directors with those materials. Ex. 4 (E-mail from R. Van Kirk to R. Manley) (Jan. 6, 2011). Counsel for the Trustee responded that the Trustee wanted to review the materials for privilege and confidentiality concerns and would "revisit the timing for production of the 2004 documents after the January hearing." Ex. 5 (E-mail from K. Hroblak to R. Van Kirk) (Jan. 6, 2011). Following the January 21, 2011 hearing, counsel for Mr. Harbach once again wrote to the Trustee's counsel seeking the transcripts and reminding him about the rest of the requested materials. Ex. 5 (E-mail from R. Van Kirk to K. Hroblak) (Feb. 1, 2011). On February 8, 2011, counsel for the Trustee provided transcripts of Rule 2004 examinations of the representatives of Huron and Cravath, as well as Eileen Kamerick and Judy Ethell, but did not include the exhibits to those depositions. Ex. 6 (Letter from K. Hroblak to R. Van Kirk) (Feb. 8, 2011). Mr. Hroblak asserted that "we are not in a position at this time to do a document production of the other substantial materials you requested." Ex. 7 (E-mail from K.

Hroblak to R. Van Kirk) (Feb. 4, 2011).  Following another request by Mr. Harbach's counsel, the Trustee finally provided Mr. Harbach with the exhibits to the Rule 2004 examination transcripts more than three months after the initial request for the materials.  Ex. 8 (Letter from K. Hroblak to R. Van Kirk) (Mar. 14, 2011).

10. Although the Trustee has provided transcripts of the Rule 2004 examinations and the exhibits, these materials only represent a fraction of the materials that the Trustee gathered pursuant to Rule 2004 and only those documents that the Trustee selected as being helpful to his then putative case.  Because the Trustee refused voluntarily to produce copies of the Rule 2004 materials he obtained through leave of the Court, counsel for Mr. Harbach contacted counsel for the Third Parties directly and asked that they voluntarily produce a copy set of the documents provided to the Trustee.  Counsel for Huron informed counsel for Mr. Harbach that, while there were only 32 exhibits marked at the Rule 2004 examination of Huron's representative, Huron actually produced two CD's worth of e-mails and native documents to the Trustee.  Ex. 1.  In addition, the Trustee has refused to provide Mr. Harbach with any of Cerberus's documents, despite an offer by Mr. Harbach's counsel to execute appropriate confidentiality agreements and protective orders.  Ex. 9 (Letter from R. Van Kirk to K. Hroblak) (Feb. 25, 2011); Ex. 8.  Nor has the Trustee provided Mr. Harbach with any of Greenhill's Rule 2004 document production.[3]

11. The Trustee also has impeded recent efforts to obtain the Rule 2004 Material from the Third Parties themselves by making unspecified claims of privilege and confidentiality with regard to the Rule 2004 Material.  For example, the Trustee's counsel has informed Huron that BearingPoint may assert some claim of privilege to some of the documents produced by Huron.  Ex. 1; Ex. 10 (E-mail from M. Hindley to J. Feinstein) (Apr. 26, 2011).  But the Trustee's counsel

---

[3] Mr. Harbach received directly from Cravath (which represented Mr. Harbach and BearingPoint management during the Cerberus negotiations) an unredacted version of the Cravath witness's transcript and the Cravath documents produced to the Trustee pursuant to Rule 2004.

could not particularize his claim of privilege, nor did he provide any further direction to Huron regarding which documents could conceivably be subject to a claim of privilege by BearingPoint. Ex. 1. Thus, although Huron has stated its willingness to provide Mr. Harbach with the Rule 2004 Material in its possession, given the Trustee's position, it is not willing to do so voluntarily without a court order or agreement with the Trustee. Ex. 1, Ex. 10.

12. The Trustee, meanwhile, makes the same unspecified assertions of privilege and confidentiality to Mr. Harbach and the Former Directors, claiming that "certain of the other documents requested by you are subject to confidentiality restrictions, and others may implicate the Company's attorney client privilege." Ex. 8. Mr. Harbach noted in correspondence that the Trustee (who maintains that he controls BearingPoint's privilege) has by all accounts waived the privilege by citing extensively from advice given by BearingPoint's then General Counsel in the Draft Complaint. Ex. 9. And Mr. Harbach offered to execute appropriate confidentiality agreements or protective orders to protect any allegedly confidential information. Ex. 9. Thus, there are no privilege or confidentiality issues that should preclude production of the Rule 2004 Material to Mr. Harbach and the Former Directors. Yet, the Trustee's counsel nevertheless refuses to produce documents until after a suit is filed, saying that he is "in the process of reviewing and categorizing the documents in the Trust's possession so that when the Complaint is filed, and we receive a formal document request, we will be in a position to provide you with access to these materials in due course . . . ." Ex. 8.

13. The Trustee thus continues to prepare for the suit, while the Former Directors are denied access to materials that the Trustee's counsel has acknowledged serve as the basis for the Complaint.

# ARGUMENT

## I. As Parties in Interest, the Former Directors Should Be Allowed Access to the Rule 2004 Material

14. In light of the Liquidating Trustee's Draft Complaint, the Former Directors are parties in interest in this bankruptcy proceeding and should have access to the Rule 2004 Material.

15. Federal Rule 2004 of Bankruptcy Procedure allows a "party in interest" to examine "any entity" upon order of the court. Fed. R. Bankr. P. 2004(a). The term "party in interest" is not expressly defined in the Bankruptcy Code or Rules, but "Courts have generally construed the term 'party in interest' . . . liberally." *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D. Pa. 2008).[4] The Trustee is not the only person entitled to Rule 2004 discovery. Rather, "[e]xaminations under Rule 2004 may be conducted by any party in interest, not just the trustee." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *see, e.g.*, *In re Summit Corp.*, 891 F.2d at 19 (bidder for debtors' stock was party in interest entitled to Rule 2004 discovery); Ex. 11, *In re Federated Dep't Stores, Inc. & Allied Stores Corp.*, No. 1-90-00130, 1990 Bankr. LEXIS 1833 (Bankr. S.D. Ohio Aug. 27, 1990) (allowing various banks to conduct Rule 2004 discovery of debtor's bondholders' committee after committee had obtained discovery from banks). In addition to the ability to request Rule 2004 discovery, a party in interest also may request information from the Trustee, and the Trustee has a duty to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest" unless the court orders otherwise. 11 U.S.C. § 1106(a)(1) (incorporating 11 U.S.C. § 704(a)(7)).

16. Since parties in interest other than the Trustee may conduct Rule 2004 examinations themselves and request materials and information from the Trustee, it follows that

---

[4] Although 11 U.S.C. § 1109(b) gives examples of "parties in interest," that list is non-exclusive. *In re Summit Corp.*, 891 F.2d at 5.

parties in interest ought to be able to access Rule 2004 discovery material in the possession of the Trustee. Courts accordingly have granted this access. *See, e.g.*, Ex. 12, Order Regarding Access by Third Parties to Bankruptcy Rule 2004 Material Obtained by the Official Committee of Unsecured Creditors, *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. Mar. 15, 2002) (granting interested parties access to Rule 2004 discovery materials). Indeed, allowing a party in interest to review material produced pursuant to Rule 2004 complies with the presumption that Rule 2004 examinations are public proceedings. *See* Ex. 13, *Olsen v. Rupp (In re Olsen)*, No. UT-98-088, 1999 Bankr. LEXIS 791, at *5 (B.A.P. 10th Cir. July 9, 1999); *In re Symington*, 209 B.R. 678, 694 (Bankr. D. Md. 1997) ("It is critical to the functioning of the bankruptcy process that Rule 2004 examinations of debtors and third parties authorized by the bankruptcy court be open to the public."); *see also Stein v. Elizabeth Trust Co (In re Winton Short Corp.).*, 104 F.2d 777, 780 (3d Cir. 1939) ("Counsel for interested persons are entitled to examine the proceedings."). In *Symington*, the court found that the news media—although not traditionally recognized as interested parties along the lines of trustees or creditors—had a right to view documents produced pursuant to a Rule 2004 investigation. The court explained that "Rule 2004 examinations . . . seek information relevant to the conduct of debtors, identify assets of the estate, and investigate matters concerning the administration of the bankruptcy case and the right of the debtor to receive a discharge. There is a compelling need for the discovery of such information to be readily available to other creditors, interested parties, and the public at large." *In re Symington*, 209 B.R. at 694.

17. The Former Directors, as the targets of the Trustee's proposed suit, have interests in this proceeding that go far beyond those of the public or other parties who typically are granted access to Rule 2004 material. According to the Motions for Relief, the Trustee believes that the claims against the Former Directors amount to the most significant asset of the estate. The Former

Directors therefore have an interest materially adverse to a "matter which may affect the administration of the debtor's estate," Fed. R. Bankr. P. 2004(b), and a legitimate stake in the outcome of the bankruptcy proceedings. Accordingly, there is no basis for the Trustee's continued efforts to deny them access to the Rule 2004 Material, particularly in light of his acknowledgement that he will have to produce this material in discovery once his suit is filed.

II. **Granting Access to the Rule 2004 Material Will Provide the Materials Necessary To Respond To the Complaint and Will Promote the Efficient Initiation of Discovery in the Anticipated Suit**

18. In addition to a generalized right to access as interested parties to the bankruptcy proceedings, access to the Rule 2004 documents gathered by the Trustee is critical here as a matter of fundamental fairness to allow the Former Directors an opportunity to challenge and refute the significant claims against them. The Trustee has used the power of this Court for over a year to gather information and develop a one-sided story about how the pre-bankruptcy sales process at BearingPoint allegedly was managed. He now asserts that the defendants cannot look behind the ex parte depositions that the Trustee took and obtain the underlying documents he gathered to challenge the fictionalized version of events he presents in the Draft Complaint. Having given the Trustee the means to acquire the discovery he has used to build his case, the Court should grant the Former Directors access to the Rule 2004 Material to prevent injustice and to facilitate the conduct of what will no doubt be extensive discovery if the claims are not dismissed.

19. In traditional litigation and bankruptcy adversary proceedings, the federal rules of procedure permit discovery of any non-privileged material "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026. When determining whether to grant Rule 2004 discovery requests, bankruptcy courts often consider whether the requested material would be otherwise discoverable in traditional litigation or adversary proceedings. For example,

in *Countrywide Home Loans,* the court found that the United States Trustee had good cause to conduct Rule 2004 discovery in part because "there is no question that [the material] would be discoverable in traditional litigation between the debtor and Countrywide over the respective loan if the proceeding had been brought as an adversary proceeding or contested matter." 384 B.R. at 398; *see also In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (granting Rule 2004 discovery in part because the party in interest "[i]n any event . . . may be entitled to the requested discovery at a future date in claims litigation or an adversary proceeding").

20. Moreover, where a civil action or adversary proceeding is likely or imminent, the promotion of justice weighs in favor of furnishing full information to the anticipated parties even though the suit has yet to be filed. In *In re Federated Department Stores*, the court allowed various banks to conduct Rule 2004 discovery of the official bondholders' committee after the committee had obtained Rule 2004 discovery from the banks. Ex. 11 at *1-3. The court acknowledged that "[w]hile an adversary action has not yet been filed, what is actually happening here is that both sides are attempting to 'arm' themselves for an adversary action concerning [various] claims." *Id.* at *4. Rather than prevent this "arms" race, the court viewed "a thorough investigation by both sides as an aid to the expeditious litigation of these issues when and if they arise." *Id.* Conversely, failure to allow access to Rule 2004 discovery could cause "undue hardship or injustice," especially where "the requested documents are necessary to [the] establishment of the moving party's claim." *In re Drexel Burnham Lambert*, 123 B.R. at 712.

21. Here, the Former Directors are not requesting leave to conduct new Rule 2004 examinations or seeking new production of documents. They are merely seeking access to information to which they are entitled as interested parties, which already has been produced by

the Third Parties, to which the Trustee has had access for over a year, and to which the Trustee acknowledges the Former Directors would be entitled once the Trustee files its complaint against them. What is more, the Trustee has stated that the allegations in the Draft Complaint are based directly on this Rule 2004 Material. The Rule 2004 Material is therefore, by the Trustee's own admission, relevant to the claims in the Draft Complaint, and would be discoverable under Rule 26(b)(1) in traditional litigation.

22. Obtaining access to the Rule 2004 material is critical for the Former Directors to mount an appropriate defense to the allegations in the Complaint and to rebut the many distortions and fabrications it contains. Indeed, they have ample reason to believe the documents in the Trustee's possession will demonstrate the falsity of his principal allegations. For example, a comparison of the Rule 2004 examination transcripts that the Former Directors were able to obtain with the allegations in the Draft Complaint reveal that the allegations in the Complaint often are either completely unsupported or they significantly misrepresent the testimony provided.[5] Access to the Rule 2004 Material will permit the Former Directors an opportunity to establish similar inconsistencies in the Complaint and help demonstrate at the pleadings stage that the Draft Complaint represents little more than a fictionalized version of reality. Permitting an obviously

---

[5] For example, the Draft Complaint repeatedly claims that Mr. Harbach's equity demands "chok[ed]" a potential transaction with Cerberus. *See, e.g.*, Director & Harbach Mots. For Relief, Ex. A, ¶ 5 (Dkt. Nos. 1977, 1979). However, during his Rule 2004 examination, the partner at Cravath who represented management during the Cerberus negotiations, testified that Cerberus and BearingPoint were at "loggerheads on a number of fronts," not just management equity. Ex. 14 (Hilfers Tr. 61-63, 125:11-12). The Draft Complaint also speculates that Mr. Harbach viewed CFO Judy Ethell as an impediment to his 2008 Management Plan, and so pushed her to the sidelines and hired David Hunter to "seize control of BE's financial forecasting." Director & Harbach Mots. For Relief, Ex. A, ¶¶ 124, 187-201 (Dkt. Nos. 1977, 1979). But Ethell's Rule 2004 examination tells a very different story: Ms. Ethell testified that she did not disagree with Mr. Harbach over the Management Plan, and accepted revisions in the forecast "because I thought we could achieve them." Ex. 15 (Ethell Tr. 37:24-38:2; 40:6-17). She said that Mr. Hunter did not have any impact on her role as CFO, and that Mr. Hunter was "not developing projections without the assistance of the finance team." *Id.* at 16:9-13; 27:1–5. Moreover, Ms. Ethell told the Trustee that during meetings with potential buyers, she observed that Mr. Harbach had "upheld his responsibility as CEO" by following the directions of the Board of Directors regarding the sale process. *Id.* at 81:4-7.

non-meritorious Complaint to proceed so that the Trustee can attempt to extort a settlement serves no one's interests. The Trustee already has a year-long head-start on the Former Directors with regard to the anticipated litigation. Denying or further delaying their access to the documents would only exacerbate that inequity by permitting only one party access to Court-ordered discovery.

23. In addition, granting access to the Rule 2004 Material will serve to expedite the conduct of discovery once litigation commences. The Former Directors eventually will obtain the Rule 2004 Material through discovery; although there no doubt will be significant additional discovery that will be necessary, providing access now to the basic building blocks of the Draft Complaint would facilitate discovery later, assuming the case is not dismissed. In fact, allowing the Former Directors access to the Rule 2004 Material accords with the Trustee's own express desire to speed the matter toward resolution. Since the Rule 2004 Material will be discoverable in traditional litigation, the Trustee can have no legitimate motive to withhold the documents now other than to attempt to delay or hamper the Former Directors' preparation of their defense.

### III. None of the Trustee's Excuses Justifies His Refusal To Produce the Rule 2004 Material

24. The Trustee has proffered a variety of excuses for refusing to produce the Rule 2004 Material over the last five months, including the claim that the Former Directors are not entitled to "pre-trial discovery," that the Trustee does not have time to review materials even though he has had them for a year and already has reviewed them for purposes of drafting the complaint, and the materials cannot be readily produced because they allegedly may contain unspecified "confidential" or "attorney client privilege[d]" material. Ex. 8. None of these justifications has any merit.

25. First, the Trustee's counsel has suggested in correspondence that the Former Directors are not entitled to "pre-trial discovery" and that they should be grateful for the limited access to the ex parte depositions that the Trustee has provided. That assertion is offensive to basic notions of due process. The Former Directors do not seek "pre-trial discovery," they seek access to the extensive materials the Trustee has assembled with leave of this Court. This is material that any interested person would be entitled to obtain, whether a complaint was pending or proposed or not. This is not a situation where a putative defendant is requesting production of his opponent's work product or access to materials the opponent has gathered through independent investigation. Here, the Former Directors seek only that information that the Trustee has obtained from the Third Parties through Rule 2004 under the auspices of the Court, nothing more.

26. Second, the suggestion that the Trustee does not have time at present to determine which documents, if any, might be privileged, Ex. 1, is risible. The initial request for these materials was made in mid-December 2010. Other than the hearing on the Motion for Relief, nothing of substance has occurred in the litigation since that time and the Trustee has had more than enough time to review and produce documents that already were organized and produced by the Third Parties. The exercise should involve little more than transferring the materials onto disks or another medium for production.

27. Finally, the vague assertion that the Trustee cannot produce immediately because he would be required to review the materials for privilege and confidentiality is baseless. Mr. Harbach's counsel repeatedly requested that the Trustee explain the bases for any such claims. The Trustee conspicuously has declined to do so. The reason is simple—there is no justification for this position. As to any claim to privilege, the Trustee subpoenaed this information from the Third Parties, rather than simply demanding the production of these materials, because it is not

BearingPoint's information.  The Trustee, on behalf of BearingPoint, has no conceivable basis for asserting attorney-client privilege over material in the possession of the Third Parties.  To the extent the Third Parties claim privilege or confidentiality as to any documents, Mr. Harbach's counsel has indicated he is willing to sign any appropriate protective order.  Moreover, the Trustee has made plain that he has waived BearingPoint's attorney-client privilege by quoting advice from the former General Counsel of BearingPoint in the Draft Complaint, *see, e.g.*, Director & Harbach Mots. For Relief, Ex. A, ¶¶ 143, 146, 176, 177 (Dkt. Nos. 1977, 1979), and by instructing former BearingPoint employees to answer questions involving privileged communications.  Ex. 16 (Kamerick Tr. 21:12–22:21).  As for the alleged claim that the information is "confidential" as to BearingPoint, that simply cannot be the case since the company is defunct and no longer has trade secrets or other confidential or proprietary information to protect.  Moreover, even if BearingPoint did have any legitimate privilege claims to assert, the Former Directors were senior managers of BearingPoint and had and have a right to access both privileged and confidential company information, were such information to exist.  And, in any event, even assuming there were some legitimate privilege issues to deal with, the Trustee has had more than enough time to review the materials and make an appropriate production in the more than five months that have elapsed since the request was made.

## CONCLUSION

For the reasons stated above, the Motion should be granted and the Former Directors should be given access to the Rule 2004 Materials.

| Dated: May 24, 2011 | /s/ ROBERT A. VAN KIRK |
|---|---|

**WILLIAMS & CONNOLLY LLP**
Robert A. Van Kirk (*pro hac vice*)
George A. Borden
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5163

*Attorneys for F. Edwin Harbach*

/s/ PAUL C. CURNIN

**SIMPSON THACHER & BARTLETT LLP**
Paul C. Curnin
William T. Russell, Jr.
Paul C. Gluckow
Craig S. Waldman
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Albert L. Lord, Roderick C.
McGeary, J. Terry Strange, Douglas C. Allred,
Betsy J. Bernard, Spencer C. Fleischer, Jill
Kanin-Lovers, and Edward Munson*