UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
<u>In</u> <u>re</u>                                                                      :        Chapter 11 Case No.
:
**BEARINGPOINT, INC.,** <u>et</u> <u>al.</u>,                         :        09 - 10691 (REG)
:
Debtors.                                                  :        (Jointly Administered)
:
------------------------------------------------------------------x

## STIPULATION AND AGREED ORDER RESOLVING CLAIMS FILED BY QWEST AND ALLOWING CLAIMS IN AN AGREED UPON AMOUNT

Qwest Government Services, Inc. ("*QGS*"), Qwest Communications Company, LLC ("*QCC*," and together with QGS, "*Qwest*") and John DeGroote Services LLC (the "*Liquidating Trustee*"), the Liquidating Trustee to the BearingPoint, Inc. Liquidating Trust (the "*Liquidating Trust*") on behalf of the above-captioned debtors (the "*Debtors*") and, together with Qwest, (the "*Parties*"), by their undersigned attorneys, respectfully submit this stipulation and agreed order (the "*Stipulation and Order*").

1

# RECITALS

A.       On February 18, 2009, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "***Court***").

B.       On April 17, 2009, QCC filed Claim No. 689 (the "***689 Claim***") for $230,464.20 as a general unsecured claim against the Debtors' estates.

C.       On December 22, 2009, the Court entered an order confirming the Debtors' Modified Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code, Dated December 17, 2009 (the "***Plan***") and, on December 31, 2009, the Plan became effective.

D.       Pursuant to the Plan, the Liquidating Trust was established to, among other things, evaluate and prosecute objections to claims asserted against the Debtors' bankruptcy estates and to pursue avoidance actions on behalf of such estates.

E.       On February 16, 2010, QGS filed its Request for Allowance and Immediate Payment of Administrative Expense Claims [Docket No. 1655] (the "***Administrative Expense Motion***") requesting immediate payment of $104,954.61 as post-petition expense of administration of the Debtors' estates. The Administrative Expense Motion is also listed on the Claims Docket as Claim No. 1151 (the "***1151 Claim***").

F.       The Liquidating Trustee alleges that, during the 90 days prior to the Petition Date, Qwest received payments totaling $222,299.02 (the "***90 Day Payments***"), a portion of which, the Liquidating Trustee claims, constitute avoidable transfers under chapter 5 of the Bankruptcy Code.

G.   The Parties have negotiated and agreed upon a liquidated amount at which to allow Qwest's claims as part of a global settlement between the Liquidating Trustee and all of the Qwest entities referenced herein.

## STIPULATION AND ORDER

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the Parties that:

1.   QGS is hereby granted an allowed administrative expense claim in the amount of $24,542.97 (the "***Allowed Administrative Expense Claim***").  The Liquidating Trustee will pay the Allowed Administrative Expense Claim within five (5) days after this Stipulation and Order has been entered and has become final and non-appealable, by business check in the amount of $24,542.97 made payable to "Qwest Communications Company, LLC" and sent to Qwest, Attn: Mitchell W. Katz, 1801 California Street, Room 900, Denver CO 80202.

2.   Upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, the 689 Claim shall be deemed satisfied fully.

3.   Upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, the 1151 Claim shall be deemed satisfied fully.

4.   Upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, the Administrative Expense Motion is deemed withdrawn and satisfied fully.[1]

5.   Upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, QCC and QGS agree not to bring any future proceedings specifically relating to the 689 Claim, the 1151 Claim, the Administrative Expense Motion, or the 90 Day Payments against

---

[1]   The Administrative Expense Motion is listed on the Claims Docket as Claim 1151.  Upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, Claim No. 1151 will be deemed satisfied fully.

3

the Debtors, their estates, the Liquidating Trust, the Liquidating Trustee, and their assigns, heirs, agents, directors, officers, employees, managers, and affiliates (the "***BearingPoint Released Parties***"), except in the event the Liquidating Trustee breaches this Stipulation and Order.

6. Except for the rights specifically enumerated herein, upon payment of the Allowed Administrative Expense Claim as set forth in paragraph 1, QCC and QGS forever release and discharge the BearingPoint Released Parties from any and all actions, suits, judgments, claims, demands, damages, attorneys' fees, causes of action, debts, liabilities, or controversies of any kind whatsoever, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, arbitration administrator, or any venue outside of the United States, and whether now known or unknown, matured or unmatured, liquidated or unliquidated, specifically relating to or arising out of the 689 Claim, the 1151 Claim, the Administrative Expense Motion, or the 90 Day Payments.

7. The Liquidating Trustee and the Liquidating Trust agree not to bring any future proceedings specifically relating to or arising out of 689 Claim, the 1151 Claim, the Administrative Expense Motion, or the 90 Day Payments against QCC or QGS, their parents, subsidiaries, affiliates and each of their respective agents, directors, officers, employees, and managers (collectively, the "***Qwest Released Parties***"), except in the event QCC or QGS breaches this Stipulation and Order.

8. Except for the rights specifically enumerated herein, the Liquidating Trust and the Liquidating Trustee, for themselves and on behalf of the Debtors, and any BearingPoint Released Party claiming by and through any of the Debtors, forever release and discharge the Qwest Released Parties (including, but not limited to, QCC and QGS) and each of their respective officers, directors, employees, managers, and affiliates and legal representatives from any and all

4

actions, suits, judgments, claims, demands, damages, attorneys' fees, causes of action, debts, liabilities, or controversies of any kind whatsoever, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, arbitration administrator, or any venue outside of the United States, and whether now known or unknown, matured or unmatured, liquidated or unliquidated, specifically relating to or arising out of the 689 Claim, the 1151 Claim, the Administrative Expense Motion, or the 90 Day Payments. The Liquidating Trust and the Liquidating Trustee, for themselves and on behalf of the Debtors, and any BearingPoint Released Party claiming by and through any of the Debtors, also forever release and discharge QCC, QGS, Qwest Corporation, Qwest Services Corporation and Qwest Communications International, Inc. from any and all actions, suits, judgments, claims, demands, damages, attorneys' fees, causes of action, debts, liabilities, or controversies of any kind whatsoever, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, arbitration administrator, or any venue outside of the United States, and whether now known or unknown, matured or unmatured, liquidated or unliquidated, arising under, relating to or in connection with Chapter 5 of 11 U.S.C. §§ 101 *et seq*.

    9.    This Stipulation and Order shall not be construed as an admission by any of the Parties of liability, or any acts of wrongdoing, or the violation of any international, federal, state, or local law, ordinance or regulation, nor shall it be considered as evidence of any such alleged liability, wrongdoing, or violation of any international, federal, state or local law, ordinance or regulation.

    10.    This Stipulation and Order shall be governed, in all respects, by the laws of the State of New York, irrespective of its choice of law rules.

11. Each of the Parties hereby expressly represents and warrants that it has the requisite power, authority, and legal capacity to enter into and execute this Stipulation and Order and to bind the Parties. The Liquidating Trustee warrants that the Liquidating Trust owns all claims and causes of action of the Debtors against Qwest that are being released herein.

12. This Stipulation and Order is the entire agreement between the Parties with respect to the subject matter herein. All representations, warranties, inducements, and/or statements of intention made by the Parties are embodied in this Stipulation and Order, and no party hereto relied upon, shall be bound by, or shall be liable for any alleged representation, warranty, inducement, or statement of intention that is not expressly set forth in this Stipulation and Order.

13. No modification, amendment or waiver of any of the terms or provisions of this Stipulation and Order shall bind any Party hereto unless such modification, amendment, or waiver is in writing and has been executed by a duly authorized representative of the Party against whom such modification, amendment, or waiver is sought to be enforced.

14. This Stipulation and Order may be executed in any number of counterparts, and all such counterparts, taken together, shall be deemed to constitute one and the same instrument.

15. The Parties acknowledge that this Stipulation and Order is the joint work product of all of Parties, and that, accordingly, in the event of ambiguities in this Stipulation and Order, no inferences shall be drawn against any Party on the basis of authorship of this Stipulation and Order.

16. The Parties agree that any and all disputes arising out of or otherwise relating to this Stipulation and Order shall be brought in the Bankruptcy Court.

17. This Stipulation and Order shall be binding on the Parties from the date of its execution by the last of the Parties; *provided, however,* that if the Court denies approval of this Stipulation and Order, this Stipulation and Order shall be deemed null and void; the Parties' rights shall be preserved and restored as if this Stipulation and Order had not been made; and no part of this Stipulation and Order shall be admissible in evidence for any purpose.

18. This Stipulation and Order may be executed in multiple counterparts and transmitted via facsimile, with the facsimile signature treated as an original signature, and any and all of which shall be construed as and enforceable as the Stipulation and Order. The effective date of this Stipulation and Order shall be the date of its execution by the last of the Parties.

19. The Liquidating Trustee shall seek approval by the Court of this Stipulation and Order within five (5) business days after the date of its execution by the last of the Parties.

| | |
|---|---|
| By:  /s/ Basil A. Umari<br>     Basil A. Umari | By:  /s/ Timothy Reiley<br>     Timothy Reiley |
| Date: October 11, 2011 | Date: October 11, 2011 |
| MCKOOL SMITH P.C. | REED SMITH LLP |
| 600 Travis, Suite 7000<br>Houston, Texas 77002<br>Tel: (713) 458-7304<br>Fax: (713) 458-7344 | 1201 Market Street, Suite 1500<br>Wilmington, Delaware 18951<br>Tel: (302) 778-7528<br>Fax: (302) 778-7575 |
| Attorneys for Liquidating Trustee | Attorneys for Qwest Government Services, Inc. and Qwest Communications Company, LLC |

IT IS SO ORDERED.

Dated: New York, New York
       October **_18th_**, 2011

/s/ **_Robert E. Gerber_**
UNITED STATES BANKRUPTCY JUDGE

8